United States Courts
Southern District of Texas
FILED

SEP 20 2018

David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**UNITED STATES OF AMERICA**

**v.**

CRIMINAL NO. __18 CR 575__

18 U.S.C. § 371
26 U.S.C. § 7201

**JACK STEPHEN PURSLEY,**
  **AKA STEVE PURSLEY**

## INDICTMENT

The Grand Jury charges:

At times material to this Indictment:

### Introduction

1.    JACK STEPHEN PURSLEY, also known as STEVE PURSLEY ("PURSLEY" or "the

Defendant"), was a United States citizen, and resided in Houston, Texas, within the

Southern District of Texas. PURSLEY was an attorney licensed to practice law in the state

of Texas, and owned and operated Pursley Law Firm, PLLC, located in Houston, Texas.

2.    As charged in this Indictment, between March 2007 and September 2013, PURSLEY

assisted Co-Conspirator 1 in repatriating from offshore bank accounts more than $18

million of untaxed funds. Even though PURSLEY knew that these funds had never been

taxed as income to Co-Conspirator 1, PURSLEY helped design and implement a fraudulent

scheme to bring these funds back to the United States without paying any federal income

taxes on the funds.

3.    PURSLEY enriched himself in this process, earning more than $4.8 million and an interest

in Co-Conspirator 1's ongoing business for his role in implementing this fraudulent

scheme. As charged in this Indictment, PURSLEY evaded assessment and failed to pay

federal income taxes on the money and property he earned in conjunction with the scheme.

**Individuals and Entities**

4.  Co-Conspirator 1 was a United States citizen and a college friend of PURSLEY.

PURSLEY was Co-Conspirator 1's attorney from in or around 2006 through on or about

May 1, 2013.

5.  Co-Conspirator 1 was the sole owner of Southeastern Shipping Company Limited

("Southeastern Shipping"), a corporation that provided workers to clients who owned

offshore oil rigs primarily throughout the Middle East. Prior to 2001, Southeastern

Shipping was incorporated in Nevis and Panama. In or about September 2001, Co-

Conspirator 1 caused the incorporation of Southeastern Shipping in the Isle of Man. In or

about June 2009, Co-Conspirator 1 transferred the business operations of Southeastern

Shipping to a new company, Recruitment Partners, L.P. ("Recruitment Partners").

Recruitment Partners was a Texas limited partnership owned 74% by Co-Conspirator 1,

25% by PURSLEY, and 1% by a general partner that was a limited liability company

owned by PURSLEY.

6.  Co-Conspirator 1 also owned Hudson International Management Group, LLC ("Hudson

International"), a Texas sole proprietorship.

7.  Individual 1 was a Brazilian citizen, and Co-Conspirator 1's friend, who was used as a

nominee by Co-Conspirator 1.  Individual 1 received payments for his role as nominee.

8.  Financial Company 1 was a corporate and trust services company located in the Isle of Man

hired by Co-Conspirator 1 to help manage Southeastern Shipping's administrative

functions in a manner designed to conceal Co-Conspirator 1's ownership of Southeastern

2

Shipping. Financial Company 1 provided employees to serve as the board of directors for Southeastern Shipping, handled many of Southeastern Shipping's day-to-day operations, and maintained signatory authority of Southeastern Shipping's bank account. Financial Company 1 held Royal Bank of Scotland ("RBS") bank account ending 6946, which served as its client trust account ("Financial Company 1's client trust account"). Employees of Financial Company 1 were the sole signatories on this account.

9.     Financial Company 1 incorporated Pelhambridge Limited ("Pelhambridge") in the Isle of Man on or about November 1, 2006. Pelhambridge was a shelf company that, as subsequently used by PURSLEY and Co-Conspirator 1, had no legitimate business purpose. Co-Conspirator 1 was the owner of Pelhambridge, although at certain times Individual 1 was identified as the beneficial owner in Financial Company 1's paperwork.

10.    Attorney 1 was a Houston, Texas-based attorney who provided legal services to PURSLEY and Co-Conspirator 1 from in or about May 2009 until in or about May 2013. Attorney 1 maintained an Interest on Lawyer Trust Account ("IOLTA account") at Wells Fargo ending 9822 ("Attorney 1's IOLTA account"). An IOLTA account, also known as a client trust account, is an account established by an attorney or law firm in order to hold funds in trust for the attorney's clients. Attorney 1 was the sole signatory on this account.

11.    Attorney 2 was a Houston, Texas-based attorney who provided legal services to PURSLEY and Co-Conspirator 1 in April and May 2009.

12.    Attorney 3 was a Houston, Texas-based attorney whom PURSLEY and Co-Conspirator 1 consulted regarding the funds in the Isle of Man in April 2009.

13.    The Internal Revenue Service ("IRS") was an agency of the United States Department of

Treasury responsible for administering the federal tax laws of the United States and

collecting taxes owed to the United States.

14.    U.S. persons have a legal obligation to report their worldwide income, including income

earned from foreign bank accounts, on their income tax returns. U.S. law also requires U.S.

persons to disclose to the IRS on their tax returns whether they have a financial interest in,

or authority over, a financial account in a foreign country for a particular year.  In addition,

any U.S. person who has a financial interest in, or authority over, a foreign financial

account with a total value of more than $10,000, at any time, is required to file a foreign

bank account report with the U.S. Department of the Treasury, colloquially called an

"FBAR."

### Co-Conspirator 1's Business Background

15.    Co-Conspirator 1 maintained ownership and control over Southeastern Shipping from

inception until late 2013. From 2001 forward, Co-Conspirator 1 caused Southeastern

Shipping to be nominally owned by Individual 1, in order to conceal Co-Conspirator 1's

ownership of Southeastern Shipping and Co-Conspirator 1's tax evasion with respect to the

operations of Southeastern Shipping.

