UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:18-CR-575 |
| | § | (HUGHES) |
| JACK STEPHEN PURSLEY, | § | |
| AKA STEVE PURSLEY | § | |

**GOVERNMENT'S STATEMENT OF AUTHORITIES IN SUPPORT OF MOTION TO TAKE RULE 15 DEPOSITION OF KERRY SMITH**

The United States respectfully submits this statement of authorities in support of its motion pursuant to Federal Rule of Criminal Procedure 15 ("Rule 15") to take the deposition of Kerry Smith ("Smith"), a resident of the Isle of Man, for use at the trial of defendant Jack Stephen Pursley. As we demonstrate below, Smith, a former employee of "Financial Company 1," as referenced in Indictment 4:18-CR-575 (HUGHES) (the "Indictment"), is an "unavailable" witness within the meaning of Rule 15 and her testimony is unquestionably material to issues at trial. (Doc. 1). Accordingly, the Government's motion should be granted.

**BACKGROUND**

**1. The Indictment and Financial Company 1's Role**

The facts concerning the underlying offenses and the defendant's role are set forth in the Indictment and will not be repeated here at length. As pertinent to this motion, the Indictment alleges that the defendant conspired with a co-conspirator ("Co-Conspirator 1," as referenced in the Indictment) to transfer more than $18 million in untaxed income earned by Co-Conspirator 1 from bank accounts in the Isle of Man to accounts in the United States. (Doc. 1, ¶ 2). These accounts were controlled by the defendant and Co-Conspirator 1, and the defendant designed the

transfer of the funds in a manner that would avoid detection by the Internal Revenue Service. (Doc. 1, ¶¶ 16, 22, 23, 25, 36-38). The untaxed income originated from the proceeds of the operations of Southeastern Shipping Company Limited ("Southeastern Shipping"), which was Co-Conspirator 1's lucrative oil-rig staffing business incorporated in the Isle of Man.

Co-Conspirator 1 incorporated Southeastern Shipping in the Isle of Man under a nominal owner, who was a longtime friend of Co-Conspirator 1's and a Brazilian citizen ("Individual 1," as referenced to in the Indictment). (Doc. 1, ¶ 15). A financial services company located in the Isle of Man ("Financial Company 1," as referenced in the Indictment), managed Southeastern Shipping's Royal Bank of Scotland ("RBS") bank account from which the untaxed funds originated, and managed the payroll of Southeastern Shipping. (Doc. 1, ¶ 8). Among the services provided by Financial Company 1 were the establishment of corporate entities and the maintenance of Isle of Man-based bank accounts for those entities. Smith served as Financial Company 1's compliance officer from in or around 2009 until in or around August 2013 when she began working for Boston Limited. Boston Limited acquired Financial Company 1 on or about April 1, 2013.

The defendant and Co-Conspirator 1 moved the first set of funds during 2007 to 2009, consisting of approximately $2,735,000 million, of which the defendant received $900,000 in compensation, and Co-Conspirator 1 received the remainder. (Doc. 1, ¶¶ 26, 28). In early 2009, when Smith was hired as compliance officer for Financial Company 1, she contacted Co-Conspirator and questioned him about his ownership of Southeastern Shipping. (Doc. 1, ¶ 31). As a result, Co-Conspirator 1 travelled to the Isle of Man to meet with Smith. During this meeting, Smith informed Co-Conspirator 1 that she believed he, not Individual 1, was the owner of Southeastern Shipping. At that point, Co-Conspirator 1 decided to move the remaining funds,

approximately $15,325,000, in Southern Shipping's RBS account back to the United States and solicited the defendant's help in doing so. *Id.*

The defendant, working with Attorney 1 (as referenced in the Indictment) devised a scheme to paper over the movement of funds from the RBS account to the United States. The first plan that the defendant and Attorney 1 discussed was that a Texas corporation called Acquisition Partners, Ltd., owned by Co-Conspirator 1, would purchase Southeastern Shipping from Individual 1 for $100,000, and Co-Conspirator 1 would pay qualified dividend taxes on money distributed from Southeastern Shipping to Co-Conspirator 1. (Doc. 1, ¶ 34). The plan was rejected by the defendant because of the tax consequences, and soon thereafter, the defendant devised a plan to make the money transfers appear to be stock purchases in newly-formed United States corporations controlled by the defendant and Co-Conspirator 1 by a newly-formed Australian corporation, Australian Partners Holding Corporation PTY Limited ("Australian Partners"), which was nominally owned by Individual 1. (Doc. 1, ¶¶ 34, 35, 39). In order to make it appear that Australian Partners had the funds to invest in the United States corporations, the defendant had Individual 1 transfer ownership of Southeastern Shipping to Australian Partners, and cause Southeastern Shipping to issue a "dividend" to Australian Partners. (Doc. 1, ¶ 48dd). After this occurred, the defendant, with the help of Financial Company 1 and Attorney 1, wire transferred the remaining funds in Southeastern Shipping's RBS account to bank accounts controlled by the defendant and Co-Conspirator 1 and in the name of the United States corporations. (Doc. 1, ¶¶ 48gg, 48hh, 48ii, 48mm, 48nn). The defendant and Co-Conspirator 1 then withdrew the funds from these United States accounts, purchased personal items or transferred funds to personal bank accounts, and reflected these withdrawals as loans or "returns of capital" on their corporate tax returns. (Doc. 1, ¶¶ 50, 51).

