UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | Case 4:18-cr-00575 |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| JACK STEPHEN PURSLEY, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION
FOR AN ORDER TO TAKE RULE 15 DEPOSITION**

TO THE HONORABLE COURT:

COMES NOW, JACK STEPHEN PURSLEY ("Defendant" or "Pursley"), by and through undersigned counsel, Michael Louis Minns and Ashley Blair Arnett, and respectfully moves this Court to deny the Government's Motion for an Order To Take Rule 15 Deposition filed on October 11, 2018.

## BACKGROUND

Pursley was indicted on September 20, 2018, for one count of conspiracy to commit income tax evasion under 18 U.S.C. § 371 and three counts of tax evasion under 26 U.S.C. § 7201. Two of the three § 7201 counts are for alleged evasion of Pursley's taxes and one count is for evasion of the alleged co-conspirator's taxes. The "secret" alleged "Co-Conspirator 1" is the unindicted beneficiary of the alleged bargain, Shaun Mooney ("Mooney"). Mooney hired former Department of Justice attorney, Jack Townsend ("Townsend"), to secretly and successfully lobby the Government to indict his former minority business partner, the Defendant

herein, and to gain an advantage in their civil disputes. The case could more accurately be styled "Shaun Mooney, with the assistance of the USA v. Stephen Pursley."

ARGUMENT

**BECAUSE THE GOVERNMENT CANNOT MEET THE LEGAL STANDARD FOR A RULE 15 DEPOSITION, ITS MOTION MUST BE DENIED.**

The Government requests an order to depose Kerry Smith ("Ms. Smith") in the Isle of Man. Its Motion should be denied. The last-minute effort of the Government to achieve this extraordinary relief (which, if justified at all, should have been requested over a year ago, pre-indictment) would, if allowed, seriously impair Pursley's ability to prepare for trial less than five weeks away. The Government has still not provided necessary cross-examination material it now contends will only be tendered after this witness is excused and unavailable. It has not established that exceptional circumstances justify a Rule 15 deposition. It has not established that Ms. Smith's testimony is necessary to prevent a failure of justice; it has not established that her testimony is material. Nor can it establish any of these elements required to allow a Rule 15 deposition. In addition, the Government's Motion fails to address several legal and logistical issues that arise from the proposed deposition at this late date. Reading the Government's previously secret correspondence with Ms. Smith (only disclosed to argue this motion) it appears she would not privately speak with them. So, what they really want is impermissible discovery.

I.  **RULE 15 DEPOSITIONS ARE DISFAVORED; THEY ARE ALLOWED ONLY IN EXCEPTIONAL CIRCUMSTANCES.**

> Depositions are generally disfavored in criminal cases. Their only authorized purpose is to preserve evidence, not to afford discovery. In particular, because of the absence of procedural protections afforded parties in the United States, foreign depositions are suspect and, consequently, not favored.

*United States v. Drogoul*, 1 F.3d 1546, 1551 (11th Cir. 1993) (quotation marks and citations omitted). Nonetheless, Federal Rule of Criminal Procedure 15 provides that "[a] party may

move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of *exceptional circumstances* and in the interest of justice...." Fed. R. Crim. P. 15(a)(1) (emphasis added). But "pretrial depositions in criminal cases are highly unusual. Rule 15 of the Federal Rules of Criminal Procedure provides for their use only in 'exceptional circumstances.'" *United States v. Britton-Harr*, No. CR 2:10-1164, 2017 WL 3648227, at *12 (S.D. Tex. Aug. 21, 2017) (slip copy) (quoting *United States v. Lucas*, 516 F.3d 316, 348 (5th Cir. 2008)). "Exceptional circumstances" means "that only in extraordinary cases will depositions be compelled." *Id*. at *12 (internal citations and quotations marks omitted). *See United States v. Guadian-Salazar*, 824 F.2d 344, 347 (5th Cir. 1987) (reversing conviction because there were no "exceptional circumstances" that were sufficient under Rule 15 to justify deposing the witnesses and because the government's use of deposition testimony violated the defendant's constitutional right to confront witnesses).

