UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA, | § | Case 4:18-cr-00575 |
|---|---|---|
| Plaintiff, | § | |
| v. | § | |
| JACK STEPHEN PURSLEY, | § | |
| Defendant. | § | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

TO THE HONORABLE COURT:

COMES NOW, JACK STEPHEN PURSLEY ("Defendant" or "Pursley"), by and through undersigned counsel, Michael Louis Minns and Ashley Blair Arnett, and files this Reply to the Government's Response to Defendant's Motion to Dismiss.

The government's belated indictment cannot survive a straightforward limitations challenge. So, the government confuses things, contrary to the Fifth Circuit's requirement for "a strict, bright-line standard." *United States v. Meador*, 138 F.3d 986, 994 (5th Cir. 1998).

The indictment, returned September 20, 2018, would be untimely under the six-year statute of limitations (which all agrees applies), for any crimes committed before September 20, 2012. Under no fair construct were these alleged crimes involving 2009 and 2010 tax years committed after 2012.

The government tries to toll the statute for several years, with arguments defying the Fifth Circuit's *Meador* decision. The government cannot resurrect crimes for which the limitations period already had expired at the time of the August 2016 tolling application, and that application only provides six months' tolling as to the other alleged crimes. All counts must be dismissed.

## Overview

The government's response requires consideration of three issues. First, for how long (if at all) did the tolling order suspend the statute of limitations? Second, are crimes allegedly committed before 2012 within that limitations period? Third, can the government avoid dismissal through contrived allegations of later conduct?

In purporting to answer that first question, the government makes three fundamental legal errors. *First*, it ignores the Fifth Circuit's *Meador* holding that tolling ends when the foreign government communicates its "belief" that the request was satisfied, 138 F.3d at 992-94, which occurred here on May 18, 2017, when the Isle of Man communicated its "belie[f] that this letter of request is now executed in full." ECF No. 28-6 at 6. *Next*, it asks this Court to reject other case law that a tolling application cannot resurrect claims that already were time-barred. *Finally*, it ignores express statutory language limiting tolling to not "more than six months" in instances like this, 18 U.S.C. § 3292(c)(1).

Section I of the Reply Argument discusses these legal errors in more detail. Section II next shows how those legal errors infect all four indictment counts and require dismissal of each. Section III finally shows that the government cannot indefinitely extend those counts—which involve 2010 and 2011 tax filings—by alleging legally insufficient later conduct.

The bottom line is that all four counts are time-barred. The limitations period for Count Two (involving a 2009 return filed August 7, 2010) already had run by the application of August 22, 2016, so it could not have been extended under *Kozeny*. The remaining three counts might not yet have run by then, but they can be tolled a maximum of six months. Accordingly, those counts must be dismissed because they were filed more than six years and six months after the alleged crimes were committed.

## Reply Argument

I.  **The government's tolling arguments are infected with three legal errors.**

   A. <u>Under the Fifth Circuit's *Meador* decision, tolling ended on May 18, 2017 for Counts One, Three and Four[1]</u>.

The Fifth Circuit has squarely held that any tolling suspension period ends "when the foreign government believes it has completed its engagement and communicates that belief to our government." *Meador*, 138 F.3d at 993. This is so even when U.S. prosecutors are not "satisfied with the evidence provided" because "[i]f dissatisfied with a dispositive response from a foreign authority, the prosecutor need only file another request and seek a further suspension of the limitations period, subject to the ultimate three-year limitation on the suspension period." *Id.*

The tolling period thus ended in *Meador* where Germany transmitted documents with a 1995 cover letter stating a belief that our government's request was "completely satisfied." *Id.* at 989. In fact, the request had not been completely satisfied, and the German government provided additional documents in 1996. *See id.* at 989-90. That was legally irrelevant to tolling given the 1995 letter providing what then was believed by the German government to be the final action on the request. *See id.* at 993-94. The Fifth Circuit held dispositive the earlier statement communicating the foreign government's "belief" that the request had been satisfied. *Id.*

