# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | Case 4:18-cr-00575 |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| JACK STEPHEN PURSLEY, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S MOTION TO DISMISS

JACK STEPHEN PURSLEY ("Defendant" or "Pursley"), requests this Court dismiss the Indictment pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure, the Speedy Trial Act, and the six-year statute of limitations ("SOL").

## PREAMBLE

The Speedy Trial Clause of the Sixth Amendment to the U.S. Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy trial." U.S. Const. amend. VI. Congress has passed statutes to enforce this right, including, as is pertinent here, the Speedy Trial Act of 1974, 18 U.S.C. § 3161, et seq. Similarly, statutes of limitations exist to ensure criminal cases are indicted without dragging investigations on forever. Both the Speedy Trial Act and the applicable SOLs require dismissal when violated.

## BACKGROUND AND STATEMENT OF FACTS

1.      Pursley was indicted on September 20, 2018, and charged with one count of conspiracy to commit income tax evasion under 18 U.S.C. § 371 and three counts of tax evasion under 26 U.S.C. § 7201—one count for his personal taxes and one based on the alleged co-conspirator's taxes.

2.     Over two years prior to the Indictment, in August 2016, the Government requested suspension of the SOL.  Judge Sim Lake suspended the SOL for a limited period of time under 18 U.S.C. § 3292.

3.     The Government requested information from Australia and Isle of Man.  Both countries answered.  Isle of Man responded to the Government's request in September 2016, and on May 18, 2017, Isle of Man officials transmitted an official letter stating their belief that the request for information had been satisfied, thus ending the SOL suspension.  (ECF 28-6.)  No further application for extension of time was requested, and that time has long passed.

4.     The case was first set for trial on November 27, 2018.  On October 11, 2018, the Government requested the deposition of an allegedly uncooperative proposed witness in Isle of Man, Kerry Smith ("Smith"), which, if granted, necessitated a very limited continuance.   (ECF 20.)  Based on specific representations to the Court at a hearing on November 19, 2018, the Court granted the Government's Motion to depose Smith and excluded 30 days from the Speedy Trial Act, as shown below:

MS. DAVIS:   Is the exclusion of time for a specific period, or until we're able to trigger the other provision of 3161, the…
THE COURT: Well, it's for 30 days.  If you don't get the request done, then I strike her as a witness, and we'll move on.
MS. DAVIS:   Correct. Completely agree, Your Honor.

(Tr. of Hearing, 11/19/2018, 48.)

5.     About a month later, the Government received a reprieve from its agreement asking for; "No more than ninety days… excluded."  (ECF 67.)

6.     Based on a litany of facts only the Government knew (but that Pursley suspected were false), the Government asked for and was granted by the Court's February 22, 2019 Order, an additional 120 days excluded from the Speedy Trial Act's 70-day guarantee.  (*See* ECF 72, 73.)

7.      The Government's lawyers first attempted to schedule Smith's deposition by telling the proposed witness and the Isle of Man authorities[1] to confirm limited times when it would be convenient for the Government's lawyers, rather than asking the deponent and authorities for dates.

8.      Three months after their first effort to secure Smith's deposition, the Government's lawyers requested immunity for Smith via a Motion filed on January 28, 2019.  (ECF 68.)  The Court quickly granted it.  (ECF 70.)

9.      The Government finally requested dates from Isle of Man and Smith instead of its own fiat dates, and dates were quickly offered.

10.     Smith's deposition was scheduled to take place along three full days, April 30, May 1, and May 2, 2019[2] and proceeded.

11.     Smith testified that she is not a records custodian:

> Q.  You do not work for Boston Limited; correct?
> A.  Correct.
> Q.  And you are not authorized to go into their office and pull records today if you choose to do so?
> A.  Correct.

(Tr. of Smith, Vol. II, 05/01/2019, 182.)

> Q.  And if Isle of Man Trust companies still exist in any type of entity you do not work for them; correct?
> A.  Correct.
> Q.  And you are not authorized to go into their offices and pilfer through their files, correct?
> A.  Yes.

(Tr. of Smith, Vol. II, 05/01/2019, 183.)

> Q.  Did you tell Ms. Albinson that you had not seen or did not recollect seeing some of the documents that she was showing you?

