UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 4:18-CR-575 (HUGHES) |
| JACK STEPHEN PURSLEY, AKA STEVE PURSLEY, Defendant. | § § § | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S AUTHENTICATION AND RELEVANCE OBJECTIONS

Defense counsel advised the government on May 23, 2019 that they objected to a large portion of the government's proposed exhibits on grounds of authentication and admissibility. For some, but not all, records, defense counsel has provided broad explanations for their objections. Because the contested exhibits were properly authenticated and otherwise admissible, as discussed below, they should be admitted by the Court.[1]

## I.    FACTS AND PROCEDURAL HISTORY

On September 20, 2018, a grand jury returned a four-count indictment against defendant Pursley, charging one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and three counts of tax evasion, in violation of 26 U.S.C. § 7201. Trial is presently scheduled to begin on June 18, 2019.

On May 23, 2019, the government met with counsel for Pursley to discuss, consistent with local rule 55.2, the admissibility of exhibits for both parties. Defense counsel advised that they had certain broad-based authentication and admissibility objections. Specifically, defense counsel

---

[1] As the defendant has not identified all of its objections with specificity, the government respectfully reserves the right to provide supplemental briefing or argument with respect to the admissibility of its proposed exhibits.

1

advised that Pursley objects to all records from Boston Limited[2] and the Isle of Man Financial Trust Limited.[3] Pursley also objects to the authentication of all records produced by the defendant in a civil suit.[4] Counsel for Pursley affirmed that they were not going to contest authentication of other records for which the government had produced a 902(11) certificate. *See* Doc. 44 (detailing the various 902(11) provided by the Government). But Pursley reserved his right to object on the basis of relevance, and specifically objects on relevance grounds to all bank records and tax returns from after 2010. The defendant's objections are discussed in turn below.

## II.     APPLICABLE LAW & ANALYSIS ON AUTHENTICATION

The defendant contends that all records from Boston Limited and the Isle of Man Financial Trust, as well as all records that that the defendant himself provided to Shaun Mooney in civil litigation, should be excluded based on authentication grounds. Because the government has more than met the minimal requirements for authentication, the Court should reject Pursley's baseless authentication claims.

### A. <u>The Authentication Standard</u>

Rule 901 of the Federal Rules of Evidence states that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." The Fifth Circuit has repeatedly stated that this "is not a burdensome standard." *United States v. Barlow*, 568 F.3d 215, 220 (5th Cir. 2009). "[T]his Court *does not require conclusive proof of authenticity* before allowing the admission of disputed evidence . . . . It merely requires *some evidence* which is sufficient to support a finding that the evidence in question is what its proponent claims it to be."

---

[2] Records from Boston Limited have a bates abbreviation "BL."
[3] Records from the Isle of Man Financial Trust Limited have a bates abbreviation of "IOMFTL."
[4] The records produced by the defendant have a bates abbreviation of "IRGP."

2

*United States v. Jimenez Lopez*, 873 F.2d 769, 772 (5th Cir. 1989) (emphasis added). Thus, "once the proponent has made the requisite preliminary showing of authenticity, the evidence should be admitted, as the ultimate responsibility for determining whether evidence is what its proponent says it is rests with the jury." *United States v. Ceballos*, 789 F.3d 607, 618 (5th Cir. 2015). "A proponent may authenticate a document with circumstantial evidence, including the document's own distinctive characteristics and the circumstances surrounding its discovery." *In re McLain*, 516 F.3d 301, 308 (5th Cir. 2008) (internal citations omitted). Once the low bar of authenticity is met, "alleged flaws in authentication go to the weight of the evidence instead of its admissibility." *United States v. Ceballos*, 789 F.3d 607, 618 (5th Cir. 2015) (internal citation and quotations omitted).

