UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | **CRIMINAL NO. 4:18-CR-575** |
| | § | **(HUGHES)** |
| **JACK STEPHEN PURSLEY,** | § | |
| **AKA STEVE PURSLEY,** | § | |
| **Defendant.** | § | |

### GOVERNMENT'S RENEWED MOTION IN LIMINE TO PRECLUDE TECHNICIAN TESTIMONY

The United States of America, by and through undersigned counsel, respectfully moves this Court *in limine* to exclude the proposed technician testimony of Fred Gavin and Stephen Grace in their entirety and to preclude the technician testimony of Ronald Braver relating to the Taxpayer Bill of Rights, the supposed mistakes or negligence by Pursley's accountants, and whether any of the relevant businesses had a "legitimate business purpose." The government further requests that the Court order Pursley to disclose Braver's actual tax calculations and a more fulsome explanation as to the basis for his opinions.

**I.    FACTS AND PROCEDURAL HISTORY**

On September 20, 2018, a grand jury returned a four-count indictment against defendant Pursley, charging one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and three counts of tax evasion, in violation of 26 U.S.C. § 7201. Trial is presently scheduled to begin on June 18, 2019.

On November 16, 2018, Pursley provided notice of its intent to call, not one, but three technicians: Ron Braver ("Braver"); Janet McHard; and Stephen Grace ("Grace"). The notice included the proposed witnesses' resumes, but provided only a cursory explanation as to their intended testimony, specifically "CPA ethics and computations," "summary witness and about tax

1

procedures," and "business practices, real estate transactions, and stock transactions related to this case." On November 17, 2018, the government emailed defense counsel about the insufficiency of their notice and requested that they provide "the witness's opinions or the bases and reasons for those opinions." On November 19, 2018 at the pretrial hearing, the Court likewise requested copies of all technician reports.

Notwithstanding continued requests from the government and the passage of six months, by May 2019, Pursley still had not produced any additional information about Pursley's proposed technicians' testimony. Accordingly, on May 6, 2019, the government moved the Court to either preclude the technicians from testifying or to order immediate disclosure of adequate technician summaries. Doc. 85, Gov. Mot. in Limine.

On May 23, 2019, the defense responded to the government's motion, arguing that they had failed to provide any supplemental materials because of the need for their technicians to consider the testimony of Kerry Smith. Doc. 89, Def. Response. Pursley attached to his response three purported technician reports. One is for Braver, who is described as a "summary witness and technician in tax reporting, compliance." Doc. 89-2 at 1. Another is for Grace, who is a technician focusing on real-estate transactions. The third is not for Janet McHard but for Fred Gavin ("Gavin"), described as a "technician in tax reporting, compliance under the Internal Revenue Service." Doc. 89-3 at 1. Gavin was not included in Pursley's original technician notice in November 2018.[1]

---

[1] The government's use of a summary witness from the IRS in a tax evasion case has been approved by the Fifth Circuit. *United States v. West*, 58 F.3d 133, 140-41 (5th Cir. 1995). Gavin and Braver apparently disagree with Revenue Agent Michael Frazier's determination of the tax loss arising from Pursley's crimes, but they do not explain why or offer a competing calculation.

**II.    THE LAW**

The proponent of technician testimony "has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702, Advisory Committee Notes (2000 Amendments) (citing *Bourjaily v. United States*, 483 U.S. 171 (1987)). "Trial courts have considerable discretion to determine whether to admit expert testimony." *United States v. Iskander*, 407 F.3d 232, 238 (4th Cir. 2005) (excluding defense technician who proposed to testify as to irrelevant tax issues).

To present technician testimony, Rule 16 requires that Pursley describe the "witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Even if the proponent of the technician has satisfied the requirement of Rule 16, the proffered testimony must still meet certain basic criteria. *See* Fed. R. Evid. 702. As the Supreme Court explained in *Daubert v. Merrell Down Pharmaceuticals*, the district court must serve as a "gatekeeper," who "ensur[es] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). That is, the Court must ask "whether the expert is proposing to testify to (1) scientific [or specialized] knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id*. at 592. This is particularly important as "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Id*. at 595 (quotation omitted).

