UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA, | § | Case 4:18-cr-00575 |
|---|---|---|
| Plaintiff, | § | |
| v. | § | |
| JACK STEPHEN PURSLEY, | § | |
| Defendant. | § | |

**DEFENDANT'S MOTION FOR SANCTIONS FOR TAMPERING WITH OFFICIAL RECORDS**

Many of the facts in this Motion are set forth in Defendant's Motion to Dismiss (ECF 86), and Defendant's Motion for Expenses. (ECF 106). The facts specifically pertinent to this Motion have to do with the Government's inappropriate actions regarding the official transcript of the Deposition of Kerry Smith.

### I. The Government's Plan for Memorializing the Rule 15 Deposition

On November 19, 2018, this Court ordered the deposition of Kerry Smith in Isle of Man.

When defense counsel asked for the name of the designated court reporter, the Government explained its plan to obtain the oral recording of the deposition, to use governmental employees to transcribe it, and then to hand a copy of the transcription to the defense. The defense asked the Government to use an independent videographer and an independent court reporter. The Government refused.

A Motion was filed to compel the Government to arrange for, a court reporter and videographer. The Court granted appropriate relief, ordering on November 29, 2018, "The United States at its expense will supply a stenographer at the deposition to prepare a verbatim transcript

of the testimony." (ECF 62, ¶ 6.) The Court further ordered, "The United States at [its] expense will supply a videographer to video and audio tape the deposition for replaying at trial." (ECF 62, ¶ 5.)

Because the time for preparing and filing pretrial motions after the deposition would be very tight, Defendant requested the opportunity to video record the deposition as well, pursuant to Federal Rule of Civil Procedure 30(b)(3). *See generally* Fed. R. Crim. P. 15(e) (authorized deposition in criminal case "must be taken and filed in the same manner as a deposition in a civil action"). Pursley and his lawyers would be able to begin drafting any motions that might be required after the deposition, while waiting on the official video recording and court reporter transcript. The Government refused, preventing Pursley from video recording.

## II. The Government's Alteration of the Official Deposition Transcript

The deposition was completed May 1, 2019. The Deputy High Bailiff in Isle of Man court was informed that a rough draft would be completed immediately May 2, 2019. The final transcript would be completed within the week. It was completed on May 6, 2019.

The defense paid for and received directly from the court reporter expedited delivery of the final transcript, and a corresponding bill, and timely filed Motions on May 14, 2019. The Government was also served with the final transcript. Undersigned counsel offered a copy of the final transcript to prosecutor Sean Beatty, mistakenly believing after a conversation with him that it had not been served on him: he declined.

Secretly, Government attorney Grace Albinson negotiated changes to the final transcript with the court reporter. It has now become clear that the court reporter conceded to some of the requested changes and refused to make other changes Albinson requested. These changes were

made after the final transcript was sent to Defendant. Only the secretly altered transcript was sent to the Isle of Man judge. The altered transcript was sent to the Government but not the defense.

None of this was shared with the Deputy High Bailiff, in Isle of Man, the United States Court for the Southern District of Texas, Defendant, or defense counsel.

The defense, while working with Government to trade deposition transcript excerpts each wanted to use at trial, discovered that the page and line designations from the Government transcript proffers did not correspond to the final transcript in Defendant's possession. Several calls and e-mails were sent to the Government pointing this out. The Government's refusal to answer inquiries directly forced the Defendant to question further, after initially thinking there was merely Government error regarding the page and line numbers.

On May 31, 2019, Arnett took a few screen shots showing the line and page designations and sent them to the Government so they would understand what the defense still erroneously believed was an honest error. Beaty's answer was to shoot screen shots of another so-called final transcript without any explanation, except that the differences were innocuous. It was now apparent there were two transcripts.

On May 31, 2019 Beaty argued no one cares that there are two final transcripts: "Ultimately I am far more interested in reaching an agreement than trying to figure out why the two versions are different."

On May 31, 2019 Ashley Arnett e-mailed Sean Beaty responding, "We didn't order a rough draft transcript or pay over $4,000 for a rough draft transcript. How can it be that there are two versions of a final transcript?" Beaty responded: "I can't explain it; I can only tell you that the version you are working from is not the final version."

