UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| v. | § | CRIMINAL NO. 4:18-CR-575 |
| | § | (HUGHES) |
| JACK STEPHEN PURSLEY, | § | |
| AKA STEVE PURSLEY, | § | |
| Defendant. | § | |

**UNITED STATES' OPPOSITION TO PURSLEY'S THIRD MOTION TO DISMISS**

Pursley requests that the Court dismiss the Indictment because of the government's efforts to ensure that the transcript of Kerry Smith's testimony matched her actual testimony. Pursley's allegations of misconduct are baseless: His attorneys knew the transcript had been revised as of May 8, 2019 because the transcription service emailed them a copy of the revised transcript on that day, and told Pursley's attorneys that it had been revised.

The government acted in good faith to ensure that the transcript of the Smith deposition was as accurate as possible. Both parties have had the complete video of the deposition, which is the actual evidence that the jury will consider, and both parties have had the opportunity to compare the video with the transcript for weeks. Tellingly, Pursley's motion does not assert that the Government's suggested edits were incorrect or made the final transcript less accurate. Indeed, the resulting May 8 revised final transcript is more accurate than the May 6 draft from which Pursley's attorneys were working. Accordingly, there has been no prejudice to Pursley.

For all of these reasons, which are explained in greater detail below, the Court should deny the motion.

1

## I. FACTS AND PROCEDURAL HISTORY

On April 30, 2019 and May 1, 2019, the United States and counsel for Pursley took the deposition of Kerry Smith in the Isle of Man. The United States hired TransPerfect Legal Solutions to provide stenography and videography services for the deposition.

On June 6, 2019, Pursley filed a third motion to dismiss the Indictment against him, this time demanding dismissal as a sanction against the United States. Insomuch as a motion to dismiss an indictment for prosecutorial misconduct is entirely dependent on facts, the government details below its communications with TransPerfect and with defense counsel.

### A. Communications with TransPerfect

On May 6, 2019, Ariel Trinh, Operations Manager at TransPerfect, reached out to government counsel Grace Albinson regarding where TransPerfect should send the transcripts of the depositions of Kerry Smith. Doc. 107-3 The government responded that the transcripts and the video should be sent to the Isle of Man court to certify, and as is standard, the government requested the opportunity to review a draft transcript for "any errors," because the government had noticed a few typos in the rough draft. *Id.* at 7-9.

That same day, the production team at TransPerfect sent the transcripts to the government for review, and at 5:45 p.m. (EDT), Trinh followed up with the government to see if the review was complete, noting that "opposing counsel also expedited this transcript for today so we do need to and are obligated to send it to them today." Ex. 1 at 2.

Just a few minutes after receiving the email, at 5:53 p.m., the government responded to Trinh's email identifying the following suggested corrections and notes:

> Day 1, P. 38, L 3 should read "My role was slightly DIFFERENT at Boston Limited…" (different was left out)

> Day 1, P. 45, L 23 should read "contact" instead of "contract".
>
> Universally, Sherry [the transcriber] appears to have left out the "A." indicating the witness is answering the question whenever the witness's answer followed an objection. One example where this occurred is Day 1, P. 31, L 25. This should be corrected throughout both transcripts.
>
> Universally, every time I asked that an exhibit be entered into evidence, the transcript reads "(Exhibit entered into evidence)" – this should be removed because the US judge will make the decision as to whether the exhibit will be entered into evidence at the trial. The exhibits are part of the deposition record but are not admitted into evidence.
>
> There are a few parts of the transcript where the witness is answering questions that read "Inaudible." Is it possible for Sherry to listen to the video transcription and try to make out what the witness testified to?

Ex. 1 at 1. At 6:50 p.m. (EDT), the government sent a second email to Trinh indicating that government counsel had finished reviewing the transcripts and had no other suggested corrections. *Id.* On May 7, 2019, the government emailed Trinh to see if TransPerfect had transmitted the final copies of the transcript and video recording to the Isle of Man court. Ex. 2 at 4.

