UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. 4:18-CR-575 |
| § | (HUGHES) |
| JACK STEPHEN PURSLEY, § | |
| AKA STEVE PURSLEY, § | |
| Defendant. § | |

**UNITED STATES' BRIEF ADDRESSING USE OF POST-2010 EVIDENCE**

The Court requested at the June 10th hearing that the government provide case law discussing whether later year tax return filings and bank transfers could constitute affirmative acts of evasion relating to earlier tax years. As demonstrated below, circuit courts routinely permit such evidence.

*Pursley's Post-2010 Efforts to Hide His Receipt of Untaxed Income*

As alleged in the Indictment, Stephen Pursley received millions of dollars in unreported income for assisting his co-conspirator, Shaun Mooney, with bringing back to the United States untaxed money hidden offshore. The money was initially transferred to the United States from 2007 through 2010 disguised as "stock purchases" or "investments," first from Diversified (Mooney's U.S. corporation) into Gulf States (Pursley's U.S. corporation), and later from Australian Partners (nominally owned by Venerabile but controlled by Mooney) into Four Sevens (Pursley's U.S. corporation). All of the transferred funds originated from the bank account of Southeastern Shipping (Mooney's company) in the Isle of Man. This income to Pursley – fees for helping Mooney – was not reported on Pursley's personal returns in the years in which he received it, nor did he pay taxes on this income.

The agreement between Mooney and Pursley did not end when they repatriated the last untaxed dollar from offshore. Their agreement included continuing to file false corporate returns after 2010 to conceal what they had done. On the later filed tax returns for Gulf States and Four Sevens, the untaxed funds were falsely reported as non-income items (*i.e.*, non-taxable stock purchases or paid in capital), and then written off the returns as ostensibly tax-free transactions—forgiveness of loans (without paying taxes on the corresponding cancellation of debt) and returns of capital to himself. Critically, however, if these funds had truly been "invested" by Diversified or by Venerabile as the false stock purchase agreements indicated, Pursley would not have been entitled to a tax-free return of capital because he had not invested the money in the first place. Alternatively, if the money had been "invested" by Pursley, it still would be fraudulent as the investment was made with untaxed money—his cut for helping Mooney—and was structured to appear as if it was a third-party's investment.

At the same time that Pursley was submitting to the IRS false corporate tax returns, he was transferring funds from the corporations' bank accounts to his personal bank accounts and towards the purchase of personal real estate. These transfers occurred both shortly after the infusions of foreign money into Pursley's corporations and in later years. In essence, the bank transfers to nominee accounts and the later year tax returns were used to mask Pursley's receipt of untaxed income and to make later distributions of untaxed income to the defendant appear legitimate.

**LAW**

The *Klein* conspiracy charged as Count One in the Indictment is broader than the two individual tax years charged in Counts Two through Four. The Indictment alleges that Pursley and Mooney defrauded the United States from March 2007 through at least 2013, and lists as overt acts of the conspiracy the filing of false corporate tax returns for tax years 2011 through 2013 and

the post-2010 transfer of funds to nominee accounts. The United States is permitted to offer evidence of well-plead allegations of an Indictment. Insomuch as the false 2011, 2012, and 2013 tax returns and the associated transfers are part of the agreement between Pursley and Mooney, those tax returns and the bank records that support them are relevant and admissible under the Federal Rules of Evidence.

