IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § § § § | |
| v. § § | Cause no. 4:18-cr-575 |
| JACK STEPHEN PURSLEY, § § § § | |
| *Defendant* § | |

## PURSLEY'S BRIEF OPPOSING THE USE OF POST-2010 EVIDENCE

The Government was originally looking for three (3) weeks of trial. This case will take that long if the Government is allowed to submit evidence both substantively and temporally removed from the contentions in the Indictment.

Simply put, the Government is trying to use *ex post* financial transactions and transfers (which it concedes fall outside the charged tax returns) to establish *a priori* evidence of criminal intent as to tax fraud. In other words, the Government wants to focus the jury's attention on non-tax/financial conduct after the year 2010, even though whatever Pursley did in those later years could have happened whether or not any tax evasion occurred. Not only is such evidence Rule 403/404 irrelevant, but it also shows that the Government is steering its trial evidence toward a material variance from the Indictment.

### THE GOVERNMENT CONCEDED THAT POST-2010 TRANSACTIONS HAVE NO INDEPENDENT EVIDENTIAL VALUE TO THE INDICTED COUNTS

At the June 10th pretrial hearing, the Prosecutor conceded that financial transactions after 2010 only have evidentiary value if criminal intent to commit tax fraud is taken as a given:

>MR. MORGAN: So, Your Honor, the indictment charges that for – with respect to the conspiracy, that they used the alter – they transferred the money through a series of corporate accounts, and these are just bank transfers. They transferred the money through the corporate accounts to hide the income and to hide the fact that Mr. Pursley was the person receiving the income. And so that's really –
>
>THE COURT: Wait. But it's not illegal to transfer that money the way it was transferred.
>
>MR. MORGAN: The allegation here, Your Honor, is that by hiding the money in these –
>
>THE COURT: No. You're assuming a negative answer to the question about this and say this proves that, but you got to prove that on its own.
>
>If they – if he moved into town and never been in any of those other places, **he could have done all this** and reported it on his tax return.
>
>MR. MORGAN: **Yes, Your Honor**, if he had reported it in the first instance.
>
>THE COURT: No. You're – these – you can't assume that this is related to that because this would have been legal…And there's nothing wrong with moving things around.

Exhibit A, June 10, 2018 Pretrial Transcript, at 110:24-25; 111:1-22 [emphasis added].

Pursley contends that the Government is welcome to use its best effort to adduce evidence germane to tax fraud and see if this quantum of evidence is sufficient for Rule 29 purposes. However, what the Government cannot do is put on evidence of after-the-fact financial transactions that are not independently wrongful, and claim it has discovered its *deus-ex-machina* of criminal tax intent.

### THE GOVERNMENT'S EVIDENCE IS NOTHING MORE THAN A CONCLUSORY CHARACTERIZATION THAT LEGITIMATE ACTS WERE EVASIVE

As to the § 7201 counts, the Government's own brief volunteers the convoluted nature of its position. Dkt. No. 143, p. 3 ("The legal analysis for Counts Two through Four is more *nuanced*…"). Pursley contends that what the Government calls "nuance" is a euphemism for the

complete absence of a properly defined "evasive act."

To establish a violation of § 7201, the Government must prove the following elements beyond a reasonable doubt: (1) an affirmative act constituting an evasion or attempted evasion of a tax; (2) the existence of a tax deficiency; and (3) willfulness. *Kawashima v. Holder*, 132 S.Ct. 1166, 1174 (2012); 26 U.S.C. § 7201.

An affirmative act of evasion is "any conduct, the likely effect of which would be to mislead or to conceal." *Spies v. United States*, 317 U.S. 492, 499 (1943); *see also United States v. Miller*, 588 F.3d 897, 907 (5th Cir. 2005) (quoting this same sentence from *Spies*). In *Spies*, "[b]y way of illustration, and not by way of limitation," the Court listed several examples of conduct from which a willful affirmative act can be inferred: "keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind." 317 U.S. at 499.

Simply put, the Government's proffered evidence as to Mr. Pursley has nothing in common with this nomenclature of wrongdoings beyond the *ipse dixit* of its Prosecutors.

