UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Cause No. 4:18-cr-575 |
| JACK STEPHEN PURSLEY, | § § § | |
| *Defendant.* | § § | |

**PURSLEY'S AMENDED RESPONSE TO RENEWED MOTION TO ADMIT AND EXCLUDE PORTIONS OF KERRY SMITH'S DEPOSITION**

The Government, through its Renewed Motion to Admit and Exclude Portions of Kerry Smith's Deposition ("Renewed Motion"), appears to have switched from asking for exhibits to be admitted to asking that the deposition testimony about the exhibits be admitted. But, the Court must decide these issues based on the admissibility of the exhibits because, if the exhibits are not admissible, the deposition testimony about the substance of the exhibits is not admissible. Pursley objects to the exhibits and the testimony about them.[1]

    **I.**    **The Government has not satisfied its burden on admissibility of the deposition excerpts or corresponding exhibits.**

        **A. The Government exhibits fail to satisfy any procedural rule allowing them to be admitted.**

The Government's deposition excerpts identified in Exhibit 1 to its Renewed Motion, <u>and</u>

---

[1] The Government argues that Pursley stipulated to the admission of the Government's exhibits; however Pursley offered such a stipulation on the condition that his trial not be delayed by the Kerry Smith deposition, which he understood the Government requested for the purpose of authenticating exhibits. It was a strategic offer not accepted by the Government and it is, therefore, irrelevant and unavailing. *See* Transcript of November 18, 2018 Pre-Trial Hearing (Dkt. #53) at 32-33.

with the exhibits addressed by the Government's requested testimony are:

| Disputed Government Exhibits[2] | | | | | |
|---|---|---|---|---|---|
| Ex. | Tr. | Ex. | Tr. | Ex. | Tr. |
| 1-27 | 48:24-52:15 (Excerpt 31) | 2-54 | 164:18-166:17; 165:23-167:4 (Excerpt 117) | 12-4 | 83:19-84:06; 84:10-21 (Excerpts 62-63) |
| 1-51 | 126:25-131:10 (Excerpts 99-101) | 2-68 | 155:13-156:11 (Excerpt 112) | ~~12-5~~ | ~~83:19-84:06; 84:10-21 (Excerpts 62-63)~~ |
| 1-107 | 156:13-157:8 (Excerpt 112) | ~~2-71~~ | ~~54:16-56:8 (Excerpt 32)~~ | 12-7 | 83:19-84:06; 84:10-21 (Excerpts 62-63) |
| 1-108 | 156:13-157:8 (Excerpt 112) | 2-73 | 138:20-140:09 (Excerpts 108) | 12-35 | 83:19-84:06; 84:10-21 (Excerpts 62-63) |
| 2-7 | 46:23-48:23 (Excerpt 30-31) | 2-75 | 115:21-117:9 (Excerpt 94) | ~~12-36~~ | ~~83:19-84:06; 84:10-21 (Excerpts 62-63)~~ |
| 2-10 | 52:16-54:15 (Excerpt 32) | 3-3 | 161:07-167:11 (Excerpt 113) | ~~12-38~~ | ~~83:19-84:06; 84:10-21 (Excerpts 62-63)~~ |
| 2-27 | 56:10-57:20 (Excerpt 32) | 4-49 | 83:19-84:06; 84:10-21 (Excerpts 62-63) | 12-41 | 83:19-84:06; 84:10-21 (Excerpts 62-63) |
| 2-29 | 89:23-90:9 (Excerpt 66) | ~~4-118~~ | ~~83:19-84:06; 84:10-21 (Excerpts 62-63)~~ | 12-43 | 83:19-84:06; 84:10-21 (Excerpts 62-63) |
| 2-33 | 83:19-84:06; 84:10-21 (Excerpts 62-63) | 4-180 | 83:19-84:06; 84:10-21 (Excerpts 62-63) | ~~12-46~~ | ~~83:19-84:06; 84:10-21 (Excerpts 62-63)~~ |
| 2-35 | 136:19-137:11; 137:22-138:11 (Excerpts 105 & 106) | | | | |

