IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. 4:18-CR-00575-1 |
| | § | |
| JACK STEPHEN PURSLEY | § | |

**DEFENDANT'S MOTION TO REDUCE
SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

TO THE HONORABLE JUDGE LYNN N. HUGHES:

Defendant, Jack Stephen Pursley, files this motion to re-sentence him to a sentence of time-served or home confinement followed by a term of supervised release not to exceed the balance of his original prison sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603(b)(1) of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

I.

On September 6, 2019, Mr. Pursley was found guilty by jury of Count 1: Conspiracy to Defraud the United States, Count 2: Tax Evasion- Pursley (2009), Count 3: Tax Evasion – Pursley (2010), and Count 4: Tax Evasion- Violation 26 U.S.C § 7201 – Co-Conspirator 1 (2010) of the Indictment.[1] The Court assessed punishment at twenty-four months in

---

[1] Document No. 223: Jury Verdict

prison, with two years of supervised release. Mr. Pursley surrendered on September 17, 2020 and is currently serving his sentence at FCI Oakdale II.

Mr. Pursley surrendered during the peak of COVID-19 in the United States and has been confined for more than six (6) months.  To date, he has served 25% of his sentence with less than 18 months remaining. Mr. Pursley has had no disciplinary incidents in BOP; to the contrary, he has done his best to contribute to the facility, despite COVID-19 restraints, by working a number of jobs at the camp, counseling fellow inmates and participating in daily Bible study and prayer circles.  Most importantly, he developed a scriptural-based book study utilizing the best seller *Slaying the Giants in Your Life*.

## II.

COVID-19 unleashed itself on the inmate population and staff at BOPs across the country.  As of March 4, 2021, BOP reported that 848 federal inmates and 1,615 BOP staff members in 127 prisons and nineteen Residential Reentry Centers had tested positive for COVID-19. Almost 250 federal inmates and four BOP staff members have died from the disease.[2]  More importantly, on March 4, 2021 another Oakdale inmate died as a result of COVID-19.  This death resulted from another outbreak at the facility that resulted in the lockdown of approximately 700 inmates.

---

[2] U.S. Department of Justice, Bureau of Prisons, COVID-19 Resources, https://www.bop.gov/coronavirus/. BOP regularly updates this webpage with information on the number of prisoners and staff that have tested positive for COVID-19.

In July, the AMA confirmed that "COVID-19 case rates have been substantially higher and escalating much more rapidly in prison than in the U.S. population." Research finds that COVID-19 case rates for prisoners are 5.5 times higher than the U.S. population case rate of 587 per 100,000.[3]

The good news is that incarcerated people are being offered the vaccine and a number of them are taking the opportunity to be vaccinated. The glooming fact to consider is that the effectiveness of vaccination programs depends upon the context in which they are implemented; the vaccination programs' goal is to prevent the spread of the virus and to enable broad swaths of the population to eventually achieve herd immunity to the virus.[4] Herd immunity can be very difficult to attain within the jail population due to the constant coming and going of inmates and guards, the rampant overcrowding and the potential hesitancy of inmates to get the vaccine. Researchers have stated: "…reliance on vaccination alone thus seems unlikely to achieve necessary reductions in Covid-19 transmission in incarcerated populations.[5] Vaccination of incarcerated people is important, but it is not enough to stop the spread of Covid-19 in jail. As of the filing of this motion, less than 7% of the Oakdale inmates have been vaccinated. Therefore, Mr. Pursley files this motion for relief from his sentence as time is of the essence.

---

[3] COVID-19 Cases and Deaths in Federal and State Prisons, https://jamanetwork.com/journals/jama/article-abstract/2768249
[4] Vaccination plus Decarceration- Stopping Covid-19 in Jails and Prisons
https://www.nejm.org/doi/full/10.1056/NEJMp2100609

[5] *Id.*

III.

Attorney General William Barr issued a memorandum on March 26, 2020, authorizing BOP to transfer at-risk, non-violent inmates who pose minimal likelihood of recidivism from BOP facilities to home confinement to protect the safety of BOP personnel and the inmate population in face of COVID-19.[6]  Barr recognized that some inmates may be safer at home than in BOP facilities.  Mr. Pursley is such an inmate.

Mr. Pursley has tried to advocate for himself internally.  On January 5, 2021, Mr. Pursley submitted an Inmate Request to Warden S. Ma'at at FCC Oakdale, requesting that he be allowed to serve the remainder of his sentence by home confinement. Warden Ma'at denied Mr. Pursley's request.[7]  Mr. Pursley's efforts to exhaust his administrative remedies have been fruitless.  Given the extraordinary circumstances of the spread of COVID-19 across detention facilities (especially at Oakdale), he cannot wait any longer to seek compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).  It appears that BOP officials cannot implement the enumerated factors in the Barr Memo quickly enough to provide meaningful relief to inmates at detention facilities.

IV.

For many years, 18 U.S.C. § 3582(c)(1)(A) has allowed district courts to reduce sentences of federal inmates for "extraordinary and compelling reasons," often referred to

---

[6] Memorandum for Director of Bureau Prisons from Office of the Attorney General, dated March 26, 2020 https://www.justice.gov/file/1262731/download
[7] Exhibit A: Mr. Pursley's letter to Warden S. Ma'at, dated January 5, 2021 and Warden S. Ma'at's response, dated January 21, 2021.

as "compassionate release."  Until December 21, 2018, only the Director of BOP could request such a sentence reduction.