16.    Southeastern Shipping held RBS bank account ending 7806 ("Southeastern Shipping's

RBS account"), among others. Employees of Financial Company 1 were the sole

signatories on this account; however, Co-Conspirator 1 maintained control over this

account.

17.    From at least tax year 2007 until at least tax year 2013, Co-Conspirator 1 caused Financial

Company 1 to pay Hudson International consulting fees for the benefit of Co-Conspirator 1

in amounts ranging from approximately $50,000 to approximately $300,000 per year. Co-Conspirator 1 paid income taxes on those fees. However, from 2001 until 2011, Co-Conspirator 1 maintained unreported and untaxed income in Southeastern Shipping's account at RBS in the Isle of Man.

### The Tax Fraud Scheme

18. From 2007 until 2013, PURSLEY and Co-Conspirator 1 engaged in a scheme to defraud the IRS whereby they repatriated Co-Conspirator 1's funds held at Southeastern Shipping's RBS account in the Isle of Man into nominee bank accounts belonging to PURSLEY and Co-Conspirator 1 in the United States in several different ways, all of which were designed to conceal from the IRS the receipt of income and to evade the payment of income taxes on that income. The repatriated income was used for the personal benefit of PURSLEY and Co-Conspirator 1, among other things.

19. In or around January 2007, Co-Conspirator 1 solicited PURSLEY's assistance to covertly repatriate the funds maintained by Co-Conspirator 1 in Southeastern Shipping's RBS account in the Isle of Man to the United States, in a manner that would appear to allow Co-Conspirator 1 to avoid paying taxes on that income. In exchange for his assistance, PURSLEY demanded compensation and received a portion of the untaxed funds and a share of Co-Conspirator 1's business, which he failed to report to the IRS.

20. PURSLEY and Co-Conspirator 1 filed false personal and corporate tax returns that failed to accurately report the receipt of the repatriated funds and failed to pay income taxes due thereon.

**First Movement of Funds**

21.   In or about March 2007, PURSLEY and Co-Conspirator 1 executed a false stock purchase

agreement in which Co-Conspirator 1, "acting on his individual behalf, or, alternatively and

by his election and sole discretion acting as a duly authorized represented of a newly

formed corporation not yet organized or named," purportedly agreed to purchase 7.5% of a

Texas corporation owned by PURSLEY called Gulf States Management Corporation

("Gulf States"). PURSLEY had established Gulf States as a Texas corporation solely

owned by him in or about August 1999. The purported purchase price for the stock was

$900,000, although on its 2007 corporate income tax return, Gulf States reported zero

assets at the beginning of the year. The false stock purchase agreement was designed to

provide a paper justification for the transfer of funds from Co-Conspirator 1's Isle of Man

accounts to PURSLEY.

22.   To receive the first set of funds transfers, on or around May 7, 2007, PURSLEY created

Diversified Land Holdings, Inc. ("Diversified") as a Texas corporation solely owned by

Co-Conspirator 1. Thereafter, Co-Conspirator 1 opened Diversified's Wells Fargo Bank

account number ending 8312, on which he was the sole signatory.  Diversified was the

entity ultimately used by Co-Conspirator 1 to effectuate the false $900,000 stock purchase

in Gulf States.

23.   On or about July 27, 2007, PURSLEY opened a bank account, account number ending

1940-1, at Washington Mutual Bank (now known as JP Morgan Chase) in the name of Gulf

States, of which PURSLEY was the sole signatory.

24.   In order to facilitate the transfer of funds, in or about October 2007, PURSLEY caused

Financial Company 1 to select an Isle of Man company, Pelhambridge, for use in the

repatriation scheme. Initially, Co-Conspirator 1 was the named beneficial owner, but that was changed thereafter to Individual 1 as the nominal owner.

25. Pelhambridge held RBS bank account ending 4836 ("Pelhambridge's RBS account"). Employees of Financial Company 1 were the sole signatories on this account; however, PURSLEY and Co-Conspirator 1 maintained control over this account.

26. From late 2007 through early 2009, PURSLEY structured transfers totaling approximately $2,735,000 from Southeastern Shipping and Pelhambridge's RBS accounts in the Isle of Man to Diversified's account ending 8312 in the United States. Financial Company 1 kept a small portion of the funds in Isle of Man as fees for these transactions.

27. In order to justify the transfers from Southeastern Shipping to Pelhambridge, PURSLEY cause the transfer of funds to be documented as interest-free "loans" from Southeastern Shipping to Pelhambridge. In order to justify the transfers from Pelhambridge to Diversified, PURSLEY caused these transfers to be documented as three separate purchases by Pelhambridge of common stock of Diversified -- $960,000 in or about October 2007, $875,000 in or about January 2008, and $900,000 in or about March 2009. In each instance, false stock sale agreements and other documentation were created as a false paper trail of these purported stock transactions.

28. Co-Conspirator 1 then caused transfers totaling $900,000 from Diversified's account ending 8312 to Gulf States's account ending 1940-1, disguised as a payment to Gulf States for the "stock purchase" described in paragraph 21, but which was in reality compensation to PURSLEY for his participation in the scheme. Co-Conspirator 1 controlled the remaining $1,835,000, which he used for his personal benefit.

29. PURSLEY and Co-Conspirator 1 withdrew the funds in Diversified's and Gulf States's bank accounts ending 8312 and 1940-1, respectively, over time, and spent the funds on personal items. In some instances, PURSLEY transferred funds to a second account at Washington Mutual Bank in the name of Gulf States, account number ending 1563-0, and then into an account at Charles Schwab also in the name of Gulf States, account number ending 1072, before transferring funds for his personal use.