The defendant reported none of the income he received from abroad, approximately $4,825,000, on his tax returns for tax years 2007 through 2010, and Co-Conspirator 1 reported none of this income on his tax returns for tax years 2007, 2008, and 2010.  (Doc. 1, ¶¶ 49ww-49ccc).

## 2. Kerry Smith's Role With Respect to Financial Company 1

Kerry Smith is a resident of the Isle of Man and is believed to be a citizen of the United Kingdom of Great Britain.  From at least 2009 through August 2013, Smith was employed by Financial Company 1 as a compliance officer, and part of her role was to ensure that Financial Company 1's business was compliant with United States tax laws.  In August 2013, she left Financial Company 1 and began working for Boston Limited, a company that provides similar services as Financial Company 1.  In August 2018, Smith left Boston Limited and joined Quinn Legal, an Isle of Man company, as Head of Regulation and Compliance, where she is currently employed.

During the course of its ongoing investigation, the Government has obtained various documents from Financial Company 1, Boston Limited, and grand jury subpoenas issued to United States corporations owned by the defendant, and has conducted numerous witness interviews.  These documents and interviews reflect in pertinent part that:  (i) on May 27, 2009, Smith met with the defendant in the Isle of Man and discussed the "Acquisition Agreement" between Co-Conspirator 1 and Individual 1, and subsequently discussed that this plan to move funds back to the United States was to change; (ii) on September 22, 2009, the defendant, Individual 1, and Co-Conspirator 1 traveled to the Bahamas to meet with Smith, and during this trip the defendant told Smith that Individual 1 was the owner of Southeastern Shipping; (iii) during both of the aforementioned meetings, the defendant discussed with Smith the movement

of funds from the Isle of Man back to the United States and moving this money in the form of a purchase of Southeastern Shipping, or of stock purchases in United States companies by Australian Partners; and (iv) the defendant corresponded on via email on numerous occasions with Smith concerning the ownership of Southeastern Shipping, and the movement of funds out of the RBS account to the United States.

### 3. Smith's Refusal to Submit to a Voluntary Interview in the Isle of Man Makes Her Unavailable for Trial

On February 17, 2016 and March 15, 2016, the Tax Division issued two separate requests for assistance to the Isle of Man authorities pursuant to the Treaty between the Government of the United States and the Government of the United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters extended to the Isle of Man ("MLATs"). *See* Declaration of G. Albinson, at ¶ 2. These MLAT requests, among other items, sought an interview with Smith in the Isle of Man. *Id*.

The Tax Division, through the Department of Justice's Office of International Affairs and the Competent Authority of the Isle of Man, has been in contact with Smith in connection with the requested interview. The Isle of Man authorities informed Smith, at the request of the Tax Division, that if she has an attorney, the Tax Division would like to speak with said attorney in relation to the requested interview, and that the Tax Division prosecutors would travel to the Isle of Man in order to conduct an interview with Smith. Despite the foregoing, no attorney has contacted the Tax Division on behalf of Smith, and Smith informed the Isle of Man authorities, by letter dated June 7, 2017, that she would "politely decline the request to attend a voluntary interview." *See* Exhibit A to Albinson Decl.

## **ARGUMENT**

The Court should grant the Government's request to take Smith's deposition in a foreign country pursuant to Rule 15 because all the criteria under the governing legal standard are satisfied here.

Rule 15 provides that a court may, upon a party's motion, order the deposition of a witness for use at trial "because of exceptional circumstances and in the interest of justice." To support its request to take a Rule 15 deposition, the Fifth Circuit generally requires that the movant demonstrate that the prospective witness is unavailable for trial, and that the witness's testimony is material. *See United States v. Calderon-Lopez*, 268 F. App'x 279, 288–89 (5th Cir. 2008); *United States v. Aggarwal*, 17 F.3d 737, 742 (5th Cir. 1994).