It is the party seeking a Rule 15 deposition that bears the burden of demonstrating that exceptional circumstances necessitate preservation of testimony through the depositions sought. *See United States v. Kelley*, 36 F.3d 1118, 1124–25 (D.C. Cir. 1994). To meet its burden of establishing exceptional circumstances under Rule 15(a), the movant "must show the witness's unavailability and the materiality of the witness's testimony." *United States v. Cannon*, 475 F.3d 1013, 1022 (8th Cir. 2007) (quotation marks omitted). Moreover, demonstrating "unavailability" requires more than a mere showing that the witness "was outside the jurisdiction of the court [which] simply is not the test of unavailability." *United States v. Rothbart*, 653 F.2d 462, 465 (10th Cir. 1981). *Accord United States v. Tuma*, 738 F.3d 681, 689 (5th Cir. 2013) (Rule 15 motion properly denied where the movant made only conclusory allegations that potential witness had relevant information).

Rule 15 is intended to preserve specific, admissible testimony for trial, and is not to be used for general pretrial discovery. *United States v. Hutchings*, 751 F.2d 230, 236 (8th Cir. 1984) ("Further, Fed. R. Crim. P. 15, which regulates the taking of depositions in criminal cases, has as its stated objective the preservation of evidence for use at trial. The rule does not have as its purpose to provide a method of pretrial discovery."), such as interviewing a witness who refuses to be interviewed.

As explained below, the Government has failed to meet its burden of showing exceptional circumstances. In particular, Ms. Smith's testimony is cumulative and not material; there has been no showing of unavailability; the Government has failed to demonstrate that the evidence sought would be admissible at trial; the request is sought for the purpose of delay; the request is not timely; and the request, if granted, would cause significant burden, expense, and use of resources with only a few weeks left before trial.

## II. THE GOVERNMENT FAILS TO DEMONSTRATE THAT THE PROPOSED DEPOSITION WOULD PROVIDE MATERIAL, NONCUMULATIVE EVIDENCE.

### A. There Has Been No Showing that Ms. Smith's Testimony Would Be Material.

A concrete showing of particular testimony is required for the Court to determine whether exceptional circumstances exist under Rule 15, especially in light of the substantial expense and burden that would result from taking depositions in the Isle of Man just prior to trial. Absent that showing, the Government's Motion should be denied. *See, e.g.*, *United States v. Aggarwal*, 17 F.3d 737, 742 (5th Cir. 1994) (affirming denial of motion for Rule 15 deposition of bank consultant because potential witness's testimony was not material and proposed testimony would come into evidence through other testimony); *United States v. Knox*, 540 F.3d at 717–18 (holding that request to conduct Rule 15 depositions in West Africa "was not

sufficiently 'concrete and particularized' to justify authorizing the expenditures," in part because "[n]o details were given regarding the expected substance of [the witnesses'] testimony"); *United States v. Morrison*, 946 F.2d 484, 490 (7th Cir. 1991) (holding that defendant's motion to conduct depositions at the government's expense was properly denied because "a showing of exceptional circumstances must be considerably more concrete and particularized than mere speculation about the possible need for depositions in the future"). There has been no showing of concrete, particularized materiality that would justify the time, resources, and expense—the "exceptional circumstances"—for taking a deposition in the Isle of Man several weeks before trial.

In addition to demonstrating that the deponent's testimony would be material, the Government must also demonstrate that the testimony sought is not cumulative of other evidence in the case. *See, e.g.*, *United States v. Cannon*, 475 F.3d 1013, 1022 (8th Cir. 2007) (citing Fed. R. Evid. 403, and holding that where proposed testimony of Rule 15 deponent would have contradicted a government witness who was already undermined by direct examination, cross-examination, and other witnesses, the testimony "was not material" because it "was cumulative").

Ms. Smith worked as a compliance officer for the Isle of Man Financial Trust Limited, which was purchased by Boston Limited. The Government refers to this company in its indictment as "Financial Company 1." Isle of Man Financial Trust Limited, through its new owner Boston Limited, has produced documents in response to the Government's document request. The Government claims that Ms. Smith's testimony is material in part to provide the foundation for these documents because the affidavit provided by Boston Limited does not mirror the language in 18 U.S.C. § 3505. Ms. Smith no longer works for Boston Limited/Isle of Man Financial Trust Limited. The Government is requesting that a former employee

authenticate business records[1]. Ms. Smith was not the sole employee of Isle of Man Financial Trust Limited. There are other employees, presumably many, who continue to work for Boston Limited, who could authenticate business records. The Government has made no indication that it cannot find anyone with Boston Limited/Isle of Man Financial Trust Limited who would be willing to voluntarily come to testify at trial or that the Government's lawyers have even asked.