Similarly here, on "18 May 2017," the Isle of Man transmitted an official letter stating its *belief* that our government's request had been satisfied. ECF 28-6 at 6. ("I believe that this letter of request is now executed in full, but if I can be of any further assistance to you in this or any other matter please do not hesitate to contact me."). That there were later communications or

---

[1] Statute of Limitations had already passed in 2016 for Count Two.

productions is just as unhelpful to the government as it was in *Meador*.[2]

The government asks this Court to defy the Fifth Circuit. It relies on a contrary decision, where the Eleventh Circuit "decline[d] to adopt the *Meador* test." *United States v. Torres*, 318 F.2d 1058, 1063 (11th Cir. 2003). It asks this Court to find there was never final Isle of Man action because that "country later provided omitted documents and communicated with the Government." ECF 28 at 5 (citing *Torres*).

As much as the government must dislike Fifth Circuit precedent, *Meador* is binding. Under that binding precedent, any tolling period ended with the Isle of Man's letter dated May 18, 2017.

Not only are the post-May 18 events legally insufficient under *Meador* to support continued tolling, they actually confirm that the Isle of Man believed then that it had taken final action. Prosecutors were unhappy, and an October 2018 email from the Isle of Man's legal officer after having "completed a full file review" stated "this matter has been fraught with difficulties from the outset." ECF 28-6 at 3. That email repeatedly told our government that if it wanted additional assistance, the Isle of Man would "need a supplementary letter of request." *Id.*; *see also id.* at 4 ("A supplementary letter of request would be required…."); *id.* ("I will need letters of request very soon….").

The government failed to do what *Meador* required if it wanted more tolling: "file another request and seek a further suspension of the limitations period." 138 F.3d at 993. Given that failure, any tolling ended on May 18, 2017.

B.    <u>The tolling application could not resurrect claims that already were time-barred</u>.

---

[2] The government also made a request to Australia, but does not separately rely on it, because Australia's final production apparently occurred even earlier, in March 2017. *See* ECF 28 at 2.

The government further errs in arguing that its tolling application could retroactively revive charges that already were time-barred. That is contrary to Fifth Circuit reasoning in *Meador* and to the Second Circuit's holding in *United States v. Kozeny*, 541 F.3d 166 (2d Cir. 2008).

*Kozeny* squarely held that "a district court can 'suspend the running of [a] statute of limitations,' 18 U.S.C. § 3292(a)(1), *only if the limitations period has not yet expired.*" *Id.* at 172 (emphasis added). The court rejected the government's reliance on supposedly contrary Ninth Circuit precedent (here too, the government asks this Court to follow the Ninth Circuit), in favor of "the 'plain language' of 18 U.S.C. § 3292." *Id.* A later case followed *Kozeny* on this point, instead of the Ninth Circuit case law and Third Circuit "dicta" relied on by the government. *See United States v. Brody*, 621 F.Supp.2d 1196, 1199-1202 (D. Ut. 2009).

The Fifth Circuit's *Meador* reason accords with *Kozeny* and refutes the government's contrary argument that tolling orders can retroactively revive time-barred charges. In explaining the need for a clear, bright line rule on what constitutes final action by a foreign government, the Fifth Circuit wrote: "If the period is suspended retroactively whenever another relevant document comes in, there will be no certain end." *Meador*, 138 F.3d at 994. While the Fifth Circuit took pains to avoid the limitations period being "suspended retroactively," *id.*, the government invites this Court to do precisely that. The Court should decline that invitation.

C.  <u>Any tolling was limited to six months</u>.

The government ignores a key statutory provision. The provision states that tolling "shall not extend a period within which a criminal case must be initiated for more than six months if all foreign authorities take final action before such period would expire without regard to this section." 18 U.S.C. § 3292(c)(1).