---

[1] In Isle of Man, a compulsory deposition requires a courtroom, a sitting judge, and a plethora of other officials.
[2] The Court shortened the deposition to the time actually permitted by the rules, which turned it into a two-day deposition.

A. That's correct, yes.

(Tr. of Smith, Vol. II, 05/01/2019, 185–186.)

Q. You do not know if all of the records from Isle of Man Trust Company were transferred to Boston Limited. You cannot testify that they were; correct?
A. Yes.

(Tr. of Smith, Vol. II, 05/01/2019, 186.)

Q. These records that are in front of you — well, these are photocopies; you understand that?
A. Yes.
Q. These are not the actual records of the company. They are photocopies, and you don't know — you have not compared these photocopies to the actual business records; correct?
A. Yes; correct.
Q. And the Government has not asked you to compare these to the actual records; correct?
A. Yes, correct.
Q. And without the company's permission, you don't have access to the original records; correct?
A. Yes.

(Tr. of Smith, Vol. II, 05/01/2019, 188–189.)

Q. [Y]ou cannot tell us if those are the actual – are actual photocopies of real current records indicating the full records of Isle of Man Trust Company?
A. No.
Q. You cannot tell us if those are the full records of Boston Limited?
A. No.
Q. You did not participate in collecting those records in any way?
Q. No.

(Tr. of Smith, Vol. II, 05/01/2019, 189–190.)

12.     Smith testified that she had no information about Pursley's purported involvement

in a conspiracy; to the contrary, Smith believed in Pursley's integrity and honesty:

Q. [Y]our goal was to determine the truth whether Eduard Venerabile was the ultimate beneficial owner or not; is that correct?
A. That's correct.
Q. And you went to extreme measures to prove that [which is] not a normal daily occurrence, correct?
A. Correct.

Q. But you were willing to do that to give Mr. Mooney and Mr. Venerabile the chance to prove their positions; correct?
A. Correct.

(Tr. of Smith, Vol. II, 05/01/2019, 193–194.)

Q. If the … American Internal Revenue Service['s] theory were correct, that this was all a sham, you would never have gone to Bahamas, would you?
A. No.

(Tr. of Smith, Vol. II, 05/01/2019, 197.)

Q. Now, Steve Pursley was kind of at your [beck and] call and Mr. Mooney and Mr. Venerabile's [beck and] call, trying to set up the reservations for the agreed upon point of meeting in the Bahamas; is that correct?
A. Yes, that's correct.
Q. And if … you were to ask him for something, he would immediately try to accommodate your request; correct?
A. That's correct.
Q. [O]ver the period of time that you were working with him, how many times did he say "no" to you, "I will not honor your request"?
A. He never said that to me.
Q. So you took him to be at the time, an honest and accommodating human being?
A. Yes, that's correct.
Q. And you and he were on a similar journey to try to determine correctly the existence of David Venerabile and the fact that he was or was not the legal owner of this company?
A. Eduard Venerabile but, yes, I believe that we were on the same – we had the same goal of getting to understand who the owner was.
Q. … Southeastern Shipping was in a lawsuit in the Philippines. You understand that?
A. Yes.
Q. And that Southeastern Shipping won this lawsuit in the Philippines?
A. Yes.
Q. And all through that period of time, all the representations in the courts of law in the Philippines and in Isle of Man were that Mr. Venerabile was the owner of Southeastern Shipping; correct?
MS. ALBINSON: Objection. Relevance.
THE WITNESS: Yes, that would've been correct.

(Tr. of Smith, Vol. II, 05/01/2019, 198–199.)

Q. So my understanding of the document is that Mr. Pursley was asking for papers that you agreed to provide certified copies of some of the papers but because of data protection issues which you're required to follow and his status which was not – he was not a director of the company; correct?

A. Correct.
Q. He was not a shareholder of the company; correct?
A. Correct.
Q. … So it's probable that Mr. Pursley did not have access to all of the data that existed for the company?
A. Correct.

(Tr. of Smith, Vol. II, 05/01/2019, 214–215.)

13.     Smith testified that the U.S. Government's attorneys never asked her to come to the

U.S. to testify:

Q. But you have never said "no" to the United States Government with regard to testifying in the United States because they have never asked you?
A. Correct.[3]

(Tr. of Smith, Vol. II, 05/01/2019, 225.)