B. **The Boston Limited and Isle of Man Financial Trust Limited Documents Were Properly Authenticated**

The government has marked for possible use at trial records obtained from Boston Limited and the Isle of Man Financial Trust Limited ("IOMFTL").[5] The defendant objects to *all* of the records on authentication grounds. As the record makes clear, the defendant's objections are born from his perception that the evidence is harmful to Pursley rather than from an actual, legal basis.

To arrive at this new conclusion that none of the foreign records are capable of authentication, Pursley has turned a blind eye to his prior representations and statements to this Court. These statements plainly conceded authentication of the foreign records:

> **MR. MINNS**: There may be another solution that's acceptable to the government, if I could suggest it. *They're trying to get authentication for the records. We have no objection to that, if this is the only thing* -- we -- we don't want to lose our trial – . . . .

---

[5] Background on these two companies, can be found in the government's briefing to admit the records shown to Kerry Smith ("Smith"). Doc. 91, Mot. to Admit. The government does not wish to replicate that briefing here. Needless to say, both companies are integral to the alleged scheme, and Smith worked for both companies.

3

> **THE COURT:** Well, he says he'll stipulate to their authenticity.
>
> **MS. ALBINSON:** Well, that's news to us because we just had a pretrial conference before this, and the defense said that they would not stipulate to any of those records.
>
> **MR. MINNS:** *We think they're harmful. We don't want them in.* But with the Court's order, I'm willing to stipulate to avoid losing our trial setting. So we lost --
>
> **THE COURT:** We're not going to try it next week because the government's not ready. You can't announce ready and say you want to go to the Isle of Man in three months or whatever it takes. And I hope it takes less time, but – so look at her questions. *He's announced it twice in the record. I'll enter an order that says if he stipulated to the authenticity of whatever it is, you have to -- just handwrite me a better description of what it is he just --*
>
> **MS. DAVIS:** Your Honor, if I might, there are – there are -- obviously, we want the substantive testimony of Ms. Smith as a witness, and then the authentication issue. If we can eliminate the authentication issue by agreement, then that would shorten the time that we would need --
>
> **THE COURT:** There's no sense bothering her about something that's not an issue.
>
> **MS. DAVIS:** Correct, Your Honor, but I just want to make clear that we do want her testimony –
>
> **THE COURT:** I got it.

Doc. 53, Tr. 32:8 – 33:23 (emphasis added). After the hearing, Pursley walked back his authentication concession, but this exchange reveals that the defendant's argument is not grounded in the law. Just because evidence is "harmful" does not mean that it is not authentic.

The defendant also conveniently ignores that he provided some of the exact same records,[6] whose authentication he is now contesting, to his co-conspirator Shaun Mooney in civil discovery. *See* Doc. 93-1 (Pursley Depo.) at 7 – 12. Equally telling, in his own exhibit list, which was presented to the government on May 23, 2019, Pursley indicates his intent to present exhibits from

---

[6] Records that Pursley provided in civil discovery to Mooney had the IRGP bates prefix.

Boston Limited and the IOMFTL. That is, the defendant intends to present as authentic, records from the *same entities* that he is now decrying.

The government does not even have to speculate as to why the defendant is imposing a heightened rule of authentication for the government's exhibits. As the defense explained at the pretrial conference, "We've seen the documents now, and Kerry Smith is unfavorable." Doc. 53, Tr. 29:2-3. The Court should reject the defendant's bad faith arguments, which misapply the law and overlook the direct and circumstantial evidence of authentication.

The government has previously briefed the Court regarding the affirmative basis for authentication of the IOMFTL and Boston Limited documents shown to Kerry Smith, and incorporates that response here. *See* Doc. 91, Mot. to Admit Isle of Man Ex. As the government explained in its May 23, 2019 motion, the records shown to Ms. Smith were thoroughly authenticated through her testimony, which supplemented two foreign certificates of regularly conducted business activity. Doc. 91-4 and 91-5 (Attch. D and E). The same arguments that the government presented in that motion apply equally here and more than meet the low burden of authentication. With respect to the subset of records not shown to Ms. Smith, as previously argued, these records were nonetheless authenticated by the aforementioned foreign business records certificates, which satisfy the requirements of 18 U.S.C. § 3505.