In addition to assessing relevance and reliability, the Court must determine whether the proposed technician testimony is "helpful" and "will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. A defendant proposing technician testimony must "provide a substantial link between the expert testimony and his theory of defense." *United States v. Powers*, 59 F.3d 1460, 1472 (4th Cir. 1995). Moreover, technician testimony is not

3

admissible where it addresses "lay matters which a jury is capable of understanding and deciding without the expert's help." *Andrews v. Metro North Commuter R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989).

Finally, the Court's gatekeeper function requires careful attention to Rule 403 because of the potential to mislead a jury. *Daubert*, 509 U.S. at 595. Technician testimony should be excluded when it has "the potential of confusing the jury and diverting its attention from its task of assessing the adequacy of the prosecution's evidence on the issue of guilt." *United States v. Manning*, 79 F.3d 212, 219 (1st Cir. 1996). Thus, in *United States v. Salazar*, the Fifth Circuit approved the exclusion of a defense technician where his testimony did not relate to "an element of the underlying crimes and would cause jury confusion." 440 F. App'x 400, 406 (5th Cir. 2011).

As explained below, the Court should limit or exclude altogether the testimony of Pursley's three technicians: Braver, Grace, and Gavin.

### A. The Court Should Limit the Proposed Testimony of Ron Braver

Pursley intends to present the testimony of Ron Braver as a technician, who will testify as a summary witness about four identified issues: (1) tax computations; (2) the Taxpayer Bill of Rights; (3) the supposed mistakes or negligence by Pursley's accountants; and (4) whether any of the relevant businesses had a "legitimate business purpose." With respect to the tax computations, Braver's technician report is deficient because it fails to identify the substance of Braver's opinion about those computations (*i.e.*, why he disagrees with the IRS's figures) or the basis for his opinion. The Court should require him to provide both. As to the other three subject areas, the Court should exclude Braver's testimony as it is irrelevant or otherwise improper.

Focusing first on the tax computations, Braver's technician report is devoid of the detail necessary to assess the reliability of his proposed testimony. For example, paragraph 16 of

Braver's notice simply states that "Braver may testify relating to the government's tax computation and methods used in Mr. Mooney's 2013 voluntary disclosure submission." Doc 89-1 at 6. The remainder of Braver's report is full of similar, vague generalizations. This leaves the Court and the government to guess as to whether Braver calculated a tax loss, let alone the basis for his opinion. If Braver disagrees with Frazier's calculation of unreported income and additional taxes due, he should have to say why. In light of these insufficiencies, and consistent with Rule 16, the government requests that the Court order Pursley to provide actual tax calculations and a more fulsome explanation as to the basis for Braver's opinions.

Pursley also summarily asserts that Braver "will testify that the government violated the statute 26 U.S.C. § 7803(a) known as the taxpayer bill of rights" Doc. 89 at 48. However, there is no description of the substance of Braver's testimony, and as such, Pursley has not met his burden with regard to disclosure. This testimony should also be precluded as it has no bearing on Pursley's mental state or the elements of the charged offenses, and is not relevant under Rule 402. It likewise creates a serious risk of confusing the jury, in violation of Rule 403, as to the import of the Taxpayer Bill of Rights, and would improperly suggest that alleged violations of the rights would somehow mitigate Pursley's conduct. This is simply not true, and testimony on this subject should be prohibited.

Pursley also warns that Braver will testify as to "the various mistakes made by the return preparers for Mr. Pursley . . . [and] that any tax deficiency that results from a mistake and not the result of fraud are not included in the calculation of additional tax due and owing." Doc. 89-1 at 6. Pursley appears to be shifting blame to his accountants, which is only relevant to the extent that Pursley can establish good-faith reliance on those accountants. To establish good faith, a defendant must have made "*full disclosure* to counsel of *all* material facts and retention of counsel for advice

5

and not to ensure the success of the fraudulent scheme." *United States v. Carr*, 740 F.2d 339, 347 (5th Cir. 1984). Thus, evidence about what Pursley disclosed to his accountant and what advice the accountant provided prior to filing a tax return may be relevant and admissible.