On June 1, 2019 Beaty argues after conceding there were two final transcripts: "The explanation is innocuous…" and proceeds to give no explanation on how there became two Final Transcripts. On June 3rd after being told we would subpoena the records between the Government and court reporter service if we received no answer, Beaty finally gave an answer: "I've investigated further, and it appears that the court reporter services reached out to Ms. Albinson to see if she had any edits regarding the rough draft of the transcript before the final version." This answer was helpful but still critically dishonest. The court reporter service did not reach out "to see if she had any edits". They reached out to find out where to send the already completed final transcript. Albinson suggested there were typos. She did not convey this suggestion to the Isle of Man Court, to the witness, or to the defense. As of the filing of this motion the Government still maintains they were solicited for edits. That is not true. (*See* Exhibit A, emails between the Government's counsel and defense counsel, attached hereto and incorporated by reference herein and Arnett's affidavit.)

### III. The Two Final Transcripts

On Saturday June 1, 2019, the Government finally told defense counsel that *there are two final transcripts*. The Government conceded there were "differences" and gave the "innocuous" explanation that one transcript had the word "[INAUDIBLE]" inserted while the next their preferred Final transcript, did not have that inserted word, and the insertion caused the two transcripts to be "off" by one line throughout the transcript from that point forward. They still would not explain how this happened.

Not until June 3rd did the Government admit that it unilaterally and privately fixed so-called typographical errors and labeled the designated final transcript as a "rough draft" and then named the secretly altered deposition transcript as the "correct" final transcript. (*See* Exhibit A.) Further

inquiry revealed at least seven changes. Even then, their lack of candor is astounding. They claim the Court Reporter reached out asking for edits. That never happened. The court reporter reached out asking where to send the final transcript. Albinson's response was to slow down the process of directly emailing the transcript to the Isle of Man Court so she could intervene and argue for changes without defense participation. She called her changes "typos."

One such alleged typographical error was to remove the word "INAUDIBLE," thereby substituting Albinson's opinion for the court reporter's record but leaving the defense and both courts to believe the court reporter never typed in the word inaudible. Another typographical error was to add the word "Different." (*See id.*) Beatty inserted the words "rough draft" over the untampered "final transcript," and "final transcript" on the tampered version.

Absent the page and line designations discrepancies these changes would never have been discovered. Unless all 194 pages are compared side-by-side, word-by-word, defense counsel and this Court cannot know with certainty what changes were made.

The court reporter service, paid $4,000, had never served the tampered transcript on the defense. Had the defense's inquiry not led to some answers, the defense and the Government likely would have appeared in Court for trial with two different transcripts.

Since the Government originally refused to answer the question, "how did this happen?", a call was made on June 3, 2019 to the court reporting company. A representative of the company stated that the unilateral request to change the transcript was made by the Department of Justice, and they obeyed the request. (*See* Exhibit B, Affidavit of Ashley Blair Arnett of 06/06/19, attached hereto and incorporated by reference herein.)

The Government has offered to use both transcripts—that the defense can use its transcript and the Government can use its transcript, and the two can piecemeal these excerpts as they seek

to make proffers to the Court and the jury. The Government will handle the transition assuming the Court and defendant will trust them to do it. This proposition is unworkable, likely illegal, and would create a record-mess the likes of which is not often seen.

Defense counsel asked the prosecutors to share all of their contact information with the court reporter. Only after the defense asked the Government not to destroy any records relating to the hiring of the court reporter, the Government finally sent Albinson's exchanges with the Court Reporter which finally offered insight as to how it happened. (Exhibit C)

In Grace Albinson's May 6, 2019 e-mail to Ariel Trinh, the court reporter, Albinson tells Trinh "However, before you send it to the judge, I would like to review it for any errors because I notice a few typos in the rough draft of the transcript that Sharron sent me. Could you send it to me so that I can review it quickly today, then I'll give you the go ahead to send it to the Court for certification." (*See id.*) Trinh responds, "Yes we will send you the final to review and wait to hear back from you on the go ahead for us to then e-mail it/send it to the Isle of Man Court." (*Id.*) (Note that while the Government persists in calling it "the rough draft" the court reporter service refers to it as "the final.") The Government falsely claims the Court Reporter solicited the Government edits. It was the final that Albinson altered, not a rough draft.