On May 8, 2019, Trinh responded to the government, discussing the edits previously requested on May 6. Ex. 2 at 4. Trinh stated TransPerfect would not make two of the suggested edits. First, TransPerfect responded that it would not use an "A." when the witness first spoke after an objection, reasoning that it was more helpful to the reader to have it indicated as "the witness" so that it was clear who was speaking. Second, TransPerfect stated that it would not omit "Exhibit entered into Evidence" because "that is how the attorney stated it on the record so that is how the reporter will take it down verbatim." Ex. 2 at 4. Trinh further stated that the reporter would review the recording to assess the government's other three suggested edits, writing "[o]nce we hear back from our reporter on the two above edits and any inaudibles *she may be able to correct* from her audio we will let you know." *Id.* (emphasis added).

That same day, at 2:47 p.m. EDT, Trinh emailed the government and *agreed* that the government had identified errors in the transcript. Specifically, the reporter agreed to correct the following two errors: (1) adding the word "different" at Day 1, P. 38, L 3; and (2) replacing the word "contract" with "contact" at Day 1, P. 45, L 23. Trinh also said that the court reporter had been "able to fill in a couple of the inaudibles." Ex. 2 at 2. Trinh did not attach a copy of the revised transcripts but offered to send them for review. The government responded that the final transcripts approved by TransPerfect could be sent to the Isle of Man court. Ex. 2 at 2.

### B. Both Parties Received the Final Revised Transcript

That same day, on May 8, 2019, TransPerfect sent the defense the final transcript. Ex. 17. TransPerfect had sent defense counsel a prior version of the transcript on May 6, which TransPerfect had marked as final despite being aware that government counsel was reviewing it. Ex. 18. In its May 8 email, TransPerfect specifically stated, "Attached please find *revised* transcript files for Volume I of the deposition of Kerry Smith." Ex. 17 at 1 (emphasis added). A copy of this email exchange is pasted below.

> **From:** Halli Goldman <hgoldman@transperfect.com>
> **Sent:** Wednesday, May 08, 2019 5:25 PM
> **To:** mike@minnslaw.com; ashley@minnslaw.com
> **Subject:** REVISED Final - United States v. Jack Stephen Pursley - Kerry Smith Volume I & II - 4.30.19 & 5.1.19
> **Attachments:** Kerry Smith Volume I.ptx; Kerry Smith Volume I.txt; Kerry Smith Volume I mini.pdf; Kerry Smith Volume I.pdf
>
> Good afternoon,
>
> Attached please find revised transcript files for Volume I of the deposition of Kerry Smith.
>
> Thank you,
> Halli
>
> Halli Goldman | Production Coordinator
> **TransPerfect** Legal Solutions
>
> t +1 212-400-8845 ext 1760 | f +1 646-219-1484
>
> ---
>
> From: Halli Goldman
> Sent: Monday, May 06, 2019 5:51 PM
> To: 'mike@minnslaw.com'; 'ashley@minnslaw.com'
> Subject: Final - United States v. Jack Stephen Pursley - Kerry Smith Volume I & II - 4.30.19 & 5.1.19
>
> Case: United States v. Jack Stephen Pursley
> Witness: Kerry Smith Volumes I & II
> Date: April 30th, 2019 & May 1st, 2019
>
> Good afternoon Counsel,
>
> Attached please find the transcript files pertaining to the depositions mentioned above.

Tellingly, Pursley omitted any mention of this May 8 email from TransPerfect in its motion for sanctions. Indeed, Pursley's attorney told the Court "[t]he altered transcript was sent to the Government but not the defense." Doc. 107, p. 3.

The government only learned that Pursley had, in fact, received a copy of the final transcript – the very transcript about which Pursley is complaining - after counsel for the government reached out to TransPerfect directly on June 7, 2019 (the day after Pursley filed his motion). The government also learned that a representative from TransPerfect and defense counsel spoke the afternoon of June 6, 2019 at approximately 1:15 pm (EDT), *before* the defense filed its motion to dismiss. During that conversation, TransPerfect *reminded* defense counsel that he had received the revised final transcript on May 8, and sent him the attached email confirming so. Ex. 20. This is notable, as it shows that Pursley's attorneys were informed that the transcript had been revised at early stage of the process, and that defense counsel further received, weeks before the government, the May 8 corrected final copy of the transcript. The government did not received the corrected final transcripts until May 20, 2019. Exs. 3, 4.