The legal analysis for Counts Two through Four is more nuanced, but leads the Court to the same result. It is well established that affirmative acts of evasion can occur well after the tax year charged. This is, in part, because of the wide array of conduct that can constitute an affirmative act. As the Supreme Court has explained, an affirmative act is "any conduct," undertaken at least in part because of a tax evasion motive, "the likely effect of which would be to mislead or to conceal." *Spies v. United States*, 317 U.S. 492, 499 (1943). For example, in *United States v. Thompson*, husband and wife business owners were charged with conspiracy to commit tax evasion and six counts of tax evasion for the years 1992 to 1997. 518 F.3d 832, 851 (10th Cir. 2008) (the same offenses as in this case.) The charged conduct related, in part, to the failure to report or pay taxes on "foreign commission checks" in those years. These were checks issued by a foreign corporation that the government argued were personal income to the defendants and that the defendants argued were "loans" or "loan repayments" to domestic companies that the defendants controlled. To bolster their case that the transfers were income not to the defendants but to the domestic corporations, the defendants submitted *in 1998* amended corporate tax returns for the 1994 and 1995 tax years reporting the commission checks as corporate income. *Id.* at 845-846. The government charged in its superseding indictment that the filing of the false amended corporate tax returns was an affirmative act of evasion for each count of tax evasion, including the earlier years. *Id.* at 856.

On appeal, the defendant challenged the sufficiency of the evidence. The Tenth Circuit rejected the claim noting,

> Later, and long after the IRS began investigating, the [defendants] had [their U.S. corporation] file several sets of amended corporate returns, in which they attempted to claim that the commissions were actually corporate income, rather than personal income. A reasonable jury could have found beyond a reasonable doubt that these were affirmative acts of evasion as to the foreign commission checks issued in 1992, 1993, and 1997.

*Id.* at 853. In sum, the Tenth Circuit held that a corporate tax return that was used to hide a defendant's personal income and that was filed years after the charged individual income tax return, could nonetheless be used as an affirmative act of evasion for the earlier individual income tax year. These are the same offenses and pattern that are present in this case.

Similarly, in *United States v. Dandy*, "the government filed a superseding indictment alleging that *acts of evasion* relating to tax years 1982 and 1983 occurred through November of 1985." 998 F.2d 1344, 1355-56 (6th Cir. 1993) (emphasis in original). The defendant contended that the statute of limitations began to run for each count on the date that each tax return was filed. The *Dandy* court rejected this argument, adopting the same approach used by the First and Eleventh Circuits, and holding that later year conduct could constitute an affirmative act:

> [T]o hold otherwise would only reward a defendant for successfully evading discovery of his tax fraud for a period of six years subsequent to the date the returns were filed. For example, in this case, defendant's evasive acts in 1985 prevented the IRS from learning about defendant's income tax fraud occurring in 1982 and 1983.

*Id.* The same point applies equally here. In 2012, the Fifth Circuit, citing to the *Dandy* decision, adopted the same rule that the statute of limitations for tax evasion begins to run on the date of the defendant's *last act of evasion*, rather than date his return was filed. *United States v. Irby*, 703 F.3d 280 (5th Cir. 2012). Applying this rationale, the Fifth Circuit upheld the conviction of a defendant

4

charged with tax evasion where the last affirmative act was the use of a nominee trust to conceal assets.

Other cases have held that misrepresentations on forms submitted to the IRS, as well as misrepresentations to IRS agents, in years *long after* the charged tax years can constitute a chargeable affirmative act of evasion.[1] For example, in *United States v. Winfield*, 960 F.2d 970, 973 (11th Cir. 1992), the defendant was charged with tax evasion for the 1978 tax year, but was not indicted until eight years later in 1986. The defendant argued that the statute of limitations had run. The *Winfield* court rejected the claim, observing that under controlling Supreme Court precedent, "false statements made to the IRS after the date the return was due were included as part of the crime." *Id.* As such, the court determined that the defendant's filing of false *corporate income* tax returns in later years and false statements to the IRS, nearly six years after the charged tax year, still qualified as affirmative acts of evasion. *Id.* Again, this is the same fact pattern as in the present case.