Moreover, the Government is misreading the cases it cites. For example, in *United States v. Herrera*, the Fifth Circuit reversed a judgment of acquittal, finding intent to evade taxes when in the Defendant's use of a quitclaim deed to transfer a house to his wife. The court found the transfer to be proof of wilful intent to avoid a tax debt. However, the quitclaim deed in question was executed two years after the tax debt was recognized ***by the defendant***, and one year after collection efforts began. 559 F.3d 296, 299 (5th Cir. 2009) ("The IRS initiated an investigation in 1998, and by 1999 he ***admitted*** to owing over $500,000 in delinquent taxes."). The quitclaim deed was prepared after Herrera had been "warned that such a lien could be instituted." *Id*. at 301.

By contrast, the evidence the Government seeks to admit is nothing like the adulteration of a document, the destruction of a record, or the transfer of an asset to a third party after acknowledging a tax deficiency.

Similarly misplaced is the Government's reliance on *United States v. Hunerlach*, 197 F.3d 1059, 1065 (11th Cir. 1999) because the issues before that court had nothing to do with the admission of later acts to show prior intent to evade taxes. In *Hunerlach*, the Defendant pled guilty to filing false tax returns and served time. He also agreed to pay the tax due "within a reasonable period of time." However, instead of paying the tax due, the Defendant moved money into other companies and accounts, then lied on a sworn Collection Information Statement for Individuals about where the money went. The acts occurring after the tax was due were the very acts charged in *Hunerlach*, and the Defendant (who was making a limitations argument) did not contest that he had engaged in evasive acts. In contrast, the acts for which Pursley was charged are those occurring in 2009 and 2010. And, unlike the Defendant in *Hunerlach*, Pursley does not admit to engaging in evasive acts.

The other cases cited by the Government are similarly off the mark.

### THE GOVERNMENT'S PROPOSED EVIDENCE WOULD SUPPORT A MATERIAL VARIANCE FROM THE INDICTMENT AND SHOULD NOT BE PERMITTED

The Government's proposed evidence would effectively try Pursley for money laundering crimes not alleged in the Indictment. Perhaps this is unsurprising when the Government's Application to Suspend Limitations volunteered that money laundering had been the thrust of the investigation from its outset.[1]

At the June 10th pretrial hearing, the Government conceded: "We don't allege that he

---

[1] Pursley also points the Court to par. 2, subpart (ii) of the Caivano Declaration, filed under seal as Ex. 1 to the Government's Opposition to Motion to Dismiss [Dkt. No. 27], on October 22, 2018.

evaded his taxes in years outside of 2010 for Counts 1 through 4." Exhibit A, at 112:16-17. During that same argument, the Government made clear that its argument for admission of post-2010 evidence is to demonstrate that Pursley's use of funds in later years shows the money was always intended as income to Pursley. *Id.* at 112:23-25; 113:1-11.

The actual evidence, which would have to be submitted through several witnesses and multiple exhibits, demonstrates that Pursley had viable real estate entities which were actively employing people, investigating potential real estate deals, and placing offers to purchase real estate. Additional evidence to be solicited through witnesses and documents would necessarily address Pursley's business activities in various companies, occurring after the charged years, the state of the credit markets, documented loans and their terms, business investments and decisions, and how pending litigation with Mr. Mooney affected various business activities. Out of left field and contrary to the documentary evidence, Mr. Mooney asserted that he was the true owner of an entity which had invested in Pursley's real estate companies, making it impossible to ascertain to whom various loans should be repaid. All of these matters, essential to addressing the post-2010 transactions, would require days of evidence and would distract from the actual charged crimes of tax evasion and conspiracy to commit tax evasion, in 2009 and 2010.

As a legal matter, the Government is limited to the Indictment returned by the Grand Jury. *Stirone v. United States*, 361 U.S. 212 (1960) (where indictment charged defendant with violation of Hobbs Act with respect to importation of sand, it was error to admit evidence that steel was being exported). In other words, the Indictment cannot be broadened by the trial evidence. The hallmark Fifth Circuit case demonstrating this point arose in the parallel context of constructive amendment. *United States v. Adams*, 778 F.2d 1117 (5th Cir. 1985). A defendant was charged with use of a false name. Additional evidence about falsification of address was introduced. *Id*. at 1120.

Holding that evidence of falsification of address was inappropriately admitted, the Court stated:

> Because of the court's admission of evidence concerning residence and under its charge, false statements or identification concerning residence might have been the basis of Adams' conviction. The manner in which the driver's license was false bears on an essential element of the crime charged. The grand jury chose to indict Adams for use of a driver's license that was false as to name. Had it desired to indict Adams for use of a driver's license that was false as to residence, it could have drawn up an indictment…

*Id*. at 1124.