*See* Renewed Motion (Dkt. 149) at Exhibit 1.[3] These exhibits and the testimony are inadmissible because the exhibits have not been authenticated, are hearsay, or the testimony about them is not

---

[2] Pursley has agreed to withdraw his objections to the exhibits marked with strike throughs on the chart, and are filing this amended motion to reflect said agreement.
[3] The Government incorporated into its Renewed Motion its previously filed Response to Pursley's Motion to Strike Isle of Man Exhibits and Motion to Admit (Dkt. #91) ("Response to Motion to Admit"). The prior motion contains references to many more exhibits than those addressed by the Renewed Motion. Pursley incorporates his Motion to Strike (Dkt. #81) into this Response, which opposes admission of these other

based on personal knowledge. Pursley did not waive his objections because he objected to all documents about which the Government questioned Ms. Smith, and the parties agreed to a running objection on these bases. *See* Kerry Smith Deposition Transcript ("Smith Tr.") at 35:10-17; 41:16-43:11.[4]

The Government has two hurdles to overcome. First, the documents must be authenticated; second, the Government must establish an exception to the hearsay rule. Rather than proving up the admissibility of each document as it is required to do, however, the Government has lumped numerous exhibits and the corresponding testimony together and, in doing so, glosses over the defects in the testimony as to each document. Under the Government's questioning, Ms. Smith for the most part read from documents she was handed and testified about random pieces of information that were not applicable to the documents generally. Ms. Smith's testimony about the letterhead on a document, a client number, a fax cover sheet, signatures, and names is insufficient to prove up each document because all of the documents are different and must be addressed individually. Some exhibits include several documents from third parties that have none of these so-called "identifying characteristics". *Travland v. Ector County*, 1994 U.S. Dist. LEXIS 42285, *14-15 (5th Cir. Oct. 20, 1994) (memorandum with department memo letterhead, with signatures, containing a discussion of the event in question, and dated about the same time as the event discussed did not "conclusively establish that the document [was] a reliable and trustworthy business record.").

Additionally, although admitting that she was not involved in the document transfer, Ms. Smith initially testified when asked by the Government that she believed all paper files and

---

Government exhibits. But since the Government does not appear to continue to urge admission of these previously referenced exhibits, Pursley addresses them no further herein.
[4] All references to the Karry Smith deposition transcript are to Exhibits 2 and 3 (Dkt.## 149-2 and 149-3) to the Renewed Motion.

electronic files were transferred from IOMFTL to Boston Limited. Smith Tr. 31:20-32:1. But then she later testified, when asked by Pursley's counsel, "As I wasn't directly involved in the process, I can neither confirm that [the records were all transferred to Boston Limited] or confirm that they weren't, but there is potential likelihood that some documents did not get transferred." Smith Tr. 186:17-23. This uncertainty casts doubt on the documents that were transferred.

Even if the Government satisfied Rule 901, which Pursley denies, it still must satisfy all the requirements of Rule 803(6) and address the double and triple hearsay contained in some of the documents.[5] *See*, *e.g.*, *Marine Power Holding, L.L.C. v. Malibu Boats, LLC*, 2016 U.S. Dist. LEXIS 104006, *20 (E. D. La. Aug. 8, 2016) ("By addressing the emails wholesale, Marine Power has left the Court to speculate, based only on the content of the emails themselves and Marine Power's bare bones Rule 902(11) certifications, as to whether the emails meet the five requirements of Rule 803(6)."). "The rationale underlying [the Rule 803(6)] exception to the rule against hearsay is that the inherent reliability of business records is 'supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation.'" *United States v. Wells*, 262 F.3d 455, 462 (5th Cir. 2001) (citation omitted). The Government has the burden to prove it has satisfied Rule 803(6).