Under the First Step Act, BOP no longer has a monopoly on the decision whether to file "compassionate release" motions.  Rather, federal inmates may file them with the original sentencing court. 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b)(1) of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018). In *United States v. Booker*, 976 F.3d 228 (2nd Cir. 2020), holds that the First Step Act "freed district courts to consider the full slate of extraordinary and compelling reason that an imprisoned person might bring before them in motions for compassionate release."

The Sentencing Commission policy statement on reductions of sentences under 18 U.S.C. § 3582(c)(1)(A) lists three specific categories of "extraordinary and compelling reasons" but expressly does not restrict what combination of factors can warrant release. U.S.S.G. § 1B1.13 (p.s.), comment. (n.1(A)-(D)). The three specific categories are: (1) terminal illness of the inmate, or an irrecoverable serious physical, medical, or mental issue that prevents the inmate from providing himself with self-care within the prison; (2) age of the defendant, combined with a serious deterioration in physical or mental health because of the aging process; and (3) death or incapacitation of the caregiver of the inmate's minor children, or incapacitation of the inmate's spouse or partner. *See* U.S.S.G. § 1B1.13 (p.s.), comment. (n.1(A)-(C)).

## V.

"Extraordinary and compelling reasons" warrant a reduction of Mr. Pursley's sentence and immediate release from confinement.  The rampant spread of COVID- 19 at

the detention facilities and the difficulty attaining herd immunity within facilities, make it unsafe for a sixty-two-year-old man to remain confined there.

A sentence reduction is consistent with and supported by the factors in 18 U.S.C. § 3553(a), whose consideration is mandated by § 3582(c)(1)(A) "to the extent they are applicable." Some factors now carry more weight than at the time of sentencing: (1) "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); and (2) "the need for the sentence imposed . . . to provide the defendant with . . . medical care . . . in the most effective manner," 18 U.S.C. § 3553(a)(2)(D).

First, Mr. Pursley's age and health weighs heavily in favor of reducing his sentence. Mr. Pursley is sixty-two-year-old who suffers from obesity (BMI > 30), hyperlipidemia and hypertension/ high blood pressure. Many of Mr. Pursley's pre-existing health issues from previous surgeries (cataracts, umbilical hernia and venous insufficiency of the left leg) have worsened and need immediate follow-up care, which has not been made available to him while in custody.[8] If released to home confinement, Mr. Pursley has access to medical care with private insurance to pay for the care, avoiding any costs to the taxpayers for his medical needs.

Second, Mr. Pursley is a non-violent offender with no prior criminal history confined in a low security level facility and poses a low risk of recidivism; Mr. Pursley poses no threat of violence to the community should the Court release him from prison. Mr.

---

[8] See Exhibit B – letters from Mr. Pursley's ophthalmologist and neurosurgeon.

Pursley has a very strong and dedicated family unit that will support him and an employment opportunity awaiting if he is allowed to be released to home confinement.

Third, his impeccable conduct in prison weighs heavily in his favor. Mr. Pursley has served 25% of his sentence with less than eighteen months remaining without any misconduct or infractions despite the incredibly draconian conditions – solitary confinement for non-violent first offender, lack of visitation and the absence of any programming to qualify for credit toward earlier release.

If released to home confinement, Mr. Pursley's wife, Amber Pursley can pick him up from FCI Oakdale II in Louisiana, drive him back to their house in Houston, where he will reside with his wife and two young kids during any period of supervised release. Mr. Pursley will self-quarantine at home as long as necessary to ensure his health and safety and that of others. Further, he will obtain gainful employment. In sum, the § 3553(a) factors weigh heavily in Mr. Pursley's favor.

This Court is in the business of weighing equities to make consequential decisions. Yet, other than habeas corpus proceedings in death penalty cases, few prior cases could have presented the potential, if not likely, life-or-death consequences that this case and the world pandemic that Covid-19 has presented. The Court should grant this motion, because so rarely do justice and mercy require the same result. *See Walker v. Martel*, 709 F.3d 925, 950-51 (9th Cir. 2013) (Gould, J., concurring in part & dissenting in part) ("Shakespeare told us that '[t]he quality of mercy is not strain'd,' Milton instructed us to "temper so [j]ustice with mercy" and advised us that '[m]ercy [must] colleague with justice,' and President Lincoln reminded us that 'mercy bears richer fruits than strict justice.'"

## **CONCLUSION**

After six months of confinement, the loss of his practice and facing imminent grave illness or death while in custody, Mr. Pursley is prepared to walk humbly in this world.   He respectfully requests that the Court grant this motion and re-sentence him to a sentence of time-served or home confinement followed by a term of supervised release not to exceed the balance of his original prison sentence.  Should the Court desire additional development of the record before ruling on this motion, Mr. Pursley requests that it conduct a telephonic emergency evidentiary hearing to further explore the extent of the health and safety crisis. Counsel requests that the warden and medical director of the BOP facilities at FCI Oakdale II, as well as Mr. Pursley, be available to participate at any hearing.

WHEREFORE PREMISES CONSIDERED, Mr. Pursley respectfully prays that this Honorable Court grant this motion, reduce his sentence and order his immediate release from prison.

Respectfully submitted:


_____/s/ Chip Lewis_____
CHIP LEWIS
Federal ID No. 24313
1207 S. Shepherd Dr.
Houston, Texas 77019
713-523-7878 (Telephone)
713-523-7887 (Facsimile)
Chip@chiplewislaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion has been forwarded via email to AUSA Beaty on the 11th day of March 2021.

_____/s/Chip B. Lewis_____
CHIP B. LEWIS

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with AUSA Beaty, AUSA regarding this motion, and he is OPPOSED.

_____/s/Chip B. Lewis_____
CHIP B. LEWIS