30. Neither PURSLEY nor Co-Conspirator 1 reported the receipt of these funds as income on their personal tax returns. Co-Conspirator 1 also did not report his interest in foreign bank accounts on his income tax returns or on an FBAR. Instead, PURSLEY and Co-Conspirator 1 reported the funds on the corporate income tax returns for Diversified and Gulf States as "capital contributions" to Diversified and Gulf States, and reported their withdrawal of the funds from these corporations' bank accounts as non-taxable "loans" or "returns of capital" from the corporations.

**Second Movement of Funds**

31. In or about early 2009, representatives of Financial Company 1 met with Co-Conspirator 1 to express concerns about Co-Conspirator 1's ownership of Southeastern Shipping and U.S. tax compliance issues. Co-Conspirator 1 consulted with PURSLEY, and advised him of the amount remaining in the Southeastern Shipping account. With respect to the approximately $15 million remaining offshore, PURSLEY and Co-Conspirator 1 agreed that Co-Conspirator 1 would pay PURSLEY 25% of the funds to be repatriated, and transfer to PURSLEY 25% ownership of Co-Conspirator 1's oil rig employee staffing business, which they agreed would move to the United States.

32. In attempting to create a new mechanism to repatriate Co-Conspirator 1's offshore funds tax-free and without detection, PURSLEY and Co-Conspirator 1 consulted with several different attorneys, and provided false information to those attorneys, including that Individual 1 was the owner of Southeastern Shipping.

33. In or around May 2009, PURSLEY and Co-Conspirator 1 solicited Attorney 1 to assist in moving the remainder of the funds in Southeastern Shipping's RBS account back to the United States, tax-free. PURSLEY and Co-Conspirator 1 told Attorney 1 that the owner of Southeastern Shipping was Individual 1. Neither PURSLEY nor Co-Conspirator 1 disclosed Co-Conspirator 1's true ownership of Southeastern Shipping to Attorney 1.

34. Ultimately, after consulting with Attorney 1, Attorney 2, and Attorney 3 and exploring a number of different options for repatriating the funds, in or about July 2009, PURSLEY and Co-Conspirator 1, with the assistance of Attorney 1, caused the creation of a new Australian corporation, Australian Partners Holding Corporation PTY Limited ("Australian Partners"), nominally owned by Individual 1. It was created to provide a company that would appear to be making legitimate investments in U.S. corporations controlled by PURSLEY and Co-Conspirator 1. Australian Partners then purportedly purchased Southeastern Shipping, with documents created in part by Attorney 1. Attorney 1 worked with an Australian accounting firm to ensure that Australian Partners would owe no Australian taxes.

35. In order to facilitate the movement of funds, in 2009 and 2010, PURSLEY caused Attorney 1 to incorporate three new Texas corporations: (1) Four Sevens Investment Corporation ("Four Sevens"), solely owned by PURSLEY; (2) American Real Estate Properties, Inc.

9

("AREP"), solely owned by Co-Conspirator 1; and (3) Global American Properties, Inc. ("Global American"), solely owned by Co-Conspirator 1.

36. Four Sevens held Smart Financial Credit Union bank accounts ending 5710 and 5740, and Sanford C. Bernstein bank accounts ending 3314 and 3359. PURSLEY was the sole signatory on these accounts.

37. AREP held Wells Fargo bank account ending 4315, among others. Co-Conspirator 1 was the sole signatory on this account.

38. Global American held Wells Fargo bank account ending 4265. Co-Conspirator 1 was the sole signatory on this account.

39. From approximately August 2009 through September 2010, PURSLEY and Attorney 1 caused employees of Financial Company 1 to transfer more than $15 million from Southeastern Shipping's RBS account to Attorney 1's IOLTA account. PURSLEY then caused Attorney 1 to transfer those funds to AREP, Global American, and Four Sevens's bank accounts, as purported investments, to be further purportedly invested in real estate. In order to make these transfers appear to be stock purchases by Australian Partners in AREP, Global American, and Four Sevens, PURSLEY caused Attorney 1 and others to create documents, including false private placement memorandums and subscription agreements, for each transfer.

40. PURSLEY and Co-Conspirator 1 withdrew the funds in AREP, Global American, and Four Sevens over time, and spent the funds on personal items. In June and August 2010, PURSLEY caused Attorney 1 to form three new Texas limited liability companies: (1) Pursley Interests, LLC ("Pursley Interests"), (2) Arosa Partners, LLC ("Arosa Partners"),

and (3) JSP Interests, LLC, each solely owned by PURSLEY. PURSLEY used these

entities to further conceal the receipt and expenditure of the untaxed funds.

41.   In total, during 2009 and 2010, Co-Conspirator 1 repatriated just under $11.4 million of

untaxed Southeastern Shipping funds for his personal benefit. PURSLEY earned an

additional approximately $3,925,000 cash compensation for his participation in the scheme,

paid through deposits of repatriated funds into Four Sevens and Pursley Interests' accounts.

42.   PURSLEY transferred or caused to be transferred millions of dollars into various bank

accounts in the names of these entities (or variations of the names of these entities), and

used those funds for his personal benefit, including the purchase of land and construction of

a home in Houston, Texas, and purchase of a vacation home in Vail, Colorado.

43.   PURSLEY utilized the following bank accounts, among others, to transfer and receive his

ill-gotten gains:

   a.   Pursley Interests held Smart Financial Credit Union bank accounts ending 0370 and

        0380, on which PURSLEY was the sole signatory;

   b.   Arosa Partners held Smart Financial Credit Union bank accounts ending 0290 and

        0300, on which PURSLEY was the sole signatory.

   c.   PURSLEY held a personal Southwest Securities, Inc. bank account ending 0040, on

        which he was the sole signatory.

   d.   PURSLEY held a personal E-Trade Securities investment account ending 4096, on

        which he was the sole signatory.

   e.   PURSLEY held a personal First Bank account (now known as Prosperity Bank)

        ending 8081.