The first requirement of the Rule 15 standard is satisfied here. Because she is believed to be a citizen of United Kingdom and resident of the Isle of Man, Smith is beyond this Court's subpoena power and cannot be compelled to appear. The Fifth Circuit has held that "an unservable deponent who is unlikely to return to the United States" can be a qualifying exceptional circumstance. *United States v. Dillman*, 15 F.3d 384, 389 (5th Cir. 1994) (citing *United States v. Farfan-Carreon*, 935 F.2d 678, 680 (5th Cir. 1991)); *see also Farfan-Carreon*, *id.* ("Because Pilingas is a Mexican national, he is beyond the subpoena power of the court, and could not be compelled to appear. While the trial judge suggested that Pilingas might return voluntarily, we find that possibility unlikely in light of the government's threat to prosecute him if he entered the country." (internal citation omitted)). Furthermore, via the Competent Authorities of the United States and the Isle of Man, the Tax Division reached out to Smith and offered to travel to the Isle of Man in order to interview her, at no cost to Smith. Smith declined the invitation, and has memorialized her position in a letter. *See* Exhibit A to Albinson Decl.

Since Smith will not agree to be interviewed in her native country, at no cost to her, it follows that she would refuse any request to travel to the United States for testimony at trial. Plainly, Smith is "unavailable" under the governing standard.

Smith's testimony is also indisputably material. As outlined above, Smith met with the defendant on numerous occasions, during which time, Co-Conspirator 1 was not always present. During these meetings, the defendant appears to have convinced Smith that Individual 1 was the true owner of Southeastern Shipping. In a memorandum to the file dated September 22, 2009 and provided in response to the second MLAT to the Isle of Man, Smith writes that her trip to the Bahamas "achieved [her] objective of verifying [Individual 1] is who he says he is" and notes that "over the next 6 months further dividend requests will be made and those monies will be invested in a series of new companies," referencing the United States corporations owned by the defendant and Co-Conspirator 1. An earlier series of emails, from August 26, 2009, between Smith and the defendant discuss know your client documentation for Australian Partners, and Smith refers to changing ownership of Southeastern Shipping from Individual 1 to Australian Partners. As discussed above, this transfer in ownership was a necessary part of the conspiracy, as it allowed Australian Partners to appear to have funds to invest in the United States corporations controlled by the defendant and Co-Conspirator 1.

These communications as a whole show that Smith had knowledge of the tax scheme and its varying versions, and discussed it with the defendant. Smith's testimony is material and essential regarding a central issue in the Government's case – the defendant's knowledge that Co-Conspirator 1 owned Southeastern Shipping, not Individual 1. This testimony goes directly to an element of the crime of conspiracy to defraud the United States, 18 U.S.C. § 371, as charged in the Indictment, in that it would tend to establish the defendant's knowing and

voluntary participation in the conspiracy. It is anticipated that the defendant will proffer a defense that he was not aware that Co-Conspirator 1 was the true owner of Southeastern Shipping. Smith's testimony could disprove this, and is therefore material. Moreover, two of the over acts in the conspiracy count of the Indictment involve the defendant's meetings with Smith in the Isle of Man and in the Bahamas. (Doc. 1, ¶¶49y and 49jj). Without Smith's testimony, the Government would be left with purely documentary evidence to prove what took place in those meetings.

Also, as discussed in the Government's Notice of Intention to Use Records of Regularly Conducted Business Activity (Doc. 16), the Government has not been able to obtain a business records certification from Boston Limited that mirrors the precise language of 18 U.S.C. § 3505, due to the transfer of records from Financial Company 1 to Boston Limited, although the Government has obtained a deposition certification from a representative of Boston Limited about the production of records. Smith – as an employee of both Financial Company 1 and Boston Limited – could provide the precise foundation for the admission of the records under the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(5). In sum, there can be little dispute that Smith can provide testimony that is material to the charges in the Indictment.

Finally, the Government's request is being made more than six weeks ahead of the scheduled trial date on November 27, 2018, and is therefore timely.

Pursuant to Rule 15(d), if this Court grants the Government's motion, and determines that the defendant is unable to bear the cost of traveling to the deposition and any accompanying costs, the Government will pay any reasonable travel and subsistence expenses of the defendant and one of the defendant's attorneys to attend the deposition, and will pay the costs of the deposition transcript.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the Court should GRANT the Government's motion to take the Rule 15 deposition of Kerry Smith in the Isle of Man.

DATED: October 11, 2018

Respectfully Submitted,

RYAN K. PATRICK
United States Attorney
Southern District of Texas

By: /s/ *Grace Albinson*
Nanette L. Davis, Senior Litigation Counsel
Nanette.L.Davis@usdoj.gov
Grace E. Albinson, Trial Attorney
Grace.E.Albinson@usdoj.gov
Sean P. Beaty, Trial Attorney
Sean.P.Beaty@usdoj.gov
U.S. Department of Justice, Tax Division
601 D Street, N.W., Room 7634
Washington, DC 20004
(202) 514/8030/616-3311/616-2717