In fact, when asked, by defense counsel, if the Government would consider other, current employees to provide this testimony—particularly the employee who actually set up the account for "Co-Conspirator 1," and also the Government's chief witness, Mooney, who hired former Assistant U.S. Attorney Townsend[2] for the purpose of convincing the Government to indict Pursley—the Government said "No." The Government has not agreed to offer immunity to the employee who actually set the Isle of Man Company up. He would be the preferable witness. Furthermore, the defense has not been asked or given an opportunity to assess whether the Defendant would stipulate to the foundation of some portion or even all of these documents.

The documents that Isle of Man Financial Trust Limited produced include documents that purport to memorialize Ms. Smith's understanding of the ownership of Southeastern Shipping, and presumably all of the testimony of Ms. Smith can be found in those documents. There is no better evidence than the documents that speak for themselves. That does not however, make Ms. Smith observations admissible.

Not only do the documents speak for themselves to the extent they are admissible at all, but Mooney, called Co-Conspirator 1 in the Government's Indictment and publicity release, will be testifying, along with many others who were party to Pursley's alleged communications with

---

[1] The Government disclosed this only recently because of their Motion.
[2] For the purpose of tainting the jury pool and the Houston legal community and assisting his client, the unidentified "co-conspirator" in destroying Pursley's law practice, Townsend has blogged about this case publically. He implies a neutral, academic interest. The truth, of course, is that he is paid by Mooney.

Ms. Smith. The Government claims that Ms. Smith would testify about various meetings with Pursley (Gov't's Stmt., 7), but those meetings were memorialized in the records and attended by others who will be testifying, many of whom are being paid by Mooney or controlled by the Government, or both. Most will not communicate with the defense. Just as the Government wants to get discovery from this single witness who will not talk to them, the defense would appreciate the ability to depose the numerous government witnesses who will not talk to the defense; including but not limited to: Eduard Venerabile, the man Mooney said actually owned the company during the time Mooney now confesses he was committing numerous felonies. Unfortunately, federal law does not allow this discovery. And if it did, the resources to do so would be staggering. When the Government indicts and gives code words for a bevy of unknown co-conspirators, it dictates who will testify by deciding who gets immunity.

Ms. Smith's testimony would be nothing more than cumulative in what is estimated by the Government to be a three-week-long trial. There has been no showing of materiality; only a bald assertion that Ms. Smith's testimony is important to the Government's case without explanation as to why they took no earlier steps to procure it.

**B.    There Has Been No Showing that Ms. Smith Is "Unavailable" in the Meaning of Rule 15.**

Nor has the Government proven Ms. Smith's unavailability to testify at trial. Its only "showing" of unavailability is its weak reasoning that because Government lawyers contacted Ms. Smith and asked to interview her in her home country of the Isle of Man, and she declined (Gov't's Stmt., 6), "it follows that she would refuse a request to travel to the United States for testimony for trial" (*id.* at 7). In support, the Government cites two cases in which a potential deponent was unlikely to enter the United States to travel based on threatened prosecution here. There has been no assertion, much less a showing, that Ms. Smith has been threatened with

prosecution such that her entry into the United States would be unlikely. There is no statement that Ms. Smith was even asked to come to the United States, much less a showing of unavailability. Since she is an apparent undisclosed "co-conspirator" to Mooney, if the Government needed her testimony they might have offered her immunity and perhaps a plane ticket. There has been no discussion of the Government exhausting its substantial ability to secure assistance of potential witnesses. The only argument of unavailability is that she lives in the Isle of Man and wouldn't give an interview there.[3] Being outside this Court's jurisdiction "simply is not the test of unavailability." *Rothbart*, 653 F.2d at 465.

The simplistic assertion that Ms. Smith's refusal to be interviewed means it is unlikely she would travel to the U.S. actually undercuts the Government's Motion. Ms. Smith's decision not to be interviewed makes it *most* unlikely that she *would also refuse to be deposed*. The Government's lawyers must know this, which begs the question why they are bringing this Motion, now.