This provision is critical here given that, under *Meador*, the Isle of Man took final action

on May 18, 2017, before the limitations period on at least some (and in the government's view, on all) of the charged counts had expired. There thus can be no tolling of more than six months—and certainly not, as the government claims, tolling of two-plus years and counting.

## II. Once tolling is properly limited, all four counts must be dismissed as time-barred

Straightforward application of the limitations statute shows that all these stale charges are time-barred, which presumably is why the government tries to muddy things. Crimes allegedly committed before August 22, 2010, six years before the tolling application, were time-barred then and could not have been revived. And charges that were not then barred were given just six months' more life from the tolling order. The statute of limitations thus bars any crime committed more than six-and-a-half years before the September 20, 2018 indictment: i.e., on or before March 20, 2012.

The government concedes that the last of the three alleged tax evasion crimes (Count Four, which does not even involve Defendant's own taxes) was over at least by "October 2011." ECF 28 at 12. For the other two alleged tax evasion crimes (Counts Two and Three), it acknowledges that Defendant's "2009 and 2010 tax returns were filed on or about August 7, 2010 and October 12, 2011, respectively." *Id.* at 8. The Count One conspiracy charge is even more stale, as it is focused on a "First Movement of Funds" from 2007-09 and a "Second Movement of Funds" from 2009-10. ECF 1 at 12-26.

Count Four illustrates why even alleged crimes that were not time-barred at the time of the August 2016 tolling order are now barred. The government concedes that crime had ended by October 2011. ECF 28 at 12. Absent tolling, therefore, the statute would have expired in October 2017. But under *Meador*, tolling ended when the Isle of Man believed it had taken final action on May 18, 2017; and under 18 U.S.C. § 3292(c)(1), any such tolling was limited to no more than six

months total. Thus, for Count Four to be timely, it would have had to be filed by April 2018 (six years and six months from the alleged tax evasion offense); the September 2018 indictment was far too late.

The government concedes that to save Count Four almost "a year of tolling would be necessary." ECF 28 at 12. But, at most, the *Meador* holding, combined with 18 U.S.C. § 3292(c)(1), entitles the government to just six months of tolling. By the government's own counting, six months of tolling is not enough to save Count Four. The same analysis applies to the other counts, involving crimes allegedly committed after August 22, 2010, but before March 20, 2012. And crimes allegedly committed before August 22, 2010, are even more untimely, as they were never tolled (not even for six months).

**III.     The government cannot use pleading ruses to refresh these stale charges.**

The government tries to extend the limitations period by adding different acts, committed after the alleged criminal objectives had been completed. Its tactic ignores the legal requirement regarding what "must be shown" to survive a statute of limitations challenge:

> [I]t must be shown both that the conspiracy still subsisted within the three [now six] years prior to the return of the indictment, and that at least one overt act in furtherance of the conspiratorial agreement was performed within that period. Hence, in both of these aspects, the crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy.

*Grunewald v. United States*, 353 U.S. 391, 396 (1957).

*Grunewald* further held that "a vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime." *Id.* at 405. After "considering the main objective of the conspiracy," it held the

prosecution time-barred because "no agreement to conceal the conspiracy after its accomplishment was shown or can be implied on the evidence before us to have been part of the conspiratorial agreement." *Id.* at 406.

  A. <u>Count One is time-barred because the conspiracy's alleged objectives ended before March 2012</u>.

Count One charges a conspiracy to evade taxes "on more than $18 million in income from Southeastern Shipping, which was parked offshore in the Isle of Man." ECF 1 at 12-13. The government describes the objective as "repatriating funds hidden offshore." ECF 28 at 6. The indictment focuses on movements of funds from overseas here—a "First Movement of Funds" from 2007-09 and a "Second Movement of Funds" from 2009-10—that ended by September 2010. ECF 1 at 13-21. The allegedly false tax returns involving these repatriated Southeastern Shipping funds themselves were filed before 2012. *See id.* at 21-22.