14.     Pursley's trial is now scheduled for June 18, 2019.

15.     Two key witnesses in this case have died during the investigation, and a third died

after the original trial setting, November 27, 2018, was continued: Colin Bowen, a founder of Isle

of Man Financial Trust Limited ("IOMFTL"), died in approximately 2014. (Tr. of Smith, Vol. 2,

5/01/2019, 207.) Shelly Wilkerson, Administrative Manager for Pursley's U.S. real estate

company, died in May 2016[4]. Elaine Richman, the bookkeeper and accountant who prepared the

bookkeeping for the tax returns in question, was killed in February 2019.

## ARGUMENT

The Defendant filed a Motion to Compel (ECF 17), and this Court ordered the Government

to turn over the Special Agent's Report ("SAR") (ECF 55). The SAR, along with Smith's

deposition testimony (the transcript of which the Court ordered, also over the Government's

objection (ECF 76)), constitute newly discovered evidence, which relates to the Statute of

---

[3] The Government, on redirect solicited her desire not to testify.
[4] The Government claims the real estate business was a sham.

Limitations portion of this Motion. Based in part on this new evidence, Defendant requests that the Indictment be dismissed. Dismissal is warranted under Rule 48 of the Federal Rules of Criminal Procedure; for a violation of Defendant's rights under the Speedy Trial Act; and, because the SOL has expired.

## I. THE INDICTMENT MUST BE DISMISSED BECAUSE THE GOVERNMENT WAS GRANTED EXCLUDABLE TIME UNDER THE SPEEDY TRIAL ACT TO WHICH IT WAS NOT ENTITLED, AND DEFENDANT'S SPEEDY TRIAL RIGHTS ARE VIOLATED.

### A. Speedy Trial Act Standards

The Speedy Trial Act states in pertinent part:

> (1) In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment….

18 U.S.C. § 3161(c)(1). Certain periods of time are excluded from the 70-day period, one of which has become applicable here:

> (h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
> …
> (7)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, *its reasons for finding that the ends of justice served* by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A) (emphasis added). Construing these provisions of the Act, the court in *United States v. Reese*, 917 F.3d 177 (3d Cir. 2019), recently stressed that despite a court's "leeway" in making the findings required to exclude time from the 70-day time limit under the

Speedy Trial Act, "there are still limits." *Id.*, 917 F.3d at 184. "Procedural leeway" around the Act's requirements is limited to the court's invocation of the Act or a continuance deemed for the "ends of justice." *Id.* at 182. The *Reese* court held that the Act required dismissal of the indictment where the record, consisting of the pretrial hearing transcript and the written order, did not invoke the Act. *Id.* at 179. *Reese* underscores and comports with Fifth Circuit law that when a continuance is granted the Act must be invoked in order for the continued period to be excludable. *See United States v. Blackwell*, 12 F.3d 44, 46 (5th Cir. 1994) (rejecting government's argument that days during continuance were properly excludable from Speedy Trial Act's 70-day time limit, where trial court did not satisfy ends-of-justice requirement in order for the duration the continuance to be excludable).

Pursley was indicted on September 20, 2018. On October 11, 2018, 21 days later, the Government moved to take Smith's deposition.[5] Once motion proceedings commenced, the Speedy Trial clock paused until the Court entered the order granting the motion. *See Blackwell*, 12 F.3d at 46. The Court originally granted the Government a continuance of the trial for 30 days to allow for the Isle of Man deposition on November 21, 2018. (*See* Tr. of Hearing, 11/19/2018, 48.) On November 21, 2018, the clock resumed counting toward the Act's 70-day time limit.

But the Government sought, and was granted, another exclusion totaling 120 days. The exclusions should be revoked, because all three excluded portions were based on the written representations of the Government that turned out to be inaccurate.