These certificates are further validated by Smith's broader testimony. Smith was shown dozens of documents from the IOMFTL and Boston Limited productions. When questioned, she repeatedly affirmed that the records, which she was reviewing, were made in the regular course of business, at or near the time of the occurrence of the matters set forth, and thereafter kept in the regular course of business. Although Smith was not shown all of the Boston Limited and IOMFTL

documents for temporal reasons, her testimony that the other records from those productions were business records bolsters the claim that the records that she was not shown were the same thing.

Finally, other witnesses, who will testify at trial, will be able to corroborate the authenticity of some of the records from IOMFTL and Boston Limited. For example, the defendant is objecting on authentication grounds to a stock sale agreement signed by Mooney and one of the employees of IOMFTL. As explained above, this record has already been authenticated by IOMFTL, but it can also be authenticated by Mooney. *See* Gov. Ex. 1-23. He signed the document. If anyone can explain that the document is what it purports to be, Mooney can. Mooney's testimony simply reaffirms what the business records certificates have already revealed, that the records provided by IOMFTL and Boston Limited were records kept and maintained in the ordinary course of business.

### C. IRGP Documents Were Properly Authenticated

Pursley is also contesting the authenticity of records that he previously provided in discovery in a civil suit and that he previously authenticated as part of that process. This is yet another attempt to use authentication as a sword to block *all* evidence that the defendant believes is harmful.

As explained in prior briefings, the defendant and his co-conspirator, Shaun Mooney, have been engaged in civil litigation. *See* Doc. 41, Mot. in Limine. On April 27, 2017, Pursley filed a lawsuit alleging that Mooney breached the terms of a May 2013 settlement agreement.[7] As part of the civil litigation, Pursley produced records, and Mooney's attorney deposed Pursley under oath about the records that he had produced. In the deposition, Pursley unequivocally stated that the records with the bates stamp IRGP—the same records whose authentication he is now

---

[7] *Pursley v. Mooney*, Cause No. 2017-28294 (281st Judicial District, Court of Harris County, Texas).

questioning—were from his case file. As the transcript reveals, Pursley had no problems previously authenticating these records:

> Q. We sent you discovery in this case. Did you assist in the answering of the discovery in this case?
> A. Yes.
> Auth Clip 1 (Tr. 127:24 – 128:1, Tape 2, TS 0:42:39 – 00:42:54)
>
> Q. We asked you a question something on the order of can you provide a copy of the file from your representation of Mr. Mooney. And the response was, we already gave it to you in the letter from Andrews and Kurth, and you attached the letter. Does that sound familiar?
> A. Yes.
> (Tr. 128:17 – 23)
>
> Q. April 9, 2013, Kelly Sandill at Andrews Kurth -- Andrews Kurth was one of your lawyers at the time -- law firm representing you, right?
> A. Yes.
> (Tr. 130:13 – 16)
>
> Q. You sent us a letter, said, here's his file and there's a disc, and it has 7000-some-odd pages of documents in it that are *Bates numbered IRGP1 through like 7600* and something. Okay. *It's fair for to us understand that that was your file as it existed on April 9th, 2013*?
> A. *Correct*. I believe you received it in hard copy, and if there was a disc attached to it as well, you received it twice.
> Q. Do you have a copy of the IRGP document set in your possession?
> A. I think we do. That's on disc.
> Q. You've seen documents that are Bates numbered IRGP and then a bunch of numbers?
> A. I have.
> Q. *And those documents 1 through 7,600 and something reflect your file as it existed April 9th, 2013*?
> A. *I believe that's correct*.
> Q. *If we want to know what information was available to Steve Pursley before May of 2013, one source is what's in that document set. Fair?*
> A. *Fair*.
> (Tr. 133:19 – 134:16) (emphasis added).
>
> Q. You got a document, and it has a date on it, and it reflects an e-mail from or to you, it reflects communications you had on that date, right?
> A. If it's authentic and it's not been tampered with, I would presume so.
> Q. *Do you -- were the documents that you gave to us authentic?*
> A. *To my knowledge, yes.*
> (Tr. 135:14 – 21) (emphasis added).