Evidence, however, that the accountant made errors or failed to abide by a professional standards is not relevant to whether Pursley engaged in the fraud. *See United States v. Pomponio*, 563 F.2d 659, 662 (4th Cir. 1977) ("As one court has repeated, 'a taxpayer cannot shift the responsibility for admitted deficiencies to the accountants who prepared his returns if the taxpayer withholds vital information from his accountants . . . .'") (quoting *United States v. Lisowski*, 504 F.2d 1268, 1272 (7th Cir. 1974). Similarly, evidence that Pursley's accountants may have made mistakes in calculating Pursley's taxes is not relevant to whether Pursley intended to defraud the IRS. *See, e.g.*, *United States v. Chavin*, 316 F.3d 666, 671 (7th Cir. 2002) ("Chavin argues that the testimony that [his accountant] had made mistakes was relevant to the issue of whether Chavin relied on his accountant to prepare correct income tax returns and to the calculation of tax loss. We do not perceive how this evidence could be relevant to either of these issues"). Any misconduct or negligence by Pursley's accountants is not relevant to his criminal intent, and therefore the Court should preclude testimony on the subject.

Finally, Pursley states that Braver will testify that certain businesses, such as Pelhambridge, had a "legitimate business purpose." Doc. 89-1 at 5. Whether or not the businesses had or did not have a legitimate business purpose is dependent principally on Pursley's intent. If Pursley wants to take the stand and testify as to his state of mind, he is welcome to do so, but Braver should be prohibited from offering a back door into Pursley's mental state under the guise of technician testimony. As the Fifth Circuit explained, "[a] fine borderline exists between an improper opinion regarding the defendant's mental state and a mere explanation of the expert's analysis of facts

6

relating to the defendant's mental state. An expert witness may violate Rule 704(b) by either explicitly offering an opinion as to the defendant's state of mind or by giving the functional equivalent of such a statement." *United States v. Hernandez-Acuna*, 202 F. App'x 736, 739 (5th Cir. 2006) (internal citation and quotation omitted). Such is the case here.

### B. The Court Should Exclude the Proposed Testimony of Stephen Grace

Pursley next offers the testimony of Stephen Grace as a "real estate expert." The Court should exclude Grace's testimony because it is based on impermissible hearsay and conjecture as to Pursley's mental state, it is duplicative of other testimony, and it will not be helpful to the jury.

Grace's testimony is a transparent and improper attempt to use a technician as a substitute for Pursley's own testimony as to his resume and his state-of-mind regarding various real-estate transactions. This is demonstrated by the blatant hearsay in Grace's proffered testimony as to what Pursley knew, thought, or wanted:

> *Mr. Pursley's experience* pointed to the need for his operation to have access to equity and possibly debt financing . . .
>
> *From Mr. Pursley's vantage point*, the GSMC equity investments by DLH, formed in May 2007, were unremarkable and followed customary and normal guidelines . . . .
>
> Mr. Pursley, throughout, *sought* to loan, invest, and/or manage the funds in FSIC in a productive manner consistent with customary and normal investment practices. . . .
>
> Pursley operated legal entities in furtherance of his background in real estate *to secure reasonable returns* on capital.
>
> The Government has disregarded and mischaracterized legitimate investments and loans that, *from Mr. Pursley's perspective*, were unremarkable made to (a) deploy capital towards and into real estate markets . . . .
>
> The deposition of Ms. Kerry Smith further confirmed *Mr. Pursley's understanding* of Mr. Venerabile's ownership . . .

7

Doc. 89-2 at 2-8. The defense is trying to position Grace as an omniscient third-party narrator capable of testifying as to Pursley's beliefs and desires.

Technicians are only permitted to rely upon hearsay if "experts in the field reasonably rely on such evidence in forming their opinions." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008). Self-serving hearsay by a defendant hardly qualifies, which is why courts commonly decline to permit technicians to testify as to such matters. *See, e.g.*, *United States v. Tipton*, 269 F. App'x 551, 560 (6th Cir. 2008) (no error to exclude technician's testimony based solely on self-serving statements. "It appears likely in this case that the defense was simply attempting to use [the technician] as a 'conduit' for the admission of the Defendants' otherwise inadmissible hearsay statements. . . ."); *Garcia v. Giurbino*, 46 F. App'x 881, 882 (9th Cir. 2002) (holding that it was not error to find that a technician could not use the defendant's self-serving hearsay as a basis for his technician's opinion because that hearsay was not corroborated by any evidence at trial.); *see also* Fed. R. Evid. 801(d)(2) (opposing party's statement must be offered by opposing party). This makes intuitive sense: one of the key goals of technician testimony is to ensure that it is based on *reliable* information. Self-serving hearsay plainly is not that.