**ARGUMENT**

**I. The Government Has Violated the Rules Governing Depositions.**

Under civil procedural rules, which are followed for Rule 15 criminal depositions, *see* Fed. R. Crim. P. 15(e), if there are any errors in a deposition transcript, the party or deponent identifying the error marks the changes with accompanying explanation on an errata sheet within 30 days of the transcript becoming available; this errata sheet is submitted to both sides and the court. Fed. R. Civ. P. 30(e). The deposition transcript would not be changed; the proposed changes would be

incorporated into the record on the errata sheet. *See Anderson v. Great Lakes Dredge & Dock Co.*, 509 F.2d 1119, 1132–33 (2d Cir. 1974) ("In practice the procedure [to correct a deposition transcript] is relatively simple. The witness simply notes his correction and the reason for it in a word or two in the margin before signing and swearing to the transcript."). *See also Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 583 (5th Cir. 2013) (holding plaintiff was likely procedurally barred from arguing an error in deposition transcript, because Fed. R. Civ. P. 30(e) requires that changes to a deposition transcript must be made by submitting a signed errata statement within 30 days of deposition, and that was not done). *See generally E.E.O.C. v. J.H. Walker, Inc.*, No. CIV.A.H-05-2232, 2007 WL 172626 (S.D. Tex. Jan. 18, 2007) (discussing at length the methods by which courts allow and analyze what types of changes to a deposition are allowed under civil procedural Rule 30(e)).

In this case, no errata sheet has been submitted to counsel. There is no evidence the witness was even approached.

"A statement of reasons explaining corrections is an important component of errata submitted pursuant to [Rule] 30(e), because the statement permits an assessment concerning whether the alterations have a legitimate purpose...." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 265–66 (3d Cir. 2010) (citations omitted) (holding that if the deponent proffers changes to deposition transcript but fails to state reasons the reviewing court may strike the errata sheet). "The attorney [who arranged the recordation of the deposition] must store [the deposition transcript] under conditions that will protect it against loss, destruction, tampering, or deterioration." Fed. R. Civ. P. 30(f)(1). Finally, the party or deponent purporting to make changes to a deposition transcript must provide the errata sheet to the court reporter and opposing counsel, and file it with the court. *EBC, Inc.*, 618 F.3d at 270 n.18.

There is no procedure that allows either party to make secret, one sided requests of the court reporter. Here, the Government contacted the court reporter and unilaterally argued for changes without noticing the U.S. Court, the Isle of Man court, the witness, or defense counsel. The Government intentionally tampered with the record, apparently not realizing until May 31, 2019, that the defense had the original, official, final transcript they had tampered with.

The Government refused, despite defense counsel's multiple inquiries, to explain why the record has been changed, by who, and under what authority.

Pursley and his counsel were not consulted regarding changes to the transcript. Now we know that Albinson intentionally kept the Isle of Man court in the dark too. The Isle of Man Judge ruled on various matters. He granted the Government's Motion to prohibit Pursley from videotaping the proceedings. He denied the Government's motion to expel the defense' local counsel form the proceedings. He made numerous inquiries about how much time was left during the Government's direct examination. He ruled when the deposition ended on day 1.

When Albinson demanded that the court reporter send her the transcript for her "review" and "go ahead" (*see* Exhibit C), and then advocated for changes, she willfully violated the law. The witness may offer corrections on an errata sheet, but the official record is not changed. Hiding the change from opposing counsel is never permitted. Hiding proposed changes from this Court and the Isle of Man court interferes with official court records.

A law journal article could be written to explore all of the civil, ethical, and likely criminal violations committed. According to the Government, one "typo" fixed by Albinson was removal of the word "inaudible." Albinson can of course disagree with the independent neutral determination of the court reporter, and bring that to the Court's attention where other counsel can agree or disagree; but she is not free to hide the court reporter's independent original decision and

secretly substitute her own, or even privately advocate a position with the court reporter. Under no understanding of the term "typo" was this change a mere correction of a typographical error.