### C. Communications with Defense

On May 22, 2019, the government emailed defense counsel a list of designations from Smith's deposition that the government intended to play at trial. Ex. 5; Ex. 5A. The next day, on May 23, 2019, counsel for government traveled to Pursley's attorneys' office for a conference to discuss their respective positions on the evidence each side intended to offer at trial. At that conference, Pursley's attorneys communicated that they had begun to review the government's deposition designations, and that they noted that the government's designations did not appear to line up with Pursley's version of the Smith transcript. Ms. Albinson suggested that the differences could be explained by additional corrections to the transcript, and that the government had asked

5

TransPerfect to correct some portions of the transcript that were inaudible. The parties agreed to exchange their respective versions of the Smith transcript in an effort to identify any discrepancies. Exs. 6, 7. However, after this brief conversation, on May 24, 2019, defense counsel informed counsel for the United States that she had compared the transcripts and that they were "the same."



*See* Ex. 8. Based on this email, the government believed that Pursley's attorneys were working from the final copy of the transcript (the same version the government had received from TransPerfect), rather than an uncorrected earlier draft. It remains unclear why Pursley's attorneys did not use the "revised" final version of the transcript sent to them by TransPerfect on May 8.

A week later, on May 30, 2019, defense counsel emailed the government stating:

> I know I sound like a broken record player . . . but the line and page designations you have sent me on Smith do not line up. I have never seen anyone do stuff like this and can't imagine how the error was made . . . My thought is that we come up with a correctly designated version of Smith testimony both of us agree comes in.

Ex. 9 at 8. The government responded in agreement that the parties should use the same transcript, and it asked defense counsel to send their version so that counsel for the United States could compare the two versions of the transcript. Ex. 9 at 7. The next morning, on Friday, May 31, 2019, counsel for Pursley forwarded copies of the defendant's version of the Smith transcripts, and provided the government with some examples where government's deposition designations line up with the defendant's copy of the transcripts.

Meanwhile, the government continued to have substantive discussions with Pursley's attorneys regarding the use of the Smith deposition at trial. On May 31, defense counsel emailed the government, stating that he planned to offer lines 1 through 22 on page 199 and asking if the government maintained its objection to this question. Ex. 11 at 4. The government responded that it would stand by its objection and to the witness's answer, identifying lines 17 through 22 "of the final transcript." *Id.* at 3. When defense counsel questioned to "[w]hich final transcript" the government was referring, the United States responded by providing a copy of the page in question from the May 8 revised version – the one Pursley's attorney had also received from TransPerfect – with the lines highlighted for ease of reference. *Id.* at 1–3. At no point did defense counsel mention that he had received a revised transcript—the final transcript—from TransPerfect two weeks earlier. Ex. 20.

Later on Friday, May 31, the government emailed defense counsel to report that, having compared the defendant's version of the Smith transcripts to the government's version, the government had confirmed that they were, in fact, different (despite Pursley's attorney's prior assurances to the contrary). Counsel for the United States provided specific examples comparing the two transcripts. Ex. 9A at 1–3; Exs. 9B, 9C. The government also attached for defense counsel copies of the final version of the Smith transcripts that it had received from TransPerfect. Up to

7

this point, the parties both agreed that they were using different transcripts but had not identified the source of the problem. Noting the discrepancy, counsel for the government suggested, "I think the best way to proceed is for you to send us your affirmative designations, as well as a list of the designations or portions thereof to which you object, and then we can confer and iron out any issues." Ex. 9A at 3.

Defense counsel responded the same day, noting that his version of the transcript was also labeled "final" and "[t]here is no such thing as two final copies of a transcript." Ex. 15 at 1. He added, "You said nothing about any differences when you received our original motion." *Id.* He also stated that he did not understand why there were there were differences between the transcripts, demanding answers: "What are the differences in the two? How did they become different? When did you discover that there were two "final" depositions?" *Id.* Defense counsel threatened: "If we don't get [an answer] immediately, then I will ask for permission to take your deposition to figure this out." *Id.*

The government again responded that it had believed that the parties were using "the same" transcript based upon the May 24 email from defense counsel and that, "[b]ased on that representation, we thought the issue was resolved until I heard from you about it again last night." Ex. 10 at 2–3. The government concluded by noting:

> Ultimately, I'm far more interested in reaching an agreement than trying to figure out why the two versions are different. From the two examples you sent to me this morning, it looks that the two transcripts are only off by a line or two, so this really shouldn't be too difficult to straighten out.
>
> Please send us your affirmative page and line designations from the version you used, and the parties will find a way to make it work.