The Fifth Circuit has similarly held that misrepresentations to the IRS, years after the income was earned, can constitute an affirmative act of evasion. In *United States v. Herrera*, 559 F.3d 296, 299-301 (5th Cir. 2009), the district court acquitted a defendant on tax evasion reasoning that "[i]t is unclear how a 'false statement' in 2006, about [the defendant's] financial situation in

---

[1] Courts have similarly found that acts of evasions can pre-date the charged tax year. For example, in *United States v. Williams*, 928 F.2d 145 (5th Cir. 1991), the Fifth Circuit held that submission by a defendant of a false Form W–4 withholding allowance certificate in a year *prior* to those charged in the evasion counts could, nonetheless, constituted an affirmative act of evasion. Confronted with a similar fact pattern, the Seventh Circuit citing to *Williams* held the same. The circuit court's dicta, quoting the district court, is instructive, "As this court understands the requirements of *Spies*, the issue is whether the government can prove, for each felony charge of an attempt to evade taxation, an affirmative act that the defendant undertook willfully, with the intention of evading taxes. What matters are the defendant's intentions and expectations at the time he took the action in question, and *evidence of later willful omissions, such as failures to file returns and to pay taxes due, is relevant.*" *United States v. King*, 126 F.3d 987, 990 (7th Cir. 1997).

2001, relates to an affirmative act in 2006 of evading the payment of a tax due and owed." *Id*. at 302. The Fifth Circuit rejected this argument finding that lies to the IRS's nearly five years after the tax year were, nonetheless, relevant affirmative acts. *Id.*

Finally, the case law is similarly well-developed that the use of nominee entities and the transferring of assets to nominee bank accounts, even after the charged tax years had concluded, can properly serve as an affirmative act of evasion. For example, in *United States v. Trownsell*, 367 F.2d 815, 816 (7th Cir. 1966), a defendant was convicted of evading taxes for the years 1946 to 1953. The defendant appealed arguing that the statute of limitations had run. *Id.* The Seven Circuit affirmed the conviction finding the defendant's transfer of assets in 1961 to a Swiss account could "constitute concealment or an attempt to conceal" and qualify as an affirmative act of evasion. *Id. See also United States v. DeTar*, 832 F.2d 1110, 1113 (9th Cir. 1987) (placing assets in names of nominees and conducting business in cash were timely and admissible affirmative acts, even though they took place *after* the tax years charged); *United States v. Hunerlach*, 197 F.3d 1059, 1065 (11th Cir. 1999) (hiding rental income by purchasing property in nominee name within six years of indictment was timely affirmative act of evasion for limitations purposes).

## **CONCLUSION**

Circuit courts routinely recognize later year tax return filings and bank transfers as affirmative acts of evasion relating to earlier tax years. Accordingly, as the indictment expressly charged post-2010 conduct as affirmative acts of evasion and as acts in furtherance of the conspiracy, the Court should permit the government to present the evidence.

DATED: June 14, 2019

                                      Respectfully Submitted,

                                      RYAN K. PATRICK
                                      United States Attorney
                                      Southern District of Texas

By:     /s/ Jack A. Morgan
          Jack Morgan, Trial Attorney
          Jack.A.Morgan@usdoj.gov
          Grace E. Albinson, Trial Attorney
          Grace.E.Albinson@usdoj.gov
          Sean P. Beaty, Trial Attorney
          Sean.P.Beaty@usdoj.gov
          U.S. Department of Justice, Tax Division
          601 D Street, N.W., Room 7634
          Washington, DC 20004
          (202) 353-7580/616-3311/616-2717

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | **CRIMINAL NO. 4:18-CR-575** |
| | § | **(HUGHES)** |
| **JACK STEPHEN PURSLEY,** | § | |
| **AKA STEVE PURSLEY,** | § | |
| **Defendant.** | § | |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 14, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By:  /s/ Jack A. Morgan
　　　 Jack Morgan, Trial Attorney
　　　 Jack.A.Morgan@usdoj.gov
　　　 Grace E. Albinson, Trial Attorney
　　　 Grace.E.Albinson@usdoj.gov
　　　 Sean P. Beaty, Trial Attorney
　　　 Sean.P.Beaty@usdoj.gov
　　　 U.S. Department of Justice, Tax Division
　　　 601 D Street, N.W., Room 7634
　　　 Washington, DC 20004
　　　 (202) 353-7580/616-3311/616-2717

8