Pursley contends that, since the Government didn't have enough to indict on the basis of money laundering, then it cannot adduce evidence germane to that uncharged offense.

**THIS COURT SHOULD EXERCISE ITS DISCRETION TO EXCLUDE EVIDENCE THAT IS HIGHLY CONFUSING AND WILL REQUIRE PURSLEY TO COUNTERMAND IN TIME-CONSUMING DETAIL**

Of course, the Government will contend that its evidence is only incidentally related to (the uncharged) money laundering, and is germane to (the charged) tax fraud. The truth is that money laundering and tax fraud are such worlds apart that evidence of the former is not at all relevant to the latter. To take one example, at sentencing "in general, fraud and money laundering should ***not*** be grouped together under Section 3D1.2(b)." *United States v. Sabbeth*, 262 F.3d 207, 221 (2d Cir.2001) (emphasis in original). "The principal reason for this general rule is that these crimes involve different harms to different victims." *Id*. at 221. Casting it more broadly than just in the sentencing context, "the victims of fraud are the people who are actually defrauded, while the victim of money laundering is society at large.". *United States v. Gordon*, 267 F.Supp.2d 366, 369 (E.D. N.Y. 2003). The victim of tax fraud is the IRS, not society at large:

> The tax fraud involved the defendant's misrepresentations to the Internal Revenue Service (the "IRS") concerning his wealth. ***As such, the victim of the tax fraud was the IRS***. See U.S.S.G. § 2D1.2, cmt. n. 2 (2000) ("The term 'victim' is not intended to include indirect or secondary victims."). On the other hand, the money laundering involved the defendant's transfer of criminal proceeds to a shell company, which in turn concealed his ownership and control of these amounts from the IRS, the creditors of Who's Who Worldwide, and ultimately the

bankruptcy trustee and law enforcement.

*Id*. (emphasis added).

Putting aside the question of whether the Government could establish some minimal relevance, Federal Rule of Evidence 403 gives trial courts discretion to exclude evidence, if the danger that it will confuse the issues or waste time substantially outweighs its probative value.

Pursley contends that not only would evidence of transactions after the year 2010 necessarily introduce confusion because the Government will focus on a vastly different concept of 'victim' (with all the editorializing that entails) but it would then be incumbent on Pursley to present rebuttal evidence, as discussed hereinabove. In addition to the extensive evidence that will be required to prove the existence and validity of Pursley's real estate businesses, the reasons for each transfer and loan of money made in the course of businesses, and the state of the credit and commercial real estate markets, legal and accounting advice was rendered to Pursley regarding the structure, propriety and treatment of such matters as the loans made by the real estate companies. Pursley would be put to deciding whether to waive privileges with such counsel, and could be required to call all such counsel and accountants to the stand.

In sum, the Government is trying to expand the upcoming trial close to the length it originally requested by presenting evidence of an uncharged theory to which Pursley will need to vigorously and thoroughly respond.

                                        Respectfully submitted,

                                        */s/ Nicole T. LeBoeuf*
                                        Victor D. Vital
                                        State Bar Number 00794798
                                        S.D. Texas Bar Number 25730
                                        Alicia M. Barrs
                                        State Bar Number 24109620
                                        S.D. Texas Bar Number 3438290
                                        BARNES & THORNBURG LLP

2121 N. Pearl Street, Suite 700
Dallas, TX 75201-2469
Telephone: (214) 258-4200
Facsimile: (214) 258-4199
victor.vital@btlaw.com
abarrs@btlaw.com

Nicole T. LeBoeuf
State Bar Number 00791091
S.D. Texas Bar Number 29595
LEBOEUF LAW PLLC
325 N. St. Paul Street, Ste. 3400
Dallas, TX 75201
Telephone: (214) 624-9803
Facsimile: (214) 602-4353
nicole@leboeuflaw.com

Seth H. Kretzer
State Bar Number 24043764
LAW OFFICES OF SETH KRETZER
440 Louisiana Street, Suite 1440
Houston, TX 77002
Telephone: (713) 775-3050
Facsimile: (713) 929-2019
seth@kretzerfirm.com

***Attorneys for Defendant Jack Stephen Pursley***

## CERTIFICATE OF SERVICE

I certify that on August 14, 2019, a copy of this document was served on all counsel of record through filing on the ECF System.

*/s/ Nicole T. LeBoeuf*
Nicole T. LeBoeuf