The Government argues that even though Ms. Smith is not the custodian of records for IOMFTL or Boston Limited,[6] she still is a qualified witness under Rule 803(6). To be a non-

---

[5] The Government also has asked the Court to admit the exhibits under Rule 807; however, the exhibits are inadmissible under that Rule for the same reasons they cannot be admitted under Rule 803(6). Response to Motion to Admit (Dkt. #91) at 9.
[6] Boston Limited acquired some or all of IOMFTL and the documents in its possession, custody, or control and it is the entity that produced the documents at issue. Ms. Smith has not worked at IOMFTL for years, and had not worked at Boston Limited for nearly a year before her deposition.

custodian, but "qualified" witness, the witness must be one who can "explain the record keeping system of the organization and vouch that the requirements of Rule 803(6) are met." *United States v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008). Ms. Smith did not do that. Indeed, the Government asked very few questions about record keeping. Ms. Smith did not testify about processes, policies, or procedures of IOMFTL in its record keeping. There is very little underlying testimony about the process undertaken for recording the documents and records of IOMFTL or policies in place for identifying who is responsible for records, making sure information is recorded accurately by persons with knowledge or from persons with knowledge at or near the time of the event in question, or filing and maintenance of records.[7] *United States Commodity Future Trading Com'n v. Dizona*, 594 F.3d 408, 416 n.6 (5th Cir. 2010).

Rule 803(6) requires proof that each document was:

> made at or near the time [of the event described] by, or from information transmitted by, a person with knowledge, [the document was] kept in the course of a regularly conducted business activity, and . . . it was the regular practice of that business activity to make the [document]."

Among other problems, Ms. Smith's testimony frequently fails to include proof of one or more of these requirements. The rote questioning from the Government on the Rule 803(6) foundation generally was as follows:

---

[7] Ms. Smith's ability to prove up the Government's exhibits is questionable. Although she was a compliance officer for IOMFTL (*see* Smith Tr. at 27:18-20), she describes her role as "distinct from the day-to-day management of any of the client companies of Isle of Man Financial Trust." *Id*. at 28:12-14. Ms. Smith testified that she left Boston Limited a year ago and for the *six years* prior to that time – from August 2013 to August 2018 – she had a new role at Boston Limited, "overseeing and implementing key projects across the business such as IT systems, risk management projects and US FACTA." Smith Tr. at 29:11-20. In other words**, it has been seven years since Ms. Smith had any role with respect to Southeastern Shipping or Pelhambridge Limited – the two companies whose information the Government seeks to admit through the exhibits and deposition testimony at issue. She did not collect the documents produced to the Government, which were photocopies, and she has not compared the originals to the alleged copies**. Smith Tr. 188:21-190:7. As the Government has admitted, **Ms. Smith did not recognize or remember some of the exhibits**. Resp. to Motion to Strike (Dkt. #91) at 4.

> Was this document made and kept in the client files as a regular part of Isle of Man Financial Trust business . . . and created at or near the time of the events it depicts?

*See* Smith Tr. 117:3-7. Three glaring omissions in the Government's Rule 803(6) testimony is counsel's repeated failure to elicit testimony that the documents were made by, or from information transmitted by, a person with knowledge, that the documents were kept in the course of a "regularly conducted *business activity*", and that it was the regular practice of the *particular business activity* to make the document.[8] *See* Smith Tr. at 34:24-35:9; 38:9-17; 50:1-7; 53:15-20; 57:15-19; 87:7-11; 89:7-13; 111:13-16; 117:3-7; 120:13-14; 127:15-18; 134:11-17; 137:12-18; 140:10-16; 146:5-8; 149:7-10; 151:4-8; 165:5-11. All of these elements must be proven or the documents must be excluded.

The Government also attempted several times to prove up third-party documents under Rule 803(6), but Ms. Smith simply did not testify as necessary to do so. To prove up third-party documents, the witness must have some familiarity with the record keeping of the entity to which the record belongs. *See Dizona*, 594 F.3d at 416 (witness could not explain third party's record keeping system or vouch for the Rule 803(6) requirements and, therefore, could not prove up the document as a business record); *Bro*wn, 553 F.3d at 793 (expert witness could not prove up a pharmacy's records as business records when the witness had no familiarity with the pharmacy's record keeping).