44.  Neither PURSLEY nor Co-Conspirator 1 reported the funds as income on their personal tax

returns. Instead, PURSLEY and Co-Conspirator 1 reported the funds on the corporate tax

returns for AREP, Global American, and Four Sevens as "capital contributions" to AREP,

Global American, and Four Sevens, respectively, and reported their withdrawal of the

funds from these corporations' bank accounts as non-taxable "loans" or "returns of capital"

from the corporations.

## COUNT ONE
### (Conspiracy to Defraud the United States)

45.  The allegations set forth in Paragraphs 1 through 44 of this Indictment are re-alleged and

expressly incorporated herein as if copied verbatim.

46.  From in or around March 2007 through in or around May 2013, in the Southern District of

Texas and elsewhere, the defendant,

### JACK STEPHEN PURSLEY,

did knowingly and willfully conspire and agree with Co-Conspirator 1 and others, both

known and unknown to the grand jury, to defraud the United States by impeding,

impairing, obstructing, and defeating the lawful government functions of the Internal

Revenue Service of the United States Department of Treasury in the ascertainment,

compilation, assessment, and collection of the revenue, that is, federal income taxes of

PURSLEY and Co-Conspirator 1.

### OBJECT OF THE CONSPIRACY

47.  It was the purpose and object of the conspiracy for PURSLEY and his co-conspirators,

including Co-Conspirator 1, to unjustly enrich PURSLEY and Co-Conspirator 1 by

evading the assessment and payment of federal income taxes to the IRS, namely, taxes due

on more than $18 million in income from Southeastern Shipping, which was parked offshore in the Isle of Man.

## MANNER AND MEANS OF THE CONSPIRACY

48.   Among the manners and means by which PURSLEY, his co-conspirators, and others known and unknown to the grand jury would and did accomplish the purpose and object of this conspiracy were the following:

    a.    They would and did place ownership of Southeastern Shipping, Pelhambridge, and Australian Partners in the name of a nominee, that is, Individual 1.

    b.    They would and did consult with numerous attorneys, including Attorney 2 and Attorney 3, among others, and provide those attorneys with false information about the ownership of Southeastern Shipping.

    c.    They would and did reject numerous proposed plans provided by Attorney 1 for the repatriation of the funds because those plans would have required PURSLEY and Co-Conspirator 1 to pay taxes on the repatriated funds, or to report the receipt of the funds to the IRS as a gift.

    d.    They would and did cause the incorporation and formation of nominee United States corporations and limited liability companies, including Diversified, Gulf States, AREP, Global American, and Four Sevens (collectively, the "U.S. Corporations").

    e.    They would and did cause bank accounts to be opened in the names of the U.S. Corporations and others that were controlled by PURSLEY and Co-Conspirator 1.

    f.    They would and did cause more than $18 million to be transferred from Southeastern Shipping and Pelhambridge's RBS accounts into bank accounts in the names of the

U.S. Corporations and others and cause Attorney 1's IOLTA account to be used as a conduit account for some of those transfers.

g.    They would and did cause the creation of numerous documents that falsely characterized the above-referenced transfers as stock purchases and loans, in order to disguise the true nature of the funds.

h.    They would and did file false personal income tax returns that failed to report the receipt of the repatriated funds as income.

i.    They would and did falsely characterize the funds from Southeastern Shipping and Pelhambridge that were deposited into the bank accounts of the U.S. Corporations as "capital contributions" on the U.S. Corporations' corporate income tax returns, rendering those tax returns false.

j.    They would and did fraudulently cause the funds they withdrew from the bank accounts in the names of the U.S. Corporations to be falsely characterized as non-taxable "loans" or "returns of capital" in the books of the U.S. Corporations and on the U.S. Corporations' corporate tax returns, rendering those tax returns false.

## OVERT ACTS

49.    In furtherance of the conspiracy and to effect the illegal objects thereof, PURSLEY, and his Co-Conspirators, in the Southern District of Texas and elsewhere, committed and caused to be committed the following overt acts, among others, each sub-paragraph constituting a separate overt act:

### *First Movement of Funds*

a.    On or about March 6, 2007, PURSLEY caused Co-Conspirator 1 to enter into a fraudulent stock purchase agreement, wherein Co-Conspirator 1, acting on behalf of

14

a yet-to-be-formed corporation, agreed to purchase 7.5% of the outstanding stock of Gulf States for $900,000.

b.   On or about April 13, 2007, PURSLEY amended Gulf States's articles of incorporation to increase the number of authorized shares to 4,000,000.

c.   On or about May 7, 2007, PURSLEY caused Co-Conspirator 1 to incorporate Diversified Land Holdings, Inc.

d.   On or about October 1, 2007, PURSLEY caused Individual 1 to assume nominal ownership of Pelhambridge.

e.   On or about October 22, 2007, PURSLEY created a false stock sale agreement wherein Pelhambridge agreed to purchase 120,000 shares of stock in Diversified for $960,000.

f.   On or about October 31, 2007, PURSLEY caused employees of Financial Company 1 to hold a sham meeting of the board of directors of Pelhambridge and to create "minutes" of such meeting wherein the board resolved that Pelhambridge would purchase 120,000 shares of stock in Diversified for $960,000.

g.   On or about November 1, 2007, PURSLEY caused employees of Financial Company 1 to transfer $961,000 from Southeastern Shipping's RBS account to Financial Company 1's client trust account.

h.   On or about November 1, 2007, PURSLEY caused employees of Financial Company 1 to transfer $960,000 from Financial Company 1's client trust account to Diversified's account ending 8312.

i.  On or about November 2, 2007, PURSLEY caused Co-Conspirator 1 to transfer $600,000 from Diversified's account ending 8312 to Gulf States's account ending 1940-1.