In sum, the Government has made no showing that Ms. Smith is unavailable to testify at trial, and its Motion should be denied.

## III. THE GOVERNMENT FAILS TO ESTABLISH THAT THE PROPOSED DEPOSITION WOULD RESULT IN EVIDENCE ADMISSIBLE AT TRIAL.

The Government's Motion fails to demonstrate that the testimony sought would be admissible at trial. *See, e.g.*, *United States v. Preciado*, 336 F.3d 739, 744 (8th Cir. 2003) ("Fed. R. Crim. P. 15 provides that courts may order depositions *to preserve testimony for trial*")

---

[3] The Government attorneys in this instance complain the witness would not voluntarily give them an interview (an inconvenience defense lawyers suffer far more often than government lawyers). Until now, particularly since the Government has chosen to hide its interviews, the defense thought Ms. Smith was one of the many witnesses the Government controlled because she refused (less politely than her refusal with the Government) to cooperate with the defense either.

(quotation marks omitted and emphasis added). Especially in light of the substantial burden and expense associated with taking depositions in the Isle of Man, since the Government did not demonstrate that the testimony sought would be admissible, its Motion must be denied.

First, the Government makes no showing that the deposition proposed would produce testimony that would satisfy the Federal Rules of Evidence such that it could be presented at trial. For example, the Government fails to demonstrate that a competent authority would be available to administer an oath that satisfies Federal Rule of Evidence 603. *See, e.g.*, *United States v. Tolliver*, 61 F.3d 1189, 1206 (5th Cir. 1995) (affirming district court's denial of defendant's motion to take telephonic Rule 15 motion of witness on a ship at sea that was based in part on an inability to administer a reliable oath), *vacated on other grounds*, 516 U.S. 1105 (1996), *and vacated on other grounds*, 519 U.S. 802 (1996). The Government simply fails to provide sufficient detail of the anticipated testimony to determine what particular evidentiary issues may arise, such as hearsay or other objections. *See United States v. Ismaili*, 828 F.2d 153, 157, 161 (3d Cir. 1987) (holding that district court did not err in denying defendants' Rule 15 motion to depose witnesses abroad because the witnesses' familiarity with the defendant's company "stemmed from second-hand or third-hand hearsay"). Finally, as more fully discussed in section V below, the Government has so far deliberately refused to tender critical Jencks Act, *Brady*, and related cross-examination materials involving this witness and every witness she is alleged to have talked to. (This issue is already briefed in the defense's pending Motion to Compel.)

Second, Rule 15(c)(2) provides that "a defendant who is not in custody has the right upon request to be present at the deposition, subject to any conditions imposed by the court." The United States required that Pursley turn over his passport and passport card. Pursley co-

operated.  He surrendered it before the indictment.  Counsel has on occasion found the process of retrieving a passport to be tedious even after an acquittal.  The Government has failed to tender its plan for returning the passport.  As a practical and constitutional matter, Pursley would not be able to attend Ms. Smith's deposition in the Isle of Man and that is a requirement of the statute and Sixth Amendment confrontation clause.

Third, Rule l5(e)(2) provides that "[t]he scope and manner of the deposition examination and cross-examination must be the same as would be allowed during trial."  The Government has made no suggestions of procedures to insure compliance with Federal Rules.  To be effective and understand the procedures, local counsel in Isle of man would need to be retained by the defense.

**IV.  THE GOVERNMENT'S MOTION IS UNTIMELY AND WAS FILED PRIMARILY FOR THE PURPOSE OF DELAY.**

A Rule 15 motion must be denied if the movant brings it with unexcused delay.  *United States v. Dearden*, 546 F.2d 622, 625 (5th Cir. 1977).  The Government has been aware of the alleged indicted scheme since Co-Conspirator 1, Mooney, submitted an application to the Offshore Voluntary Disclosure program in May 2013.  The Government's lawyers were reminded in May of 2014 when Mooney's attorney secretly wrote a memo to the IRS-CI detailing an argument over how the Government could get past a statute of limitations defense.  The Government has had ample opportunity to get to the Isle of Man and take Ms. Smith's deposition; apparently, its single attempt, over a year ago, to talk with Ms. Smith was for naught, but it suggests noticing a deposition would be successful.  Now, the Government has waited and it is only a few weeks before trial (including Thanksgiving) to make an extraordinary request, in order to delay the trial setting and deny Pursley his right to a speedy trial.  *See Aggarwal*, 17 F.3d at 742 (affirming denial of motion for Rule 15 deposition based on unexcused delay; although Rule15(a) motion was about a month before trial it was untimely where the evidence showed the