Because all the alleged repatriation and tax filings regarding that repatriation occurred before 2012, the government tries to extend the conspiracy with domestic transactions involving only Defendant. These later transactions focus on Texas corporations (Gulf States and Four Sevens) allegedly solely owned by Defendant. *Id.* at 6 ¶ 21, 9 ¶ 35. The indictment alleges that in December 2012, Defendant made transfers from these Texas corporations' accounts to his personal accounts. *Id.* at 23-24 ¶ 50(f) & (g). It further alleges that the 2012 and 2013 tax filings for these Texas corporations falsely described these and other domestic financial transactions. *Id.* at 25-26 ¶ 51(g)-(i).

Domestic transfers of funds from Defendants' companies to Defendant, and tax treatment of those Texas transfers, cannot extend the limitations period because: (1) the alleged objective of repatriating overseas funds ended years earlier; and (2) those domestic transfers involving only Defendant's own finances did not further any alleged conspiracy with other members. Any such

unilateral "payment is the result of a completed conspiracy, and is not in furtherance of one that is ongoing." *United States v. Grimm*, 738 F.3d 498, 503-04 (2d Cir. 2013) (citing *Fiswick v. United States*, 329 U.S. 211, 216 (1946)).

> B. <u>Counts Two through Four are time-barred because the alleged tax evasion was accomplished before March 2012</u>.

The government concedes that the last of the three alleged tax evasion crimes (Count Four, which does not even involve Defendant's own taxes) was over at least by "October 2011." ECF 28 at 12. For the other two alleged tax evasion crimes (Counts Two and Three), it acknowledges that the "2009 and 2010 tax returns were filed on or about August 7, 2010 and October 12, 2011, respectively." *Id.* at 8.

The government cannot prosecute Defendant for tax evasion crimes committed before March 20, 2012. While now conceding the tax evasion crime alleged in Count Four ended before then, and that the returns giving rise to Counts Two and Three were filed in 2010 and 2011, the government tries to extend those latter two counts beyond the tax return filing dates.

Only fictitious pleading could extend the Count Two and Three crimes based on 2010 and 2011 tax returns into and beyond 2012. The later conduct alleged in Count Two, alleging 2009 tax year underpayments through a 2010 return, involves inter-corporate transfer of a promissory note and allegedly corporate tax form false filings through 2017 (ECF 1 at 26-29); if those allegations are true, however, they should be charged for those tax years rather than reaching back to the 2009 tax year. The only post-2011 conduct alleged in Count Three involves vague temporal references that "From 2011 through at least 2012, PURSLEY withdrew at least $77,000 from [his company's bank accounts] to pay for expenses associated with his Vail house" (*id.* at 28-29); there is no allegation these withdrawals occurred after March 20, 2012, nor is there any explanation how any such withdrawals in 2012 could constitute evasion of 2010 income that had to be reported on

a 2011 return. The Count Two and Three allegations accordingly are legally insufficient to extend into 2012 crimes allegedly involving 2009 and 2010 income required to be reported on returns filed in 2010 and 2011.

## Conclusion

The indictment must be dismissed because, notwithstanding tolling arguments and contrived pleading attempts to circumvent the statute of limitations, the prosecution is time-barred.

Respectfully submitted on October 29, 2018

        MINNS & ARNETT

        */s/ Ashley Blair Arnett*
        Michael Louis Minns
        State Bar No. 14184300
        mike@minnslaw.com
        Ashley Blair Arnett
        State Bar No. 24064833
        ashley@minnslaw.com
        9119 S. Gessner, Suite 1
        Houston, Texas 77074
        Telephone: (713) 777-0772
        Telecopy: (713) 777-0453
        **Attorneys for Jack Stephen Pursley**

## CERTIFICATE OF SERVICE

This is to certify that on this the 29th day of October 2018, a true and correct copy of the above and foregoing instrument was served upon all counsel of record.

        */s/ Ashley Blair Arnett*
        Ashley Blair Arnett