The Supreme Court has set forth four factors for assessing whether a defendant has been deprived of his or her right to a speedy trial based on the government's delay: "Length of delay,

---

[5] The Government could have taken this deposition years earlier, even before Indictment, had its lawyers really believed it to be critical to their case.

the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "[D]ifferent weights should be assigned to different reasons" the government gives to excuse its delay; "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Id.* at 531. *See id.* at 531 n.32 ("[I]t is improper for the prosecution intentionally to delay 'to gain some tactical advantage over (defendants) or to harass them.'" (citations omitted)). *See also Doggett v. United States*, 505 U.S. 647, 657 (1992) ("a bad-faith delay the length of this negligent one would present an overwhelming case for dismissal"); *United States v. Barner*, 441 F.3d 1310, 1321 (11th Cir. 2006) (while "district court stopped short of finding that the government had obtained the continuance by misrepresentation or half-truth," such misconduct would justify remedial measures). It is well within the trial court's discretion to sanction abuses of power when the government's invalid delays cause a constitutional violation, by revoking the exclusion:

> [I]n appropriate cases, for example where the government had procured a continuance by deliberate misrepresentation and the delay caused by the continuance was seriously prejudicial to the defendant, the trial court could revoke the continuance retroactively as a sanction for the misconduct and a protection for the defendant. Indeed, in so extreme a case the court would be acting well within the powers expressly granted it by Rule 48(b) of the Federal Rules of Criminal Procedure if it dismissed the indictment….

*United States v. Carlone*, 666 F.2d 1112, 1116 (7th Cir. 1981).

It is well settled that a Rule 15 deposition may be granted only in exceptional circumstances, and must not be allowed as a "fishing expedition" or for discovery purposes. *United States v. Bynum*, 566 F.2d 914 (5th Cir. 1978); *United States v. Steele*, 685 F.2d 793 (3d Cir. 1982); *United States v. Rich*, 580 F.2d 929 (9th Cir. 1978). The Government is not entitled to mislead the court about the reasons for a requested continuance. One hundred twenty days were excluded based on three misrepresentations by the Government's lawyers as to the need for the

Rule 15 deposition of Smith, the Isle of Man witness. Based on the newly discovered evidence at the deposition, it is apparent that the Government was not entitled to a continuance.

### 1.  <u>Smith was not a custodian of records.</u>[6]

In their argument that a Rule 15 deposition was necessary "because of exceptional circumstances and in the interest of justice" (ECF 20-1, 6), the Government on October 11, 2018 represented to the Court that Smith was a custodian of records. It stated she could authenticate documents for the Government where it had not been able to obtain a conforming business records certification: "Smith – as an employee of both Financial Company 1 [IOMFTL] and Boston Limited – could provide the precise foundation for the admission of the records under the business records exception to the hearsay rule." (*Id.* at 8.)

This representation was false. Kerry Smith was not and is not a records custodian for either IOMFTL or its partial successor, Boston Limited, as was revealed in her deposition. At no time did she have either formal control or actual possession of the company's records to compare the photocopy records to the originals. She testified that the Boston Limited file to be incomplete, and knew that regardless, Pursley had less access to the records than she did. (Tr. of Smith, Vol. II, 05/01/2019, 182, 183, 185–186, 188–190.) Rather, Smith's testimony showed that she worked as a compliance officer for IOMFTL, which gave her access during a specific period of time to a fixed set of documents. She used these documents to support her investigation into the company's true ownership, who she concluded after thorough investigation was Eduard Venerabile ("Venerabile"), not Shaun Mooney ("Mooney"). At her deposition, Smith did not compare the

---

[6] The Government should not be allowed to rely on any of the documents it sought to verify through Smith. *See* Motion to Exclude Exhibits filed on same date.

original records to the copies the Government proffered. She could not even identify many of the records.

It defies reason to believe the Government did not know this, in advance; certainly, its lawyers must have known, by talking with one or more of Smith's three lawyers, or Smith and her lawyers during their private meeting with Smith, and yet the nine-page handwritten MOI does not appear to discuss any of this. (*See* MOI Attached as Exhibit 1.) The Government insisted: (A) There were still missing records available, in spite of Isle of Man insisting there were not, and (B) Smith had custody of these valuable and incriminating records. Yet, when they had her on the record they did not explore these alleged reasons for requiring her testimony.

There can be no dispute that Smith was never a records custodian. The exclusion of time must be rescinded based on this misrepresentation.