7

As this telling exchange reveals, Pursley was involved in the production of the records, the records reflected *his* case file as of April 9, 2013, and the records were, in his opinion, authentic.

It does not get any plainer than this. Pursley previously produced these records in a separate matter and attested to their authenticity. He should not be permitted to now claim that they are inauthentic because he believes that they are harmful to his case. Accordingly, this Court should find that the records are authentic documents from his case file and reject Pursley's attempt to block the jury's consideration of this evidence.

## III. APPLICABLE LAW & ANALYSIS ON ADMISSABILITY

The defendant lodges two additional objections, that *all* records after 2010 should be excluded and that a memorandum, which was in Pursley's case file, opining that Mooney was the "beneficial owner" of Southeastern Shipping is not relevant. The indictment, by its express terms, encompasses conduct that took place well after 2010. As to the memorandum, Pursley now contends that he was unaware that Mooney was the actual owner of Southeastern Shipping. As such, the memorandum, which he had possession of and which claimed the exact opposite, is relevant for purpose of notice. For these reasons, the Court should reject the defendant's baseless attempts to exclude these relevant documents.

### A. Relevance Standard

Rule 402 of the Federal Rules of Criminal Procedure provides that "[r]elevant evidence is admissible" unless barred by some external source, such as a statute or the Constitution. Whether evidence is deemed relevant hinges on a two-step test identified in Rule 401, which states that "[e]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Direct evidence of the crimes charged in the indictment is considered relevant and admissible. "To be

relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *United States v. Williams*, 585 F.3d 703, 707 (2d Cir. 2009) (internal citation omitted). "Thus, evidence is often admissible to provide background for the events alleged in the indictment or to enable the jury to understand the complete story of the crimes charged." *Id.* at 707–08 (internal citation omitted).

Even evidence of uncharged "other acts" is relevant and admissible under Federal Rule of Evidence 402, without any reference to Federal Rule of Evidence 404(b), if the other evidence is "intrinsic to a charged crime." *United States v. Watkins*, 591 F.3d 780, 784 (5th Cir. 2009) (internal citation omitted). With respect to a conspiracy, "[e]vidence is intrinsic to a conspiracy if it is relevant to establish how the conspiracy came about, how it was structured, and how the appellant became a member." *Id.; see also United States v. Nichols*, 750 F.2d 1260, 1265 (5th Cir. 1985).

### B. Records from Post-2010 Are Relevant

The defendant has asserted a blanket objection to *all* records, including tax return and bank records, dated after 2010. As far as the government can tell, the purported basis for this objection is because the defendant was charged with evasion for the 2009 and 2010 tax years. By this logic, the crime began and ended with the tax year. Neither the indictment nor the case law support this contention.

As an initial matter, the indictment includes not just the tax evasion counts, as the defendant appears to suggest, but also a conspiracy charge in Count One. The indictment alleges that the conspiracy took place from "March 2007 *through in or around May 2013*," and then provides detailed allegations of tax filings and bank transfers that occurred in 2011, 2012, and 2013 in furtherance of the conspiracy. Doc. 1 at 21-26 (emphasis added).

The tax evasion counts, in counts two through four, similarly allege affirmative acts that took place well after the 2010 tax year that were intended to mask the defendant's earlier receipt of income. For example, paragraph 56 in Count Two specifically alleges that the defendant committed affirmative acts such as "transferring and causing to be transferred funds from Four Seven's bank accounts to PURSLEY's personal bank accounts, among others, for PURSLEY's personal use" and "submitting and causing to be submitted to the IRS false U.S. Corporation Income Tax Returns, Forms 1120, for Four Sevens for tax years 2009 *through 2017*." Doc. 1 at 27-28 (emphasis added). The referenced transfers to Pursley's bank accounts from accounts in the name of Four Sevens occurred well after 2010, as evidence by the summary exhibits from Revenue Agent Frazier. *See* Doc. 82-1. Paragraph 55 of Count Two further alleges the transfer of a promissory note from one shell company to another in January 2014.