Grace's statement as to Pursley's intention and mental state also crosses the line drawn in Rule 704(b). That rule provides that "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." *See United States v. Brown*, 871 F.3d 532, 539 (7th Cir. 2017) (upholding a trial court's decision to exclude technician testimony that the defendant acted reasonably, where the technician based his testimony upon exculpatory statements made by the defendant to the technician in an interview). Only one person can testify as to what Pursley thought or believed—that is Mr. Pursley.

Apart from its overreliance on Pursley's hearsay statements, the Court should exclude Grace's testimony because it will not be helpful to the jury. The first five pages of the report detail Pursley's real-estate background and basic information relating to the formation and operation of Gulf States Management and Four Sevens Corporation. The jury does not need a technician, who has no first-hand knowledge of the matter, to explain Pursley's resume or who formed what corporation or for what purpose. *See Taylor v. Evans*, 1997 WL 154010, at *2 (S.D.N.Y. Apr.1, 1997) (rejecting portions of technician report on the ground that the testimony consisted of "a narrative of the case which a lay juror is equally capable of constructing").

Additionally, Grace's testimony is likely to be duplicative. The government intends to call various witnesses who were either directly or peripherally involved in Pursley's alleged real-estate activities. These witnesses include Chuck Gillis, the lawyer who formed many of the corporations at issue in this case. Grace's testimony thus offers no additional evidentiary value. *See LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551, at *1-2 (S.D.N.Y. July 16, 2002) (where expert's report was based on a review of "documents, computer documents, computer files, deposition transcripts and exhibits," the "testimony by fact witnesses familiar with those documents would be far more appropriate . . . and renders [the expert witness'] secondhand knowledge unnecessary for the edification of the jury") (citation and internal quotation marks omitted).

After describing Pursley's background, the report presents six "opinions" that Grace will present. The first and third are interrelated. They essentially contend that Pursley operated real estate entities to make money, and that from "Pursley's perspective," the government has mischaracterized the investments. Doc 89-2 at 7. As already discussed, these statements are so imbued with Pursley's self-serving hearsay that they are not reliant and should not be presented to the jury.

The second opinion is that the use of "special purpose entities" is customary and that the use of these entities in this case was "not sinister nor illegal nor non-customary." The government is not alleging here that special purpose entities are not typically used in business, but that, *in this case*, Pursley's entities were used for a fraudulent purpose. Thus, insofar as there is no debate as to the typical practice of using customary vehicles, the only real addition from Grace's testimony is his belief that the use in this case was not illegal. This goes to one of the ultimate issues in this case—whether Pursley intended to the use the vehicles fraudulently—and would usurp the fact-finding role of the jury. As the Sixth Circuit stated in *Woods v. Lecureux*, which upheld a district court's exclusion of technician testimony, "It is, therefore, apparent that testimony offering nothing more than a legal conclusion—*i.e.*, testimony that does little more than tell the jury what result to reach—is properly excluded under the Rules.". 110 F.3d 1215, 1220 (6th Cir.1997).

Exclusion of the technician's testimony is particularly appropriate where the witness is opining on the basis of inference. Again, the *Woods* court explained, "[f]or a witness to stack inference upon inference and then state an opinion regarding the ultimate issue is even more likely to be unhelpful to the trier of fact." *Id.* at 1221. This is precisely the case here. Grace's testimony about whether the use of the special purpose entities was or was not illegal will depend critically upon self-serving statements as to Pursley's intent. Put slightly differently, Grace intends to testify as to an ultimate issue before the jury—whether the use of the vehicles was an affirmative act—and is basing his testimony either on what Pursley told him or on speculation as to Pursley's mental state. Insomuch as Grace's testimony is not based on admissible or reliable information, nor helpful to the jury, it should be precluded.[2] *Shahid v. City of Detroit*, 889 F.2d 1543, 1547 (6th

---

[2] If the Court denies the government's motion and permits Grace's testimony, the government would still encourage the Court to limit Grace's testimony to a discussion of the customary use of special purpose entities, and exclude Grace's ultimate conclusion that the use of the entities was "not sinister nor illegal nor non-customary."

Cir.1989) (concluding that no abuse of discretion occurred when the district court "determined that it would prejudicially confuse the jury to hear an expert witness base his opinion of the ultimate issue on facts that were for the jury to determine.").