Had the defense not ordered and received an expedited final transcript, this improper conduct would have remained concealed. Whatever was done to alter the official transcript would remain a secret.

There are specific required procedures that must be followed in order to make any changes to a deposition transcript. The procedure is exacting. The procedure was intentionally and secretly violated by the Government. That these known actions were taken is alarming, and exacerbates concerns that the Government has engaged in further improper actions in prosecuting Defendant, particularly when the Government went to such lengths to avoid having a court reporter at all, and completely controlling the transcript.

## II. The Court Should Sanction the Government.

Defendant requests that the Court sanction the Government for misconduct. If a defense lawyer did these acts, he would be disbarred and likely incarcerated.

In civil cases, it is not too extreme for a court to remedy violation of procedural rules by entering a default judgment against the offending party. *See, e.g.*, *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th Cir. 1993) (affirming default judgment that although harsh was not unjust, where "defendants and their attorneys engaged in an unrelenting campaign to obfuscate the truth," including delay[ing] (either deliberately or carelessly) complying with the Magistrate Judge's orders to produce deposition transcripts").

In a criminal case in which the government has obfuscated procedures, it is not too extreme a measure for the court to dismiss the criminal charge. *See In re Special Proceedings*, 825 F. Supp. 2d 203 (D.D.C. 2011) (indictment dismissed based on government's *Brady* violations and

misrepresentations to the court); *United States v. Germany*, 32 F.R.D. 421 (M.D. Ala. 1963) (where government repeatedly refused to allow defendant access means to investigate and prepare case, defendant was denied counsel within meaning of Sixth Amendment, and indictment had to be dismissed). *Accord Henderson v. United States*, 231 F. Supp. 177, 178 (N.D. Cal. 1964) (reversing conviction where defense counsel was impeded by government in effectively aiding defendant in his defense "without an opportunity to read and study the alleged perjured testimony [in] the transcript"). In *Henderson*, the court observed that in the particular procedural posture of that case, reversal was the only appropriate remedy.

Defendant respectfully requests that the Court sanction the Government.

## **CONCLUSION**

The Court should dismiss this case for the prosecutor's improper actions.

In the alternative, as a sanction, the jury should be advised by the Court that the Government tampered with the official record, costs should be taxed, and all other remedies should be awarded that this Court finds appropriate.

Pursley requests that (1) the tampered transcript be stricken and if a trial is still going forward that the parties reply on the untampered final transcript; (2) the Government be ordered to explain in detail how and why it came to communicate in such a manner with the court reporter and videographer as to demand changes to the official, final deposition transcript; and on what legal theory this can be done without notifying the defense, the IOM court, the witness, and the US District Court; (3) the Defense requests this indictment be dismissed with prejudice or in the alternative if this case still moves to trial, that the jury be instructed that the Government secretly & unilaterally altered official records for this trial and 4) legal fees be awarded for the time spent on this issue, plus any other remedies this Court finds appropriate.

Respectfully submitted on June 6, 2019

                                    MINNS & ARNETT

                                    */s/ Michael Louis Minns*
                                    Michael Louis Minns
                                    State Bar No. 14184300
                                    mike@minnslaw.com
                                    Ashley Blair Arnett
                                    State Bar No. 24064833
                                    ashley@minnslaw.com
                                    9119 S. Gessner, Suite 1
                                    Houston, Texas 77074
                                    Telephone: (713) 777-0772
                                    Telecopy: (713) 777-0453
                                    ***Attorneys for Jack Stephen Pursley***

## CERTIFICATE OF CONFERENCE

The Government opposes any sanctions. The Government stands by all its written and oral representations.

                                    */s/ Michael Louis Minns*
                                    Michael Louis Minns

## CERTIFICATE OF SERVICE

This is to certify that on this 6th day of June 2019, a true and correct copy of the above and foregoing instrument was served upon all counsel of record.

                                    */s/ Ashley Blair Arnett*
                                    Ashley Blair Arnett