*Id.*

That evening defense counsel responded that it was far more concerned with the reason for the changes than the actual nature of those changes.

> The records has been altered. Whether it is a comma, or a line or two, or throughout the transcript . . . there is a reason. Throughout this entire process the government has been trying to beat us down and bury us . . . . And now you have decided that its perfectly ok to have two different versions of an official court record.

Ex. 16 at 1. Defense counsel then demanded that the government produce copies of its communications with the court reporter and videographer.

The next morning, on Saturday June 1, 2019, the government again emailed defense counsel regarding the transcript discrepancy. Government counsel—an attorney who had not been involved in sending the suggested edits to TransPerfect—wrote that he had compared the defense and government copies and identified seven occurrences where the defense's version of the transcript contained an "[INAUDIBLE]" but the final version did not. Ex. 12 at 1; 12A. The deletion of the first of the seven 'inaudibles' resulted in a one-line discrepancy between the final version of the transcript and Pursley's draft. Counsel for the United States noted that he "did not detect any variation in the witness's testimony, or the questions posed to her," anywhere other than the seven identified instances Ex. 12 at 3. To facilitate the defense's review, the attorney cited the specific page and line numbers in both defense's May 6 draft and the government's May 8 version of the transcript for each of the seven occurrences. Ex. 12 at 1–3.

On June 3, 2019, defense counsel responded, demanding an explanation for the discrepancies, no matter how slight, and claiming that they were an "unauthorized change." Ex. 13 at 2.

> These changes were not an act of God. A human being caused the change. Human beings have to have reasons. In this one example the word inaudible has been removed. Who removed it? Why was it removed?

*Id.* He further claimed that the government had only informed him of a single discrepancy—despite the government's June 1 email explicitly referring to seven occurrences and providing specific citations for each. *Id.* Defense counsel also indicated that substantial work had gone into preparing Pursley's deposition designations, and asked "[a]re you proposing that I discard all of my work, and re-do it to match the changes that you have labeled, 'Final Version?'" *Id.*

That same day, the government replied, explaining that it appeared the discrepancies emerged from the edits suggested to TransPerfect and providing the relevant emails to defense counsel. Exs. 13 at 1; 13A; 13B. The government also informed defense counsel that it had received its formal paper copy of the final transcript from the court in the Isle of Man that week, and that the paper copy "appears to match the government's version of the final transcript." Ex. 13 at 1. (The United States notes that it also matches the version TransPerfect sent to defense counsel on May 8.) Finally, the government pointed out that redoing the work should not be burdensome, because "the parties' respective page and line designations are only off by a single line (your line designations after 41, Line 15 are exactly one number higher than our number)." *Id.* Nevertheless, the government offered to "undertake the work of renumbering" and to highlight a copy of the final version of the transcript to be submitted to the Court. *Id.*

That evening, after receiving the government's email advising of the communication with the transcription service, defense counsel responded that he had already known of the communication. "We had discovered, as I am sure the Government realized was possible once we knew some of what had happened, some of this with our independent research." Ex. 14 at 1. As this acknowledgment reveals, defense counsel was aware of the government's edits to the transcription service at the same time that defense counsel was claiming total incomprehension as to how the alterations might have occurred. At the end of the email, defense counsel stated that he

would be seeking sanctions on the basis of the edits. Defense counsel again failed to mention that he had been in possession of the final transcript since May 8, 2019.

## II.  APPLICABLE LAW & ANALYSIS

To establish a claim of prosecutorial misconduct, the defendant must show: (1) that the prosecutor engaged in improper conduct, and (2) the prosecutor's improper conduct affected the defendant's substantial rights. "[W]hether the court is acting under its supervisory authority or its duty to protect the constitutional rights of defendants, an indictment may be dismissed only where the defendants' case has been unfairly prejudiced." *United States v. McKenzie*, 678 F.2d 629, 631 (5th Cir. 1982) (quoting *United States v. Merlino*, 595 F.2d 1016, 1018 (5th Cir. 1979)); *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) (holding that dismissal of indictment for prosecutorial misconduct in a grand jury investigation was erroneous where the misconduct did not prejudice the defendants).