Ms. Smith also appeared to just go along with answering yes to form questions asked by the Government to prove Rule 803(6) compliance. For example, she testified that all of the documents in Exhibit 2-75 were made in the regular course of IOMFTL's regular business activity at or near the time of the events recorded. *See* Smith Tr. 115:21-117:7. This testimony cannot be

---

[8] The Government also frequently failed to address whether the exhibits were created at or near the time of the event described.

correct because many of the documents in that exhibit are not even IOMFTL documents. They are documents of third parties and, as stated, Ms. Smith did not testify to Rule 803(6) requirements for third-party documents. *See* Exhibit 2-75; Smith Tr. 115:21-117:7.

  1. <u>Many of the disputed Government exhibits have additional admissibility problems</u>.

Many of the Government's exhibits are emails among employees of IOMFTL. *See* Exhibits 2-29, 2-33, 2-35, 3-3, 4-49, 4-180, 12-4, 12-35, 12-41, 12-43.  Emails require proof of five things: each email's content must show the email was "created contemporaneously with the sender's acquisition of the information within the email"; the email must have been sent by someone with knowledge of the information contained in the email; the email must be sent or received in the course of a regular business activity; it must be the business's regular practice to send and receive emails with the type of information or events documented; and a qualified witness must testify that all of these requirements have been met as to each email.  *Marine Power*, 2016 U.S. Dist. LEXIS 104006 at *18-20.  The emails must be analyzed on a case by case basis to determine whether the business had "a policy or imposed a duty on its employees to report or record the information within the email." *Id.* at *19. There must be "proof of a policy . . . to use email to make certain types of reports or to send certain sorts of communications; it is not enough to say that as a general business matter, most companies receive and send emails as part of their business model." *Id*.  The Government's proof on the emails does not measure up to this standard.  *Dizona*, 594 F.3d 408, 416 (5th Cir. 2010) (Rule 83(6) requires proof that it was the regular practice of a particular business activity to have the document made); *New York v. Microsoft Corp.*, 2002 U.S. Dist. LEXIS 7683, *9 (D.D.C. April 12, 2002) ("lack of information regarding the practice of composition and maintenance of such emails invoke the final clause of Rule 803(6) which permits exclusion of the

evidence where 'the method of circumstances of preparation indicate lack of trustworthiness.'") (citation omitted).

Exhibit 1-51 contains double hearsay and Ms. Smith's testimony about the timing of the document is inconsistent and shows the document is incomplete. For example, the document is dated September 22, 2009, but on its face the trip summarized by the document lasted from September 22nd to September 24th. In her testimony, Ms. Smith stated first that Exhibit 1-51 is a file note following the trip to the Bahamas. Two questions later, she testified that she created the document at or around the time of the meetings during the trip. Smith Tr. 126:25-127:14. She also testified that the exhibit does not contain all of the discussions, but merely a summary of the discussions. *Id*. at 127:6-11. There is no way of knowing what was left out of the document which, therefore, makes the document untrustworthy.

Exhibits 1-107 and 1-108 are not business records of IOMFT within the meaning of Rule 803(6). They were not created by IOMFT, Southeastern Shipping, or Pelhambridge; they were created by a third-party bank – Royal Bank of Scotland International ("RBS"). Ms. Smith did not testify to any of the requirements under Rule 803(6) as she was not an employee of RBS. *See*, *e.g.*, *New York*, 2002 U.S. Dist. LEXIS 7683 at *13-14 ("[I]f the source of the information is an outsider, Rule 803(6) does not, by itself permit the admission of the business record. The outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have.").

In at least one instance, Ms. Smith denied the document – Exhibit 2-10 – was made at or near the time of the event and had no knowledge of how long after the event the document was created. *See*, Smith Tr. at 52:16-17; 53:15-17, 18-25 ("[Exhibit 2-10] wasn't a contemporaneous note. It was - - it's a retrospective review from when the last review would've been undertaken.

. . . The company review form was undertaken every one to three years, depending on the risk profile of the client identity.").