j.  On or about January 15, 2008, PURSLEY created a false stock sale agreement wherein Pelhambridge agreed to purchase an additional 100,000 shares of stock in Diversified for $875,000.

k.  On or about February 12, 2008, PURSLEY caused employees of Financial Company 1 to hold a sham meeting of the board of directors of Pelhambridge and to create "minutes" of such meeting wherein the board resolved that Pelhambridge would purchase 100,000 shares of stock in Diversified for $875,000.

l.  On or about February 29, 2008, PURSLEY caused employees of Financial Company 1 to transfer $875,000 from Southeastern Shipping's RBS account to Financial Company 1's client trust account.

m.  On or about February 29, 2008, PURSLEY caused employees of Financial Company 1 to transfer $875,000 from Financial Company 1's client trust account to Diversified's account ending 8312.

n.  On or about March 10, 2008, PURSLEY caused Co-Conspirator 1 to transfer $300,000 from Diversified's account ending 8312 to Gulf States's account ending 1940-1.

o.  On or about September 9, 2008, PURSLEY caused employees of Financial Company 1 to open RBS bank account ending 4836 in the name of Pelhambridge.

p.   On or about December 17, 2008, PURSLEY caused employees of Financial Company 1 to transfer $960,000 from Southeastern Shipping's RBS account to Pelhambridge's RBS account.

q.   On or about March 4, 2009, PURSLEY caused employees of Financial Company 1 to hold a sham meeting of the board of directors of Pelhambridge and to create "minutes" of such meeting wherein the board resolved that Pelhambridge would purchase an additional 100,000 shares of stock in Diversified for $900,000.

r.   On or about March 4, 2009, PURSLEY created a false stock sale agreement wherein Pelhambridge agreed to purchase 100,000 shares of stock in Diversified for $900,000.

s.   On or about March 20, 2009, PURSLEY caused employees of Financial Company 1 to transfer $899,965 from Pelhambridge's RBS account to Diversified's account ending 8312.

### Second Movement of Funds

t.   On or about April 16, 2009, PURSLEY and Co-Conspirator 1 met with a Houston-based attorney, Attorney 3, and falsely informed Attorney 3 that Co-Conspirator 1 had signature authority over a foreign bank account controlled by Individual 1 and that Individual 1 had gone missing. Co-Conspirator 1 stated that he wanted to know how to handle the money.

u.   On or about April 17, 2009, PURSLEY and Co-Conspirator 1 retained Attorney 2, and falsely informed Attorney 2 that Individual 1 was the owner of Southeastern Shipping.

17

v.   On or about April 20, 2009, Attorney 3, in a telephone call with PURSLEY, advised PURSLEY of the existence of programs available for disclosing foreign bank accounts but further advised that PURSLEY needed to find a lawyer who regularly dealt with the IRS on those matters.

w.   On or about May 7, 2009, PURSLEY and Co-Conspirator 1 caused Attorney 2 to render two legal opinions stating that Individual 1 was the owner of Southeastern Shipping, based solely on the false information provided by PURSLEY and Co-Conspirator 1.

x.   In or around May 2009, PURSLEY and Co-Conspirator 1 retained Attorney 1, and falsely informed Attorney 1 that Individual 1 was the owner of Southeastern Shipping, and that Individual 1 wanted to gift Southeastern Shipping to Co-Conspirator 1.

y.   On or about May 27, 2009, PURSLEY met with an employee of Financial Company 1 and falsely told that employee that Individual 1 was the owner of Southeastern Shipping.

z.   On or about June 10, 2009, PURSLEY caused Co-Conspirator 1 and Individual 1 to execute letters to Financial Company 1 authorizing PURSLEY to act on their behalf in financial transactions.

aa.  On or about June 30, 2009, PURSLEY and Co-Conspirator 1 entered into the Recruitment Partners limited partnership agreement, wherein Co-Conspirator 1 owned 74%, PURSLEY owned 25%, and a general partner, a limited liability company owned by PURSLEY, owned 1%.

18

bb.   On or about July 2, 2009, PURSLEY caused Attorney 1 to incorporate Australian Partners.

cc.   On or about July 24, 2009, PURSLEY caused Attorney 1 to prepare a false private placement memorandum and subscription agreement wherein Australian Partners purportedly purchased 625,000 shares of Four Sevens for $3,625,000.

dd.   On or about July 30, 2009, PURSLEY caused a false letter to be sent to Financial Company 1 wherein Individual 1, as owner of Southeastern Shipping, authorized the transfer of all issued and outstanding shares of Southeastern Shipping to Australian Partners, and the distribution of a dividend from Southeastern Shipping to Australian Partners for $3,625,000.

ee.   On or about August 26, 2009, PURSLEY caused employees of Financial Company 1 to hold a sham meeting of the board of directors of Southeastern Shipping and to create "minutes" of such meeting wherein the board resolved that Individual 1's shares in Southeastern Shipping would be transferred to Australian Partners.

ff.   In or around August 2009, PURSLEY asked Attorney 1 to use Attorney 1's IOLTA account to receive funds from Southeastern Shipping's RBS account in the Isle of Man.

gg.   On or about August 28, 2009, PURSLEY caused employees of Financial Company 1 to transfer $3,625,000 from Southeastern Shipping's RBS account to Attorney 1's IOLTA account.

hh.   On or about August 31, 2009, PURSLEY caused Attorney 1 to transfer $3,600,000 from Attorney 1's IOLTA account to Four Sevens's accounts ending 3314 and 3359.

ii.    On or about August 31, 2009, PURSLEY caused Attorney 1 to transfer $25,000 from Attorney 1's IOLTA account to Four Sevens's account ending 5710.

jj.    On or about September 22, 2009, PURSLEY and Individual 1 met with employees of Financial Company 1, and falsely advised those employees that Individual 1 was the true owner of Southeastern Shipping.