witness's whereabouts and contact information were known four years prior). The delay is not only unexcused; the government has simply leapfrogged over that requirement, not asked to be excused, apparently deciding just to excuse themselves. It is difficult to get to and from the Isle of Man. Such a trip this close to trial interferes with defense trial preparation. Preparing for such a deposition, which cannot even begin adequately until memoranda of interviews are turned over, which the Government stubbornly refuses to do until Thanksgiving (if they decide to at all) would be a nightmare intervening into an already-crowded preparation calendar.

The constant prosecution of this case over many years with many procedures and no indictment until recently has been abusive. The Government- and Mooney-generated publicity has prevented Pursley from effectively practicing law. The Government and Mooney have operated in their own conspiracy in lockstep to publicize this case against Pursley but hide Mooney's name and his former tax counsel's name in the Indictment.[4]

V. **THE GOVERNMENT HAS NOT PROVIDED ADEQUATE DISCOVERY.**

By the Government's admission in its brief, it has conducted numerous witness interviews. (ECF 20.1, p. 4.) The Government has not supplied the defense with these witness interviews (also known as Memorandums of Interview, or MOIs) or the identity of the interviewees. It even attempts to "hide" known players like "Co-Conspirator 1." This is the subject of a Motion to Compel that Defendant filed on October 11, 2018. The Government has indicated it will turn these documents over the week before trial, which is the week of the Thanksgiving holiday, which would be after the proposed deposition. By deliberately holding all relevant records until Thanksgiving (clearly for the sole purpose of making it more difficult for

---

[4] The former tax counsel is Chuck Gillis, referred to as Attorney 1 in the Indictment. Until he made a deal with the Government it was anticipated there would be a joint defense.

the defense to prepare), the Government guarantees this witness would not be sufficiently cross-examined. And without knowing what is in these relevant MOIs, or if there is contradictory testimony from another source, the defense could not be fully prepared to conduct cross-examination, Ms. Smith, if there were to be a deposition before obtaining these documents. Pursley would effectively be denied his right to confrontation.

At trial, Pursley will presumably have, prior to cross-examination, *Brady* and Jencks material and the Special Agent's Report regarding these witnesses. Reading the June 2017 letter of the proposed deponent (*see* ECF 20.3), the real intent of the Government surfaces. This witness (who the Government implies is a co-conspirator) politely refused to be interviewed. The Government wants discovery it cannot otherwise obtain unless, conceivably, it offered the witness immunity. Why did the Government, if it felt just and necessary cause, not raise this issue in July of 2017 when it would not have affected the immediate trial preparation? One can speculate. It had years of pre-trial preparation. The Government's lawyers were unwilling to let the Defendant know they had been secretly collecting information in Isle of Man for two years. Whatever their reasons, they elected not to timely request this authority.

The Government's request for a Rule 15 deposition is too late, and also strangely too early, given that Defendant does not have the discovery the Government must provide prior to cross-examination of the witness.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court deny the Government's Motion for an Order To Take Rule 15 Deposition.

Respectfully submitted on October 22, 2018

MINNS & ARNETT

*/s/ Ashley Blair Arnett*
Michael Louis Minns
State Bar No. 14184300
mike@minnslaw.com
Ashley Blair Arnett
State Bar No. 24064833
ashley@minnslaw.com
9119 S. Gessner, Suite 1
Houston, Texas 77074
Telephone: (713) 777-0772
Telecopy: (713) 777-0453
***Attorneys for Jack Stephen Pursley***

# CERTIFICATE OF SERVICE

This is to certify that on this the 22cnd day of October 2018, a true and correct copy of the above and foregoing instrument was served upon all counsel of record.

*/s/ Ashley Blair Arnett*
Ashley Blair Arnett