### 2. Smith had no evidence of a conspiracy.

To convince this Court that the deposition of a foreign national was necessary, the Government's lawyers represented that Smith, and only Smith, could testify that Pursley had criminal intent to violate the law—that Pursley knew that Mooney and Venerabile and IOMFTL and Boston Limited were conspiring to obstruct the IRS (thus making Pursley part of their alleged conspiracy):

> Smith met with the defendant on numerous occasions, during which time, Co-Conspirator 1 was not always present ... These communications as a whole show that Smith had knowledge of the tax scheme and its varying versions, and discussed it with the defendant. Smith's testimony is material and essential regarding a central issue in the Government's case – the defendant's knowledge that Co-Conspirator 1 owned Southeastern Shipping, not Individual 1.

(ECF 20-1, 7.) "Without Smith's testimony," the argument went, "the Government would be left with purely documentary evidence to prove what took place in those meetings." (ECF 20-1, 8.)

This representation also was false. Under oath, Smith denied any effort to impede the IRS.

To the contrary, her testimony was that she and Pursley jointly worked to determine the truth. She was the final arbitrator of that issue. There was no admissible incriminating evidence by Smith against Pursley. Smith testified to the integrity of her investigation determining that Venerabile was the owner of Southeastern Shipping ("SES"), and to the integrity and honesty of Pursley.

The Government based its Motion for the extraordinary relief of Rule 15 deposition in Isle of Man—with the accompanying continuance and exclusion of time under the Speedy Trial Act— on convincing this honorable Court that "there can be little dispute that Smith can provide testimony that is material to the charges in the Indictment." (ECF 20-1, 8.) While the deposition was relevant, it was, exculpatory to Pursley, not incriminating.

The Government's misrepresentation as to Smith's role in IOMFTL/Boston Limited, and her awareness of any purported conspiracy implicating Pursley, had to have been known to the Government. Yet, it represented to this Court that only with Smith's testimony could it prove Pursley's intent. Exclusion of any amount of time based on this falsehood is inappropriate. The Court should rescind the last 120 of excludable time.

**3.** **Smith's testimony did not need to be compelled as a "hostile" witness; rather, the Government created any "hostility" and chose when to eliminate it.**

The Government's plea for a Rule 15 deposition was based on a third Government misrepresentation. The Government insisted to this Court that Smith was a hostile witness because she refused to meet on a voluntary basis with its lawyers, having "politely decline[d]" in writing their invitation for an interview. (ECF 20-1, 5.) "Since Smith will not agree to be interviewed in her native country, at no cost to her, it follows that she would refuse any request to travel to the United States for testimony at trial. Plainly, Smith is "unavailable" under the governing standard." (ECF 20-1, 7.) She became available after the immunity order. Of course, whether she was

available or not for a non-mandatory meeting, she has been available under Rule 15 for nearly a decade.  The period from October 11, 2018 until the Government asked for immunity on January 28, 2019 should not be excluded; the court should revoke that excluded time.

Defendant pointed out in response to the Government's Motion to depose Smith that the Government did not actually assert that Smith refused to come to the United States to testify, so as to demonstrate unavailability; it merely said she was uncooperative.  (ECF 23, 13.)  In September 2018, the Government had accused Smith of a crime but failed to offer her immunity in exchange for her cooperation until 2019.[7]  It equated her refusal to meet with refusal to testify.  By accusing Smith of criminal conduct, the Government's lawyers guaranteed that she would not meet; until finally granting Smith immunity.  The Government's lawyers chose to eliminate the "lack of cooperation" when it suited them.

Smith testified that the U.S. Government never asked her to testify.  (Tr. of Smith, Vol. II, 05/01/2019, 225.)

Such tactics violate the interests-of-justice standard on which Rule 15's extraordinary relief rests.

**B.      The Government Is Not Entitled to 120 Days Excluded.**

Rule 15 provides for relief in exceptional circumstances, based on the interests of justice. Fed. R. Crim. P. 15; *United States v. Lucas*, 516 F.3d 316 (5th Cir. 2008).   Interests-of-justice standards also underpin the Speedy Trial Act.  After Smith's deposition in Isle of Man, it has become apparent that the Government's attorneys misled this Court to obtain Rule 15 relief, and the subsequent 120 days excluded from the Speedy Trial Act's 70-day guarantee.

---

[7] The Indictment itself identifies the company as a co-conspirator.  (*See* ECF 1, ¶ 8.)