Count Three similarly alleges the transfer and receipt of income post-2010 as an affirmative act of evasion, noting that the conduct continued through "in or around December 31, 2012." *Id.* at 28-29. The count further details wires that Pursley received from nominee entities in 2011 and 2012. *Id.* at 28. Count Four also alleges that Pursley took affirmative acts for that count "through in or about October 2011." These acts included using the preparation of false tax returns in 2011 to hide Mooney's receipt of income.

Any of the counts by itself would be enough to establish that the defendant's blanket objection is misplaced. Taken together, they completely undercut Pursley's claim that bank records, tax returns, and other records from post-2010 are not relevant. To the contrary, the contested evidence is critical to showing the "establishment of the conspiracy, identity of the participants, and execution of the scheme," as well as the commission of the tax evasion counts, and therefore, the evidence is a "legitimate part of the government's proof." *United States v.*

*Nichols*, 750 F.2d 1260, 1265 (5th Cir. 1985). As such, under Fifth Circuit law, the proof to sustain the allegations in the indictment is plainly relevant.

The government believes that the Court's inquiry can and should stop here. But even if the proffered evidence was not included in the indictment, it would still be admissible as an intrinsic "other act." As the Fifth Circuit has explained, an "other act" is "intrinsic to a charged crime" and therefore not subject to Rule 404(b), when "the evidence of the other act and evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode'. . . ." *United States v. Watkins*, 591 F.3d 780, 784 (5th Cir. 2009) (internal citation omitted). Here, the government respectfully submits that the bank transfers and tax filings and other post-2010 records meet this standard. All were part of the continuing efforts by Pursley and Mooney to defraud the IRS and to commit tax evasion.

Finally, notwithstanding his objection to the government's use of post-2010 evidence, Pursley has included on his exhibit list multiple exhibits that were dated in 2011 and thereafter. Moreover, the expert reports from the defendant all appear to suggest that the defendant is going to argue that purported real-estate transactions that took place after 2010 somehow negated his conduct. The defendant is thus objecting to the government's use of evidence necessary to sustain its core allegations and to rebut the defendant's proffered defense. The Court should reject this request.

C. **The Court Should Admit the Chan Memorandum**

On May 28, 2019, the government received a declaration from Eugene M. Chan, regarding a July 25, 2005 memorandum that Chan ("the Chan memorandum") prepared when he was employed by the accounting firm KPMG. The Chan memorandum addresses the ownership of Southeastern Shipping. That same day, the government filed a notice of its intent to use the Chan

memorandum at trial, and attached a copy of a declaration by Chan and his memorandum to the filing. *See* Doc. 94. (Pursley had previously produced a copy of this same memorandum in his civil discovery to Shaun Mooney.) At the parties' in-person conference on May 23, 2019, Pursley's attorneys objected to the authenticity and admissibility of the Chan memorandum, now marked as Gov. Ex. 1-162. As Pursley's objections are inconsistent with the rules of evidence and controlling case law, the Court should admit the record.

The government has addressed above Pursley's dubious claim that the records that he previously attested were authentic are now somehow inauthentic, and will not repeat the same arguments here. The government would merely add that the Chan declaration provides an alternative basis for authentication as Chan expressly stated in his declaration that he was "personally involved in drafting the July 25, 2005 memorandum attached to this declaration, which bears my name as one of the authors" and that the "document appears to be a true and accurate copy of the memorandum that I wrote in July 2005 . . . ." Doc. 94-1 at 1. This attestation fully satisfies the requirements of authentication.