The fourth opinion offered by Grace is a synopsis of Kerry Smith's deposition testimony and how this "confirmed Mr. Pursley's understanding." Again, only Pursley can testify as to his own understanding. Leaving this aside, the jury is fully capable of evaluating Smith's testimony, which they will have already seen, assuming the Court allows for its admission. As such, because Grace's testimony on the subject would not only be duplicative but particularly unhelpful, it should be precluded.

The fifth opinion is that Pursley reasonably relied upon qualified professionals. This is an apparent attempt to enhance his good-faith defense with the patina of a technician's endorsement. As discussed above, to establish good faith, whether in a legal or accounting setting, a defendant must have made "*full disclosure* to counsel of *all* material facts and retention of counsel for advice and not to ensure the success of the fraudulent scheme." *Carr*, 740 F.2d at 347 (emphasis added). Pursley meets none of these criteria. Moreover, the conclusion that Pursley relied upon the information that he received is again based upon inadmissible hearsay and inference upon inference. Even if this was not the case, the Court will decide whether to instruct the jury upon the good faith defense, and jurors understand the concept of reliance upon an accountant and a lawyer. *Willette v. Finn*, 778 F. Supp. 10, 11 (E.D.La. 1991) (refusing to admit technician legal opinion where admitting such testimony "would pose the risk that jurors would confuse the Court's instructions with the views put forward by the parties' experts."). As such, the jury would not be aided in the slightest by Grace's testimony on this matter.

11

The final offered subject matter is an Executive Summary apparently authored by John "Jack" Townsend, Shaun Mooney's counsel for his offshore voluntary disclosure to the IRS. The defense asserts that Grace will testify about multiple errors and inaccuracies in the Townsend summary with no explanation about what that testimony would be. Such notice is inadequate, but more importantly, Grace's testimony about that summary is not relevant and appears to be an attempt to recycle an argument already rejected by this Court.

At the pretrial conference, Pursley claimed that the case against Pursley was the byproduct of a "conspiracy" brought out by Townsend. Doc. 53, Pretrial Hr'g Tr. at 24. The Court rejected Pursley's claim, stating "[t]hat's not a conspiracy. That's just business." *Id.* Despite this admonition, Pursley appears intent on re-raising the same baseless allegations through Grace. The Court should preclude this testimony because it is not relevant to the question of whether Pursley committed the charged offenses, it falls outside the areas of Grace's supposed expertise, and it is based entirely on hearsay.

### C. The Court Should Exclude the Proposed Testimony of Fred Gavin

Finally, the Court should exclude Gavin's testimony because it fails to satisfy the disclosure requirements of Rule 16, and further is neither relevant nor reliable as required by Rule 702.

Gavin was first introduced as a possible technician in Pursley's May 23, 2019 motion. Gavin's technician report, which also appears to double as his resume, is three pages long and consists almost entirely of his work experience, providing minimal information as to the actual content of his testimony. As the report describes,

> The full scope of Mr. Gavin's testimony cannot be determined until the Government has rested its case . . . It should be anticipated that Mr. Gavin will testify as to any financial, tax, or accounting issue raised by the Government. Among Mr. Gavin's opinions are that the tax methodology of Mr. Frazier is based

> on incorrect assumptions . . . Mr. Gavin may testify as to the appropriate IRS examination procedures, and the appropriate way for the IRS to interact with taxpayers. He can testify, as an experienced government appeals officer, Pursley likely would have won his civil appeal had the process not been skipped inappropriately.

Doc. 89-3 at 2-3. This is the sum total of Pursley's disclosure as it relates to Gavin.

This disclosure does not conform to the basic requirements of Rule 16. The report expressly states that Gavin's opinion, by and large, cannot be determined until after the government's case-in-chief, and as to the limited opinions that it does provide, it offers no basis or reason for his opinion as required by Rule 16. Why does Gavin believe that Frazier's calculations are based on incorrect assumptions? The Court and government are left to speculate, and as such, the government cannot adequately prepare for Gavin's testimony, let alone be ready to refute possible inaccuracies.

Under Rule 16, the clear recourse for inadequate disclosures is exclusion of the testimony. "If a party fails to comply with this rule, the court may prohibit the party from introducing the undisclosed evidence." Rule 16(d)(2)(C). Exclusion is the appropriate remedy here, and it is fully consistent with established case law.