A district court, when evaluating a claim of a discovery violation, must determine if a violation occurred and then consider the following factors: "(1) the reasons why disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances." *United States v. Dvorin*, 817 F.3d 438, 453 (5th Cir. 2016) (quoting *United States v. Garrett*, 238 F.3d 293, 298 (5th Cir. 2000)). "Any sanction imposed should be the least severe penalty necessary to ensure compliance with the court's discovery orders." *Id.*

Pursley's motion is the latest in a line of frivolous pretrial motions. The defendant has previously argued that the government's prosecution was the byproduct of a "conspiracy" by Mr. Mooney's attorney, Jack Townsend. The court already rejected this claim as unsubstantiated. Doc. 53 (Nov. 19, 2018 Pretrial Hr'g), Tr. 24:5-24:22. Defense counsel later accused the government

11

of having misled and misrepresented key facts to the Court, resulting in the grant of the Rule 15 deposition and the extension of the Speedy Trial Clock, and moved the Court to sanction the government. Doc. 86. As the government explained in its earlier response brief (Doc. 90), those allegations were factually and legally meritless.

Now, on the eve of the motions' hearing, Pursley has filed yet another motion requesting dismissal as a sanction against the Government. In their motion, Pursley's attorneys fail to inform the Court of a critical fact—they had received the final version of the transcript from TransPerfect on May 8, 2019 and knew that it had been revised. Ex. 20. It appears that the defense is not acting in good faith. As previously mentioned, hours before he filed his motion, defense counsel spoke to a representative from TransPerfect, who reminded him that he had received an email on May 8 containing "revised transcript files." Ex. 17; *see* Ex. 19 (stating phone call was at "approximately 1:15 pm in NYC, eastern"); Ex. 21 (summarizing the call); Doc. 107 (showing filing at 7:16 p.m. CDT). Nevertheless, defense counsel failed to inform the Court or the government that he had been in possession of the transcript the entire time.

The basis for the most recent motion appears to be the claim that government somehow acted improperly in suggesting minor corrective edits to a transcription company. As the defendant's latest argument does not appear to be based in good faith and is frivolous, the Court should reject the motion.

### A. The Government's Actions were Reasonable

The government has a duty in presenting recorded testimony and transcripts to lay a foundation showing that they are accurate, authentic, and trustworthy. *See, e.g., United States v. Thompson*, 130 F.3d 676, 685 (5th Cir. 1997). Furthermore, in presenting evidence and as officers of the Court, the government has a duty to ensure that the transcription of the testimony is as

accurate as possible. Towards this end, it is a routine process for the parties to receive draft transcripts and then to notate possible errors. Here, the defendant seeks to weaponize this process and to punish the government in fulfilling its duty by suggesting minor corrective edits.

To be clear, the government did not order the transcription service to make the edits. To the contrary, the government recommended edits for TransPerfect's consideration, which the court reporter verified for accuracy before implementing. This is made plain by the correspondence above and the attached exhibits. The government did not complain that the transcription service chose not to make some of the suggested edits. More important, however, is the fact that the transcription service accepted some of the government's edits. This reveals that the transcription service *agreed* that there were mistakes in the May 6 draft. For example, Pursley's penultimate version contains this obvious error:

```
24    Q.    And did you keep those notes in the client file
25    as a regular part of Isle of Man Financial Trust and
                                                    Page 38
 1    Boston Limited's business?
 2    A.    I kept them in the regular course of Isle of Man
 3    Financial Trust. My role was slightly at Boston Limited
 4    so during that time it wasn't required.
```

The government's proposed correction faithfully reflects Smith's actual testimony ("My role was slightly *different* at Boston Limited . . ."), which is immediately apparent when one watches the video of the deposition. The Court should reject the premise underlying the defendant's motion—namely that the government must accept the use of an inaccurate transcript even when the transcription service agrees that it is not accurate.