Exhibit 2-29 has double and triple hearsay which the Government has not adequately addressed. For example, the Exhibit contains in paragraph 5 at 3, statements by Ms. Smith (first hearsay) about file notes (second hearsay) that "explain" Nigel Tebay's position on the ownership of Pelhambridge (third hearsay). The document also contains Ms. Smith's conclusion that the file notes (double hearsay) suggest "this" was discussed with Shaun Mooney – whatever "this" is. *See New York*, 2002 U.S. Dist. LEXIS 7683 at *10-11 (inadmissible email when, even though Rule 803(6) might have been satisfied, no hearsay exceptions identified for double and triple hearsay). The Government claims its intent is to explain Ms. Smith's investigation into the ownership of Southeastern Shipping and not the truth of the matter asserted in the triple hearsay – that Shaun Mooney owned Pelhambridge Limited – but the Government's argument is unconvincing given the company ownership issue is a "central issue" in the case. Renewed Motion at 4; Response to Motion to Admit (Dkt. #91) at 10-11.

Exhibit 2-35 is not admissible under any theory. Ms. Smith did not remember the document and could not testify about anything relating to the document other than what she read from the face of the document, at her deposition. She had no personal knowledge about the document, has no basis for testifying that the document was made and kept as a regularly conducted activity of Isle of Man Financial Trust's business, and has no knowledge about when it would have been placed in the file or who placed it there. Ms. Smith is not the custodian of records or a qualified witness and cannot testify as either. Smith Tr. at 136:19-137:11; 137:22-138:11.

Exhibit 2-54 is another document that fails the test under Rule 803(6). Ms. Smith knew nothing about the document and makes a gross assumption that the consulting agreement was

entered into, when there is no signature indicating both parties had signed it. *See* Smith Tr. 165-11-15. Ms. Smith's testimony further fails to satisfy the requirements of Rule 803(6). *See* Smith Tr. at 165:23-166:4.

Exhibit 2-68 cannot be admitted because Ms. Smith testified unequivocally that she has no knowledge about the document. She did not testify about who prepared the document or that it was prepared by someone with knowledge at or near the time of the events described in the document. Smith Tr. at 155:13-156:11.

Exhibit 2-73 is another document that was not prepared by Ms. Smith and, although her testimony is that the document refers to the same loan she testified about with respect to Exhibit 2-7, Exhibit 2-73 is dated five years after Exhibit 2-7 and the "loan facility" in Exhibit 2-73, purportedly for $4,000,000, is twice the amount of the "loan facility" in Exhibit 2-7, which was $2,000,000. *Compare* Exhibit 2-7 *with* Exhibit 2-73. Ms. Smith then testified to her "belief" that the loan was written off, but could say nothing about why, and testified that she saw no paperwork to support a write-off. Ms. Smith's testimony about Exhibits 2-7 and 2-73 is speculative and not sufficiently trustworthy to support the admission of either exhibit or the related testimony. Exhibit 1-27 is an exhibit with yet another amount for the same "loan" to which Ms. Smith testified. *See* Exhibit 1-27; Smith Tr. 51:24-52:4.

Exhibit 2-75 was not prepared by Ms. Smith; it was prepared by "Emma". As Ms. Smith is not the custodian of records and it was not her document, she lacks personal knowledge about when the document was prepared and who actually prepared it. Furthermore, Exhibit 2-75 contains a report from a company called World-Check and a bill from AT&T, neither of which are IOMFT, Boston Limited, Southeastern Shipping or Pelhambridge documents. Ms. Smith is not a

qualified witness as to the third-party documents and cannot testify to any of the Rule 803(6) requirements as to these documents.

It is not clear that the attachment to Exhibit 3-3 is a document authored by anyone at IOMFTL, Boston Limited, or Southeastern Shipping. There is no indication on the face of the document or from Ms. Smith's testimony as to where the document came from or who prepared it, and the questions asked of Ms. Smith imply that the attachment to the email was not created by IOMFTL, Boston Limited, or Southeastern Shipping. *See* Smith Tr. 162:2-6.

*Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260 (5th Cir. 1991) does not support the Government. The quoted statement from the Fifth Circuit in *Wilson* was made in reference to Rule 803(6), the evidentiary rule that creates the business records exception to the hearsay rule. In *Wilson*, unlike in this case, there was a business records affidavit proving up the document at issue, which conformed to Rule 803(6). But in our case, the Government does not have testimony that equates to a business record affidavit. *United States v. Jimenez Lopez* is likewise distinguishable because there was no hearsay objection made to the testimony that authenticated the document and, therefore, the Court did not address the hearsay. *See* 873 F.2d 769, 773 (5th Cir. 1989).

### B. The testimony unrelated to documents cannot be admitted over Pursley's objections.

The Government's deposition designations include a few objectionable designations that, with one exception, do not focus on specific documents. The Government has asked the Court to admit the following testimony from Ms. Smith's deposition:

> Page & Line
> 70:2-6
> 130:20-131:1
> 131:2-10
> 136:12-18

Pursley has objected to this testimony as leading.  Kerry Smith was the Government's witness on the facts the Government wanted to establish. Ms. Smith was not hostile to the Government.  She met with Government Counsel for about three hours to go over documents and answer questions in preparation for her deposition. *See* Smith Tr. at 183:13-16; 184:4-8.  Pursley's counsel did not meet with Ms. Smith prior to the deposition and, in fact, met her for the first time at the deposition.  Smith Tr. 179:2-12.

Ms. Smith's testimony at page 130:20 – 131:1 also should not be admitted because the Government is asking substantive questions from an exhibit – Exhibit 1-51 – that Pursley has objected to for the reasons set out above.  The Government's argument about promoting efficiency does not work in this instance because the testimony elicited was substantive and suggestive. Renewed Motion at 4.

## II.  The Government's objections to the Pursley excerpts should be overruled.

### A.  Kerry Smith's testimony in the Pursley excerpts was not based on speculation.

The Government has objected to Pursley's designated excerpts at pages 195 and 215-217 on the ground the testimony is speculative.  This objection is a "form" objection required to be made at the time of the deposition. FED. R. CIV. P. 32(d)(B) (objection to form of question or answer is waived if not timely made during the deposition). The Government failed to object during the deposition and it has, therefore, waived any objections it may have to this testimony. FED. R. CIV. P. 32(d)(B); *Coves of the Highland Cnty Dev. Dist. v. Mcglinchey Stafford, P.L.L.C.*, 2011 U.S. LEXIS 164001, *10 (E.D. La. Oct. 7, 2011) (citing Fed. R. Civ. P. 30(c)(2)).

Waiver is required when litigants fail to make form objections because litigants could otherwise game the process. A form objection can be resolved during the deposition when the questioner is made aware of the opponent's objection. If a litigant is allowed to remain silent during

the deposition and then later raise and succeed on objections that Rule 32(d)(B) requires to be made at the deposition, the questioning party will be unfairly prejudiced.

The testimony is not speculative in any case. *See* Smith Tr. at 195:7-25; 215:9-11; and 216:11-217:8. For example, during the questioning on pages 195 and 216-17, contrary to the Government's argument that Ms. Smith was testifying to hypotheticals, Ms. Smith testified to the power and authority Mr. Venerabile had as the legal owner of Southeastern Shipping and actions he could have taken as a result of that power and authority. Ms. Smith testified from her knowledge based on her role with Isle of Man Financial Trust. *See* Smith Tr. at 195:7-25; 216:11-217:8.

Likewise, on page 215, Ms. Smith was not speculating about whether Pursley received access to all of the data that the Isle of Man Financial Trust and its successor in interest, Boston Limited, maintained for Southeastern Shipping when he requested the documentation. She had just testified that she was unable to provide the entire file to Pursley because he was not a director or shareholder of Southeastern Shipping. *See* Smith Tr. at 214:25-215:8. There is nothing speculative about that testimony.

**B.  Pursley's excerpts are directly relevant to a "central issue" in the case.**

The Government objects to Pursley's designated excerpts on pages 199 and 206[9] on the grounds the testimony is irrelevant under Rule 401 or, if relevant, the probative value of the testimony is outweighed by an unidentified danger under Rule 403. Renewed Motion to Admit/Exclude (Dkt. 149) at 5. Neither rule requires exclusion of the evidence.