kk.    On or about January 28, 2010, PURSLEY caused Attorney 1 to prepare a false private placement memorandum and subscription agreement wherein Australian Partners purportedly purchased 500,000 shares of AREP for $3,900,000.

ll.    On or about March 8, 2010, PURSLEY caused Attorney 1, as a director of Australian Partners, to send a false letter to employees of Financial Company 1 directing Southeastern Shipping to declare and distribute to Australian Partners a dividend of $3,900,000 to allow Australian Partners to purchase 500,000 shares of AREP.

mm.    On or about March 15, 2010, PURSLEY caused employees of Financial Company 1 to transfer $3,900,000 from Southeastern Shipping's RBS account to Attorney 1's IOLTA account.

nn.    On or about March 16, 2010, PURSLEY caused Attorney 1 to transfer $3,900,000 from Attorney 1's IOLTA account to AREP's account ending 4315.

oo.    On or about July 12, 2010, PURSLEY caused Attorney 1 to prepare a false private placement memorandum and subscription agreement wherein Australian Partners purportedly purchased 843,000 shares of Global American for $7,797,750.

pp.    On or about July 25, 2010, PURSLEY caused Attorney 1, as a director of Australian Partners, to send a false letter to employees of Financial Company 1 directing

Southeastern Shipping to declare and distribute to Australian Partners a dividend of $7,797,750 to allow Australian Partners to purchase 843,000 shares of Global American.

qq.   On or about July 27, 2010, PURSLEY caused employees of Financial Company 1 to transfer $3,898,875 from Southeastern Shipping's RBS account to Attorney 1's IOLTA account.

rr.   On or about July 28, 2010, PURSLEY caused Attorney 1 to transfer $3,898,875 from Attorney 1's IOLTA account to Global American's account ending 4265.

ss.   On or about August 17, 2010, Co-Conspirator 1 transferred $300,000 from AREP's Wells Fargo bank account ending 4315 to PURSLEY's Pursley Interests Smart Financial account ending 0370.

tt.   On or about September 7, 2010, PURSLEY caused employees of Financial Company 1 to transfer $3,898,875 from Southeastern Shipping's RBS account to Attorney 1's IOLTA account.

uu.   On or about September 13, 2010, PURSLEY caused Attorney 1 to transfer $3,898,500 from Attorney 1's IOLTA account to Global American's account ending 4265.

vv.   In or about April 2012, in consultation with PURSLEY, Attorney 1 and Individual 1 caused Southeastern Shipping to write-off the loan to Pelhambridge, which then amounted to more than $3.1 million.

### *Tax Filings*

ww.   On or about July 31, 2008, PURSLEY filed with the IRS a false Form 1040, U.S. Individual Income Tax Return ("Form 1040"), for tax year 2007 that failed to report

approximately $600,000 in income he earned for his participation in the tax fraud scheme.

xx.    On or about October 13, 2009, PURSLEY filed with the IRS a false Form 1040 for tax year 2008 that failed to report approximately $300,000 in income he earned for his participation in the tax fraud scheme.

yy.    On or about August 7, 2010, PURSLEY filed with the IRS a false Form 1040 for tax year 2009 that failed to report approximately $3,625,000 in income he earned and the 25% ownership interest he received in Recruitment Partners for his participation in the tax fraud scheme .

zz.    On or about October 12, 2011, PURSLEY filed with the IRS a false Form 1040 for tax year 2010 that failed to report approximately $300,000 in income he earned for his participation in the tax fraud scheme.

aaa.   On or about January 8, 2009, Co-Conspirator 1 filed with the IRS a false Form 1040 for tax year 2007 that failed to report approximately $361,000 in income he earned from Southeastern Shipping.

bbb.   On or about October 21, 2009, Co-Conspirator 1 filed with the IRS a false Form 1040 for tax year 2008 that failed to report approximately $1,555,000 in income he earned from Southeastern Shipping.

ccc.   On or about October 11, 2011, Co-Conspirator 1 filed with the IRS a false Form 1040 for tax year 2010 that failed to report more than $11 million in income he earned from Southeastern Shipping.

50.    In addition to the overt acts alleged in Paragraphs 49 and 51 of this Indictment, sub-paragraphs inclusive, PURSLEY and Co-Conspirator 1, in furtherance of the conspiracy,

used the funds from Southeastern Shipping's RBS account for PURSLEY and Co-Conspirator 1's personal gain, including the following transactions, among others, each sub-paragraph constituting a separate overt act:

a. On or about November 5, 2007, PURSLEY transferred approximately $250,000 from Gulf States's account ending 1940-1 to PURSLEY'S personal account ending 8081.

b. On or about December 11, 2007, PURSLEY transferred approximately $383,601 from Gulf States's account ending 1072 and used these funds to purchase two houses in the Houston area.

c. On or about June 11, 2010, PURSLEY withdrew approximately $500,000 from Four Sevens's account ending 3314 and used these funds to purchase in the name of Pursley Interests a partial ownership in a real estate investment company.

d. On or about June 25, and August 2, 2010, PURSLEY withdrew approximately $50,000 and $852,117, respectively, from Four Sevens's account ending 3314, and used these funds to purchase a vacation home in Vail, Colorado, in the name of Arosa Partners.

e. On or about October 25, 2011, PURSLEY transferred approximately $1,395,786 from Four Sevens's account ending 7149 to PURSLEY's personal E-Trade account ending 4096.

f. On or about December 17, 2012, PURSLEY transferred approximately $333,057 from Four Sevens account ending 7448 to PURSLEY's personal account ending 0040.

g.   On or about December 17, 2012, PURSLEY transferred approximately $257,300 from Gulf States's account ending 1072 to PURSLEY's personal account ending 1147.