Thomas Jefferson, in a letter to Thomas Paine endorsed the jury trial, calling it "the only anchor, ever yet imagined by man, by which a government can be held to the principles of its constitution." (*See* Letter from Thomas Jefferson to Thomas Paine of 07/11/1789.[8]) Yet today he Sixth Amendment right to a speedy jury trial is disappearing. *See* Hon. Robert J. Conrad, Jr. & Katy L. Clements, *The Vanishing Criminal Jury Trial: From Trial Judges to Sentencing Judges*, 86 Geo. Wash. L.R. 99 (Jan. 2018).

In Pursley's case he has endured an investigative procedure that has destroyed his law practice and has been hanging over his head for more than seven years. After years of investigation, he was indicted September 20, 2018, and demanded a speedy trial. *See United States v. Tigano*, 880 F.3d 602 (2d Cir. 2018) (a citizen was sent for a sanity evaluation three times because the government, and even his own lawyer, believed demanding a speedy trial was an act of insanity). Each time the Government has obstructed Pursley's right, Pursley has asserted his right to a speedy trial. By the *Tigano* Government lawyer's standard, Pursley—as well as Jefferson and Paine—would be sent out for mental examination.

Trial was scheduled for November 28, 2018. The Government announced "not ready" in November 2018, two months after the Indictment, because it claimed it needed the deposition of a woman in the Isle of Man, who would, essentially prove up their entire case. Motion practice in this case allowed 41 days of excludable delay, moving the target trial date to January 9, 2019. The Government cannot get past that date without the excluded 120 days, won with subterfuge.

---

[8] National Archives, Founders Online, https://founders.archives.gov/documents/Jefferson/01-15-02-0259. Our founder's answer was "…the Right to a Speedy Trial and public trial by an impartial jury…"

## II. **THE INDICTMENT MUST BE DISMISSED BECAUSE IT WAS FILED BEYOND SIX-YEAR THE STATUTE OF LIMITATIONS.**

These newly disclosed facts must be considered when reevaluating the SOL violation.

The Government indicted Pursley on September 20, 2018. The Indictment is untimely under the six-year SOL for any crimes committed before September 20, 2012. Since motion proceedings in Fall 2018, the defense has received the SAR, which explains in detail the Government's theory of prosecution of the Indictment, and now Smith's deposition. Both have yielded new facts that underscore Pursley's argument that the Indictment was outside the SOL. Based on this new evidence, Defendant respectfully requests that the Court reconsider its denial of Defendant's earlier Motion to Dismiss based on the SOL.

### A. **Suspension of the Statute of Limitations Pursuant to the Tolling Order Does Not Provide Sufficient Time to Prevent Dismissal.**

As noted, in August 2016 the Government's lawyers obtained suspension of the SOL under 18 U.S.C. § 3292. That statute provides in pertinent part:

> (b) Except as provided in subsection (c) of this section, a period of suspension under this section shall begin on the date on which the official request is made and end on the date on which the foreign court or authority takes final action on the request.
> (c) The total of all periods of suspension under this section with respect to an offense—
> (1) shall not exceed three years; and
> (2) shall not extend a period within which a criminal case must be initiated for more than six months *if all foreign authorities take final action* before such period would expire without regard to this section.

18 U.S.C. § 3292(b), (c) (emphasis added).

The Government can go back to the Court after six months, and upon adequate cause shown, ask for another six months. It chose not to.

The six-month extension stated in subsection (c)(2) applies here. The Fifth Circuit Court of Appeals adheres to a "strict, bright-line standard" for application of the SOL, *United States v.*

*Meador*, 138 F.3d 986, 994 (5ᵗʰ Cir. 1998), and it has squarely held that any tolling suspension period ends "when the foreign government believes it has completed its engagement and communicates that belief to our government," *id.* at 993. The tolling period ended in *Meador* when Germany transmitted documents with a 1995 cover letter stating a belief that our government's request was "completely satisfied." *Id.* at 989. In fact, the request had not been completely satisfied, and the German government provided additional documents in 1996. *See id.* at 989–90. That was legally irrelevant to tolling given the 1995 letter providing what then was believed by the German government to be the final action on the request. *See id.* at 993–94. The Fifth Circuit held dispositive the earlier statement communicating the foreign government's "belief" that the request had been satisfied. *Id.*

*Meador* controls. On November 21, 2018, this honorable Court ordered the SAR turned over to Defendant. (ECF 55.) According to Special Agent ("SA") Stephen Caivano, the count on the 2010 charge, Count 4, expired October 12, 2017, and the 2009 charge, Count 5, expired August 7, 2016. (SAR at 2.) Absent tolling, the Government's internal position was at best not fully disclosed to either court. SA Caivano, like the Government's lawyers, asserts in the SAR that these two statutes were tolled. (*See id.* at 3.). The arguments are flawed.