Defense counsel additionally suggests that the Chan memo is not otherwise admissible. To the extent that Pursley is objecting on the basis of relevance, the memorandum speaks for itself. The memorandum, which is dated July 25, 2005, addresses Southeastern Shipping's ownership and the taxability of its income. In the first paragraph of the memorandum, under the sub-heading facts, Chan writes,

> Southeastern Shipping Company Limited (the "Company") was incorporated in the Isle of Man in September 2001. All the directors of the Company are Isle of Man residents. The shares in the Company are held by nominees for at individual who is a resident in Brazil (see Exhibit 1). *However, the beneficial owner of the shares (representing 100 percent of the ownership of the Company) is a U.S. citizen ("the Owner"). For all purposes four discussion, the Owner is treated as the direct, sole shareholder of the Company.*

12

*Id.* at 3 (emphasis added). The memorandum additionally has a chart detailing that the "U.S. beneficiary" is the owner of Southeastern Shipping. *Id.* at 12. The defense in this case is predicated upon the claim that Pursley was unaware that Mooney was the actual owner of Southeastern Shipping. This argument is directly undercut by the fact that within Pursley's own casefile was a memorandum from a noted accounting firm directly opining that Mooney was the beneficial owner and the "direct, sole shareholder." This evidence goes to the heart of the case and is highly probative.

The only other basis for an objection is hearsay. It is blackletter law that a statement is hearsay only when used to prove the truth of the matter asserted. Fed. R. Evid. 801. The government has offered the Chan memorandum not to prove that Mooney was the owner of Southeastern Shipping as the memo asserts, but rather to show that the defendant had been apprised that others believed that Mooney was the sole owner. The Fifth Circuit has held that when records are used for "notice" and to not to prove the truth of the matter that hearsay is not implicated and that the records are admissible. *United States v. Chavis*, 772 F.2d 100, 105 (5th Cir. 1985) ("We agree with the government that the complaint was not admitted to prove the truth of the matter asserted in it, but rather as proof of notice.") Such is the case here.

Even if the Court were to find that the memorandum is hearsay, Mr. Chan's declaration satisfies the requirements of requirements of rules 902(11) and 803(6), as he states that the memorandum was created by him as part of the regular course of business, *id.* at 1-2, and as such, the memorandum would still be admissible under the hearsay exceptions for records of regularly conducted activity.

## IV.     CONCLUSION

For the aforementioned reasons, the Court should reject the defendant's broad-based objections to the authentication of the Boston Limited, IOFMTL, and IRGP records. The Court should similarly reject the defendant's expansive request to deem inadmissible the Chan memorandum and all records dated after 2010.

DATED:     June 3, 2019

> Respectfully Submitted,
>
> RYAN K. PATRICK
> United States Attorney
> Southern District of Texas
>
> By:    /s/ Jack A. Morgan
> Jack Morgan, Trial Attorney
> Jack.A.Morgan@usdoj.gov
> Grace E. Albinson, Trial Attorney
> Grace.E.Albinson@usdoj.gov
> Sean P. Beaty, Trial Attorney
> Sean.P.Beaty@usdoj.gov
> U.S. Department of Justice, Tax Division
> 601 D Street, N.W., Room 7634
> Washington, DC 20004
> (202) 353-7580/616-3311/616-2717

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 4:18-CR-575 (HUGHES) |
| JACK STEPHEN PURSLEY, AKA STEVE PURSLEY, Defendant. | § § § | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 3, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                                     By:   /s/ Jack A. Morgan
                                                                                Jack Morgan, Trial Attorney
                                                                                Jack.A.Morgan@usdoj.gov
                                                                                Grace E. Albinson, Trial Attorney
                                                                                Grace.E.Albinson@usdoj.gov
                                                                                Sean P. Beaty, Trial Attorney
                                                                                Sean.P.Beaty@usdoj.gov
                                                                                U.S. Department of Justice, Tax Division
                                                                                601 D Street, N.W., Room 7634
                                                                                Washington, DC 20004
                                                                                (202) 353-7580/616-3311/616-2717