In *United States v. Crook*, 479 F. App'x. 568, 575–76 (5th Cir. 2012), the Fifth Circuit upheld a district court that denied a defense technician from testifying because of inadequate disclosures under Rule 16. Specifically in *Crook*, the defendant provided the government with the technician's resume in an email stating that the technician was a "banking guy." The Fifth Circuit found that exclusion of his testimony was not improper as "neither the résumé nor the e-mail provided insight into the *exact nature of his intended testimony*." *Id.* at 576 (emphasis added). The same is true here. Despite repeated requests, the government is in the dark as to the exact nature of Gavin's testimony or the basis for his testimony, and as such, the Court should exclude Gavin as a witness.

13

The offered testimony likewise completely fails to satisfy the requirements of Rule 702. The touchstones for technician testimony are that it must be "relevant and reliable." Gavin's testimony is neither. Pursley is charged with tax evasion and conspiracy to defraud the IRS. Accordingly, testimony as to IRS examination procedures in a civil proceeding are irrelevant, a waste time, and may confuse the jury regarding the legal issues in this case. *See* Fed. R. Evid. 403. This is especially true given that Gavin's testimony would be pure speculation, "He can testify . . . Pursley *likely would have* won his civil appeal . . ." Doc. 89-3 at 4. This is precisely the type of unreliable information that should be excluded from the jury. Moreover, the question, in the present case, is not whether the IRS conformed or failed to conform to IRS examination procedures, but whether Pursley committed the offenses for which he is charged. The suggestion implicit in Gavin's proposed testimony—that the government was first required to seek a civil remedy before prosecuting Pursley—misstates the law. *United States v. Ellett*, 527 F.3d 38, 40 (2d Cir. 2008) (*per curiam*) ("We join the First, Sixth, Seventh, and Ninth Circuits in holding that due process does not require the government to adjudicate tax disputes civilly or administratively before proceeding to criminal prosecution for tax evasion.") (gathering cases). As Gavin's testimony would not provide relevant and reliable information that would assist the trier of fact, and appears intended to distract the jury from the core issues of the case, it should be precluded.

## III.   CONCLUSION

Time and again, the Fifth Circuit has reiterated the role of trial courts as "gatekeepers" to determine whether offered technician evidence is valid, relevant, and helpful. This role is particularly necessary here. For the aforementioned reasons, the Court should exclude the testimony of Fred Gavin and Stephen Grace in their entirety and preclude the testimony of Ronald Braver relating to the Taxpayer Bill of Rights, the supposed mistakes or negligence by Pursley's

accountants, and whether any of the relevant businesses had a "legitimate business purpose." The Court should additionally order Pursley to disclose Braver's actual tax calculations and a more fulsome explanation as to the basis for his opinions so as to enable the Court and the government to assess the validity and relevance of his opinions.

DATED:	June 3, 2019

                                           Respectfully Submitted,

                                           RYAN K. PATRICK
                                           United States Attorney
                                           Southern District of Texas

By:   /s/ Jack A. Morgan
       Jack Morgan, Trial Attorney
       Jack.A.Morgan@usdoj.gov
       Grace E. Albinson, Trial Attorney
       Grace.E.Albinson@usdoj.gov
       Sean P. Beaty, Trial Attorney
       Sean.P.Beaty@usdoj.gov
       U.S. Department of Justice, Tax Division
       601 D Street, N.W., Room 7634
       Washington, DC 20004
       (202) 353-7580/616-3311/616-2717

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § | |
| **v.** | § § | **CRIMINAL NO. 4:18-CR-575** (HUGHES) |
| **JACK STEPHEN PURSLEY,** AKA STEVE PURSLEY, Defendant. | § § § | |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 3, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: /s/ Jack A. Morgan
Jack Morgan, Trial Attorney
Jack.A.Morgan@usdoj.gov
Grace E. Albinson, Trial Attorney
Grace.E.Albinson@usdoj.gov
Sean P. Beaty, Trial Attorney
Sean.P.Beaty@usdoj.gov
U.S. Department of Justice, Tax Division
601 D Street, N.W., Room 7634
Washington, DC 20004
(202) 353-7580/616-3311/616-2717

16