13

### B. Pursley Has Not Shown any Harm or Prejudice

The complete absence of harm or prejudice in this case is striking. Pursley has not described any prejudice that he has suffered. Pursley had the final transcript since May 8, 2019—twelve days *before* the government did. Nor has he identified a single instance where the final transcript is erroneous. To the extent the defendant disagrees with the accuracy of the revised transcript, the Fifth Circuit has made clear that he can impeach the accuracy of the transcript, or the parties may submit competing transcripts for the jury's consideration. "The jury is entitled to consider the divergence in two transcripts of the same conversation, with the recording of it, as a problem of fact to be resolved in the traditional manner."[1] *See United States v. Onori*, 535 F.2d 938, 948 (5th Cir. 1976). Part of the reason why juries are allowed to consider competing transcripts is because the video or tape is itself the primary evidence for the jury's consideration, whereas the transcript is simply an "aid" "to be used by the jury to assist the jury as it listens to the tape." *Id.* at 947. If the parties are entitled to submit competing transcripts under controlling case law, there cannot be any basis for sanctioning the government for recommending edits that would result in the most accurate version of the transcript.

Additionally, as is apparent from the lengthy factual recitation, there was confusion—one might even argue a comedy of errors—between the parties as to the transcript that each was using and whether the transcripts were the same. Notwithstanding this confusion, the government responded in a timely fashion to defense requests and attempted to find constructive, pragmatic solutions focusing on the core question of had there been a *substantive* change to the transcript.

---

[1] Further, to the extent Pursley cites Federal Rule of Civil Procedure 30(e), he omits from his recitation that the rule mandated that "[o]n request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days" to review and request changes. Fed. R. Civ. P. 30(e)(1). The rule also required TransPerfect to include a note that a review was requested *and attach any changes made by the deponent*. Fed. R. Civ. P. 30(e)(2).

The defense by contrast focused on the mere fact of alteration, regardless of, in the defense's words, "[w]hether it is a comma, or a line or two." Ex. 16 at 1. In essence, the defendant elevates miscommunication between the parties and routine edits to the level of a sanctionable offense. This is unprecedented as a matter of law, but appears to be a continuation of the defendant's practice in this case of alleging prosecutorial misconduct for the slightest disagreement or miscommunication.

Finally, Pursley lacks a good faith basis for his allegations. This is evident by the fact that Defense counsel (i) never informed the government that he had received the final transcript on May 8, (ii) continued to use the May 6 draft transcript despite being send a revised transcript by TransPerfect on May 8, (iii) feigned ignorance to the government as to how there could have been two versions of the "final" transcript, and (iv) misled this Court by failing to inform the Court that defense had received the final transcript on May 8—twelve days earlier than the government received a copy. Ex. 20.

The entirety of Pursley's prejudice argument is that the government requested that the transcription service make minor changes to make the transcript more accurate. Even if the government's action was improper, it was not prejudicial. Moreover, the changes to the transcript did not materially affect the witness' testimony. Rather, it consisted of adding in a missing word, fixing a typo, and accurately transcribing testimony that had been considered inaudible.[2] Pursley has not identified a single example of a material change to Smith's testimony. As the defendant has not shown bad faith on the part of the government or any prejudice, let alone prejudice that has not already been cured, the Court should reject Pursley's motion. *See United States v. Caballero*, 277 F.3d 1235 (10th Cir. 2002) (finding that eleventh-hour revisions to transcript did

---

[2] The government notes that it did not suggest to TransPerfect the content of testimony previously deemed inaudible, but merely asked the transcriptionist to determine what was said.

15

not prejudice the defendant where the defendant "never specifically identify which changes caught them unprepared or how such changes prejudiced the jury).

## III. CONCLUSION

The government's submission of minor, non-substantive edits has not prejudiced Pursley, and therefore, Pursley's motion to dismiss should be denied.

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Tax Division

_____
Sean Beaty
Grace E. Albinson
Jack A. Morgan
Trial Attorneys, Tax Division
U.S. Department of Justice
150 M Street, NE
Washington D.C. 20002
(202) 616-2717
Sean.P.Beaty@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will serve a copy of this document on all counsel of record.

_____
Sean Beaty
Trial Attorney, Tax Division