Rule 401 provides that evidence is relevant if "it has *any* tendency to make a fact more or less probable than it would be without the evidence" and the fact is "of consequence in determining the action." Fed. R. Civ. P. 401 (emphasis added).  The relevancy standard is a liberal one, and

---

[9] Pursley withdraws his designation of pages 206:15-217:06.

**Pursley's Amended Response to Renewed Motion to Admit and Exclude**   Page   13
**Kerry Smith Deposition Excerpts**

should be applied leniently.  *See Armstrong v. Marathon Petro. Co., L.P.*, 2018 U.S. Dist. LEXIS 99127, *7 (S.D. Tex. May 1, 2018) ("The test for relevance established by Rule 401 is a "*liberal* one" and the documents at issue here meet that lenient standard."); *Pick v. American Med. Sys.*, 958 F. Supp. 1151, 1162 (E.D. La., 1997) (Rule 401 mandates a *liberal* view of relevancy - evidence having "any tendency" to prove or disprove a fact is admissible.").

As the Government has admitted, one of the "central issues" in this case is who owned Southeastern Shipping and what Pursley understood to be true about ownership of the company.  *See* Response to Motion to Admit (Dkt. #91) at 10-11.  Kerry Smith, the deponent whose testimony is at issue in the Government's Motion, believed after an independent investigation into the issue, that Venerabile was the owner of Southeastern Shipping. The Government's position is that Shaun Mooney always was the owner of the company. Ms. Smith's testimony on page 199 is about representations made during a legal proceeding in the Philippines involving Southeastern Shipping – representations by Shaun Mooney (the Government's star witness) – that Venerabile was the owner of Southeastern Shipping.  *See* Smith Tr. at 199:8-22. This testimony has a "tendency to make a fact more or less probable than it would be without the evidence" – the fact in this case being that Venerabile actually owned Southeastern Shipping or, alternatively, that Shaun Mooney represented to everybody – including Pursley – that Venerabile was the owner.  The Government understands the relevance of the litigation as the Philippine litigation is discussed in an email from Steve Pursley to Ms. Smith that the Government has asked the Court to admit.  *See* Exhibit 4-49.

The Government has failed to carry its burden on its objection based on Rule 403 as it has failed to give *any* reason or argument why the Court should reject the testimony based on Rule 403.

Wherefore, Steve Pursley asks the Court to deny the Government's request to admit its deposition excerpts and corresponding exhibits as shown in Exhibit 1 to the Renewed Motion, grant Pursley's request to admit his designated deposition excerpts shown in Exhibit 1 to the Renewed Motion, and grant Pursley such other relief to which he is entitled.

Respectfully submitted,

/s/ Nicole T. LeBoeuf
Victor D. Vital
State Bar Number 00794798
S.D. Texas Bar Number 25730
Alicia M. Barrs
State Bar Number 24109620
S.D. Texas Bar Number 3438290
BARNES & THORNBURG LLP
2121 N. Pearl Street, Suite 700
Dallas, TX 75201-2469
Telephone: (214) 258-4200
Facsimile: (214) 258-4199
victor.vital@btlaw.com
abarrs@btlaw.com

Nicole Therese LeBoeuf
State Bar Number 00791091
S.D. Texas Bar Number 29595
LEBOEUF LAW PLLC
325 N. St. Paul, Ste. 3400
Dallas, TX 75201
Telephone: (214) 624-9803
Facsimile: (214) 602-4353
nicole@leboeuflaw.com

Seth H. Kretzer
State Bar Number 24043764
S.D. Texas Bar Number 680773
LAW OFFICES OF SETH KRETZER
440 Louisiana Street, Suite 1440
Houston, TX 77002
Telephone: (713) 775-3050
Facsimile: (713) 929-2019
seth@kretzerfirm.com

***Attorneys for Defendant Jack Stephen Pursley***

## CERTIFICATE OF SERVICE

I certify that on August 20, 2019, a copy of this document was served on all counsel of record through filing on the ECF System.

>*/s/ Nicole T. LeBoeuf*
>Nicole T. LeBoeuf