51.   In addition to the overt acts alleged in Paragraphs 49 and 50 of this Indictment, sub-paragraphs inclusive, PURSLEY and Co-Conspirator 1, in furtherance of the conspiracy, disguised the receipt of the funds PURSLEY and Co-Conspirator 1 received from Southeastern Shipping's RBS account in the following ways, among others, each sub-paragraph constituting a separate overt act:

a.   On or about July 30, 2008, PURSLEY caused to be filed with the IRS a false Form 1120, U.S. Corporation Income Tax Return ("Form 1120"), for Gulf States for tax year 2007 that, among other falsities, reported the $250,000 transfer mentioned in paragraph 50a as a "promissory note receivable" on the Schedule L, Line 14, "Other Assets," and reported the $383,601 transfer referenced in paragraph 50b, on the Schedule L, Line 9, "Other investments."

b.   On or about September 15, 2009, PURSLEY caused to be filed with the IRS a false Form 1120 for Gulf States for tax year 2008 that, among other falsities, reported the $250,000 transfer mentioned in paragraph 50(a), as a "promissory note receivable" on the Schedule L, Line 14, "Other Assets, " and reported the $383,601 transfer referenced in paragraph 50b, on the Schedule L, Line 9, "Other investments."

c.   On or about August 27, 2010, PURSLEY provided his and Co-Conspirator 1's tax return preparer unsigned copies of certain of the fraudulent promissory notes: (i) for a $910,000 "loan" from Four Sevens to Arosa Partners, LLC; (ii) for a $1,600,000

"loan" from Diversified to Co-Conspirator 1; and (iii) a $1,000,000 "loan" from AREP to Co-Conspirator 1.

d.  On or about September 13, 2010, PURSLEY caused to be filed with the IRS a false Form 1120 for Gulf States for tax year 2009 that, among other falsities, reported the $250,000 transfer referenced in paragraph 50a, as a "promissory note receivable" on the Schedule L, Line 14, "Other Assets, " and reported the $383,601 transfer referenced in paragraph 50b, on the Schedule L, Line 9, "Other investments."

e.  On or about August 2, 2011, PURSLEY caused to be filed with the IRS a false Form 1120 for Gulf States for tax year 2010 that, among other falsities, reported the $250,000 and $383,601 transfers referenced in paragraphs 50a and 50b, respectively, as a reduction to "Additional paid-in capital" on the Schedule L, Line 23.

f.  On or about August 2, 2011, PURSLEY caused to be filed with the IRS a false Form 1120 for Four Sevens for tax year 2010 that, among other falsities, reported the real estate investment and vacation home purchases referenced in paragraphs 50c and 50d, respectively, as "promissory notes" on the "Itemized Other Assets Schedule."

g.  On or about August 28, 2012, PURSLEY caused to be filed with the IRS a false Form 1120 for Four Sevens for tax year 2011 that, among other falsities, reported the real estate investment and vacation home purchases referenced in paragraphs 50c and 50d, respectively, as "promissory notes" on the "Itemized Other Assets Schedule." PURSLEY also falsely reported the $1,395,786 transfer referenced in paragraph 50e as a reduction to "Capital Stock" on the Schedule L.

h.  On or about September 13, 2013, PURSLEY caused to be filed with the IRS a false Form 1120 for Gulf States for tax year 2012 that, among other falsities, reported the

transfer of $257,300 referenced in paragraph 50g, as a reduction to "Other investments," Line 9 and a reduction to "Additional paid-in capital," Schedule L, Line 23.

i.   On or about September 13, 2013, PURSLEY caused to be filed with the IRS a false Form 1120 for Four Sevens for tax year 2012 that, among other falsities, reported the real estate investment and vacation home purchases referenced in paragraphs 50c and 50d, respectively, as "promissory notes" on the "Itemized Other Assets Schedule;" falsely reported the transfer of $333,057 reference in paragraph 50f as a reduction of more than $300,000 of "Other Investments" on Line 9 of Schedule L; removed the $500,000 promissory note referenced in paragraph 50c from Schedule L, Line 14, "Other Assets"; and reflected a reduction in the outstanding common stock on Line 22b of Schedule L.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### (Tax Evasion - PURSLEY (2009))

52.   The allegations set forth in Paragraphs 1, 4, 7 through 10, 13, 14, 16, 18 through 20, 31 through 36, 39 through 44, 49x through 49ii, 49yy, 50c through 50f, 51c, 51f, 51g, and 51i of this Indictment are re-alleged and expressly incorporated herein as if copied verbatim.

53.   On or about June 7, 2010, PURSLEY drafted a false "promissory note" wherein Four Sevens agreed to loan Pursley Interests $500,000.

54.   On or about August 1, 2010, PURSLEY drafted a false "promissory note" wherein Four Sevens agreed to loan Arosa Partners $910,000.

55. On or about January 14, 2014, PURSLEY caused Four Sevens to transfer the promissory note to Arosa JV, LLC, a Nevada limited liability company, which was owned 49% by Four Sevens and 51% by Arosa Partners.

56. From in or about January 2009 through the present, in the Southern District of Texas and elsewhere, the defendant,

**JACK STEPHEN PURSLEY,**

a resident of Houston, Texas, willfully attempted to evade and defeat income tax due and owing by him and his spouse for tax year 2009, by committing the following affirmative acts, among others:

   a. using Four Sevens, Pursley Interests, and Arosa Partners to hide PURSLEY's receipt of $3,625,000 in income from Southeastern Shipping in tax year 2009;

   b. using Attorney 1's IOLTA account to facilitate and further disguise the transfer of funds into Four Sevens's bank accounts;

   c. preparing and causing to be prepared false documents to disguise PURSLEY's receipt of income as a purported investment in Four Sevens;

   d. preparing and causing to be prepared false documents to further disguise income transferred out of Four Sevens's bank accounts as loans to and subsequent investments by Pursley Interests and Arosa Partners;

   e. transferring and causing to be transferred funds from Four Sevens's bank accounts to PURSLEY's personal bank accounts, among others, for PURSLEY's personal use;

   f. submitting and causing to be submitted to the IRS a false Form 1040, for tax year 2009 that failed to report income earned during that year;

27

g.    submitting and causing to be submitted to the IRS false U.S. Corporation Income Tax Returns, Forms 1120, for Four Sevens for tax years 2009 through 2017.