Although the defense agrees that Judge Lake extended the SOL for six months, the defense disagrees with the Government's argument that the extension has no limitations. Its theory is based on a strange argument that the request to Isle of Man was outstanding. This is not even arguably true. (*See* Tolling Order, 3.) On May 18 2017, Isle of Man transmitted an official letter stating its *belief* that the Government's request had been satisfied. (ECF 28-6, 6 ("I believe that this letter of request is now executed in full, but if I can be of any further assistance to you in this or any other matter please do not hesitate to contact me.").)

The Government asked this Court previously to find there was never final Isle of Man action because that "country later provided omitted documents and communicated with the Government." (ECF 28, 5.) But, under *Meador*, not only are the post-May 18, 2017 events legally insufficient to support continued tolling, they actually confirm that the Isle of Man officials believed then that they had taken final action. Over a year later, in an October 2018 email responding to the Government's attorney's further questioning, Isle of Man's legal officer stated, "this matter has been fraught with difficulties from the outset" (ECF 28-6, 3), but after having "completed a full file review" there was nothing further (*id.*) That email contained repeated statements that if our Government wanted additional assistance, Isle of Man would "need a supplementary letter of request" (*Id.*), which is also required by our federal law. Not only did the Government fail to ask for further documents from the Isle of Man authorities, there are no additional documents that seem to have popped up. As in *Meador*, the tolling period ended, definitively, when our Government received the official letter from the Isle of Man government stating its belief that the request was satisfied.

Of critical importance, the Isle of Man deposition confirmed that there was no further information available that could or should have been provided. The Government did not ask Smith—the supposed custodian of records—whether there were any documents in her possession or that she could obtain that would satisfy the supposed missing documents. To the contrary, she testified on cross-examination she had no current access to any records. The Government chose not to depose the individual currently working for Boston Limited, who allegedly was a custodian, and who may have had access to original documents. (*See* Time Chart Attached as Exhibit 2.)

The Tolling Order gave the Government an extra six months to indict. However, this did not suspend the statute long enough for the Government to indict timely.

**B.** <u>**The Statute of Limitations Was Not Tolled by Affirmative Acts**</u>.

As discussed in Defendant's earlier Motion to Dismiss, straightforward application of the limitations statute shows that all four counts are time-barred, and the SOL was not tolled by affirmative acts. In summary:

- Count 1 of the Indictment, Conspiracy, is subject to a six-year SOL. *United States v. Heard*, 709 F.3d 413 (5th Cir. 2013). And obstruction in 2009 and 2010 expires in 2015 and 2016 respectively.

- Count 2, Tax Evasion under 26 U.S.C. § 7201 for tax year 2009, is subject to a six-year SOL. 26 U.S.C. § 6531(2); *United States v. Irby*, 703 F.3d 280 (5th Cir. 2012). Pursley's tax return for tax year 2009 was due and was filed in 2010. A crime allegedly committed by Pursley before August 22, 2010, six years before the tolling application, was time-barred then and no theory of tolling revives it. The statute ran in 2016 for his 2009 return.

- Count 3, Tax Evasion under § 7201 for tax year 2010, is also subject to the six-year SOL. 26 U.S.C. § 6531(2); *Irby*, 703 F.3d 280. Pursley's tax return for 2010 was due in 2011, and he filed his tax return in 2011. The allegedly false tax returns involving the repatriated Southeastern Shipping funds themselves were filed before 2012. (*See* ECF 1, 21–22.) The SOL expired in 2017 for his 2010 return.[9]

- Count 4 charges Pursley with Mooney's tax evasion for 2010. Mooney filed his tax return in 2011 with the help of his own certified public accountant, a person with whom Pursley had no contact. None of the affirmative acts listed for Mooney's evasion fall within the

---

[9] The current CPA, Jerry England, whose returns are argued to be the basis for extending the SOL, was not even interviewed until after the Indictment and now the Government has stated he will not be a witness.