In violation of Title 26, United States Code, Section 7201.

### COUNT THREE
### (Tax Evasion - PURSLEY (2010))

57.    The allegations set forth in Paragraphs 1, 4, 7 through 10, 13, 14, 16, 18 through 20, 31 through 37, 39 through 44, 49x through 49ff, 49jj through 49nn, 49zz, and 51c of this Indictment are re-alleged and expressly incorporated herein as if copied verbatim.

58.    On or about August 17, 2010, PURSLEY directed Co-Conspirator 1 to transfer $300,000 from AREP's account ending 4315 to the Pursley Interests account ending 0370.

59.    On or about August 17, 2010, PURSLEY caused a false agreement to be drafted that purportedly sold to AREP for $300,000 an interest in revenues received by Pursley Interests in an investment in a real estate investment company.

60.    On or about February 15, 2011, PURSLEY caused $77,000 to be transferred from Pursley Interests's account ending 0370 to Arosa Partners's accounts ending 0290 and 0300.

61.    On or about September 23, 2011, PURSLEY transferred $222,000 from Pursley Interests's account ending 0370 to PURSLEY'S personal E-Trade account ending 4096.

62.    From 2011 through at least 2012, PURSLEY withdrew at least $77,000 from Arosa Partners's accounts ending 0290 and 0300 to pay for expenses associated with his Vail house.

63.    From in or around August 2010 through in or around December 31, 2012, in the Southern District of Texas and elsewhere, the defendant,

**JACK STEPHEN PURSLEY,**

a resident of Houston, Texas, willfully attempted to evade and defeat income tax due and owing by him and his spouse for tax year 2010, by committing the following affirmative acts, among others:

a.    using Pursley Interests, Arosa Partners, and AREP to hide PURSLEY'S receipt of $300,000 from Southeastern Shipping in tax year 2010;

b.    prepared and causing to be prepared false documents to disguise PURSLEY'S receipt of income as a purported investment in Pursley Interests;

c.    transferring and causing to be transferred funds from Pursley Interests's bank accounts to Arosa Partners's bank account for PURSLEY'S personal use;

d.    transferring and causing to be transferred funds from Pursley Interests's bank accounts to PURSLEY'S personal E-Trade account for his own use;

e.    submitting and causing to be submitted to the IRS a false Form 1040 for tax year 2010 that failed to report income earned during that year.

In violation of Title 26, United States Code, Section 7201.

## COUNT FOUR
### Violation: 26 U.S.C. § 7201
### (Tax Evasion - Co-Conspirator 1 (2010))

64.    The allegations set forth in Paragraphs 1, 4, 7 through 10, 13, 14 through 16, 18 through 20, 31 through 35, 37 through 41, 49w through 49z, 49bb, 49ee, 49ff, 49jj-49uu, 49ccc, and 58 of this Indictment are re-alleged and expressly incorporated herein as if copied verbatim.

65.  On or about June 3, 2010, PURSLEY caused Attorney 1 to form a new Texas limited

liability company, AREP Ritz Partners, LLC ("AREP Ritz Partners") with Co-Conspirator

1 as its sole member.

66.  On or about June 4, 2010, PURSLEY caused the drafting of a false "promissory note"

wherein AREP Ritz Partners purportedly borrowed $1,000,000 from AREP.

67.  On or about September 2, 2011, PURSLEY counseled Co-Conspirator 1 to prepare and

submit to the IRS a false Form 1120, for AREP, for tax year 2010, which falsely reported

the purported $1 million loan to AREP Ritz Partners, and AREP's purported share of

Pursley Interests's investment in a real estate investment company.

68.  On or about September 2, 2011, PURSLEY counseled Co-Conspirator 1 to prepare and

submit to the IRS a false Form 1120, for Global American, for tax year 2010 to further

disguise Co-Conspirator 1's receipt of income as a purported investment in Global

American.

69.  On or about October 11, 2011, PURSLEY counseled Co-Conspirator 1 to prepare and

submit to the IRS a false Form 1040, for Co-Conspirator 1 for tax year 2010, which was

false in that it failed to report more than $11 million that Co-Conspirator 1 received in

income from Southeastern Shipping during that year.

70.  From in or around January 2010 through in or about October 2011, in the Southern District

of Texas and elsewhere, the defendant,

**JACK STEPHEN PURSLEY,**

a resident of Houston, Texas, willfully attempted to evade and defeat income tax due and

owing by Co-Conspirator 1 to the United States of America, for tax year 2010, by

committing the following affirmative acts, among others:

a.      using AREP and Global Properties to hide Co-Conspirator 1's receipt of more than

$11.3 million from Southeastern Shipping in tax year 2010;

b.      using Attorney 1's IOLTA account to facilitate and further disguise the transfer of

funds from Southeastern Shipping into AREP's and Global Properties's bank

accounts;

c.       preparing and causing to be prepared false tax returns and other documents to

disguise Co-Conspirator 1's receipt of income as purported investments in AREP

and Global Properties.

In violation of Title 26, United States Code, Section 7201.

Original Signature on File

FOREPERSON

RYAN K. PATRICK
United States Attorney
Southern District of Texas

By: _____

NANETTE L. DAVIS, Senior Litigation Counsel
GRACE ALBINSON, Trial Attorney
SEAN BEATY, Trial Attorney
Tax Division, U.S. Department of Justice