SOL. Count 4 was not filed within the six-year limitations period, even including the alleged acts, because the acts alleged do not constitute affirmative acts done in order to evade taxation for the years in question.

In the Indictment charging Pursley, the Government does not identify any affirmative act demonstrating an attempt to evade taxation. Smith, the Government's key witness to the alleged conspiracy, with immunity denied any conspiracy.

The Government's Indictment was too late; it was not within the applicable six-year limitation period.

Statutes of limitations protect important public policy concerns. They are the primary guarantee against stale criminal charges and exist for the protection of those who, during the limitations period, might have lost the means of defense. "These statutes provide predictability by specifying a limit beyond which there is an irrefutable presumption that a defendant's right to a fair trial would be prejudiced." *United States v. Marion*, 404 U.S. 307, 322 (1971). Statutes of limitation may also have the effect of encouraging law enforcement to promptly investigate suspected criminal activity. *Toussie v. United States*, 397 U.S. 112, 115 (1970). Because of these important concerns, "criminal limitations statutes are to be liberally interpreted in favor of repose." *Id.* at 115 (citations and internal quotation marks omitted).

In this case, Colin Bowen, Elaine Richman, and Shelly Wilkerson are now unavailable because they are deceased. Elaine Richman was alive and well on November 27, 2018, but was killed in February 2019. The other two other key witnesses died during the pendency of this never-ending investigation.

The Indictment against Pursley was filed outside the statutes of limitations, such that it must be dismissed.

## III.  RULE 48 AUTHORIZES DISMISSAL OF THE INDICTMENT.

Rule 48 grants the Court the inherent authority to dismiss the Indictment for "unnecessary delay [in] bringing [Pursley] to trial."  Fed. R. Crim. P. 48(b)(3).

A court has discretionary power under Rule 48 to dismiss an indictment when the government has engaged in delay for an improper purpose, or based on misrepresentations—independent of any Speedy Trial Act violation.  *United States v. Greene*, 578 F.2d 648, 656 n.8 (5th Cir. 1978).  *See United States v. Dreyer*, 533 F.2d 112, 113 n.1 (3d Cir. 1976) (Rule 48 codifies court's "inherent power to dismiss a case simply for want of prosecution" and applies even if Speedy Trial Act was not necessarily violated); *United States v. Starr*, 434 F. Supp. 214 (D.D.C. 1977) (Rule 48 may be invoked to protect defendant's interest in a speedy trial even without finding of a violation of Speedy Trial Act).  As the court observed in *Carlone*, 666 F.2d at 1116, if the government procured a continuance by deliberately misrepresenting the facts, the court would be within its powers to sanction the delay under Rule 48 by dismissing the indictment even without referencing the Speedy Trial Act's time limits.

Because of the Government's delay in investigating this case leading to charging beyond the SOL, and its misrepresentations in seeking continuances to take a foreign deposition for the real purpose of further discovery, causing further prejudicial delay, the Court is within its authority to, and should, dismiss the Indictment.

## CONCLUSION

Pursley requests this Court grant his Motion to Dismiss for failure to announce ready within the requirements of the Speedy Trial Act, for delay under Fed. R. Crim. P. 48(b)(3); and for missing the statute of limitations.

Submitted on May 14, 2019.

MINNS & ARNETT

*/s/ Michael Louis Minns*
Michael Louis Minns
State Bar No. 14184300
mike@minnslaw.com
Ashley Blair Arnett
State Bar No. 24064833
ashley@minnslaw.com
9119 S. Gessner, Suite 1
Houston, Texas 77074
Telephone: (713) 777-0772
Telecopy: (713) 777-0453
**Attorneys for Jack Stephen Pursley**

## CERTIFICATE OF CONFERENCE

On May 13, 2019 undersigned conferred with Sean Beaty, who indicated that he is opposed to this Motion.

*/s/ Michael Louis Minns*
Ashley Blair Arnett

## CERTIFICATE OF SERVICE

This is to certify that on this the 14th day of May 2019, a true and correct copy of the above and foregoing instrument was served upon all counsel of record.

*/s/ Ashley Blair Arnett*
Ashley Blair Arnett