United States District Court     Southern District of Texas

United States District Court
Southern District of Texas
**ENTERED**
August 18, 2022
Nathan Ochsner, Clerk

| | | |
|---|---|---|
| United States of America, | § § § | |
| Plaintiff, | § § | |
| versus | § § | Criminal H-18-575 |
| Jack Stephen Pursley, | § § | |
| Defendant. | § § | |

# Order on Limitations

1. *Background.*

On February 18, 2016, the United States Department of Justice's Office of International Affairs sent an official Mutual Legal Assistance Treaty request to the Isle of Man. On March 15, 2016, it sent a supplemental request.

On August 23, 2016, the government applied to toll the statute of limitations which was granted.

On September 20, 2018, a grand jury indicted Jack Stephen Pursley on four counts for conspiracy and tax evasion.

The issues that this court must now determine is how long was the statute of limitations suspended by the MLATs under 18 U.S.C. § 3292, and which counts of the indictment survive that calculated limitations period.

2. *Tolling.*

　　A. *Standard.*

The standard statue of limitations for all four counts is six years.[1] For the conspiracy count, the clock starts from the last overt act to further the conspiracy.[2] For the tax evasion counts, it starts at the last affirmative act to evade tax liability.[3]

Under 18 U.S.C. § 3292, the statute of limitation is suspended – after a successful application to the district court – while the government seeks assistance with collecting evidence from a foreign government. The period of suspension runs from the date of the official request to the date of the "final action" by the foreign government.[4] "The total of all periods of suspension ... shall not extend a period within which a criminal case must be initiated for more than six months if all foreign authorities take final action before such period would expire without regard to this section."[5]

The key dispute concerns when the Isle of Man took "final action" on the MLATs.

The *Meador* case is one of the few to address this issue within this Circuit. Relying on the Ninth Circuit opinion in *United States v. Bischel*, 61 F.3d 1429 (9th Cir. 1995), that court felt "persuaded that a determination of when 'final action' has been taken by a foreign government, within the meaning of § 3292(b), must turn on whether a dispositive response to an official request for evidence from our government has been obtained."[6] It then created a "bright-line

---

[1] 26 U.S.C. § 6531.

[2] *United States v. Loe*, 248 F.3d 449, 457 (5th Cir. 2001).

[3] *United States v. Irby*, 703 F.3d 280, 284 (5th Cir. 2012).

[4] 18 U.S.C. § 3292(b).

[5] 18 U.S.C. § 3292(c)(2).

[6] *United States v. Meador*, 138 F.3d 986, 992 (5th Cir. 1998).

test" for a final action – "when the foreign government believes it has completed its engagement and communicates that belief to our government."[7]

### B. *Isle of Man Letters.*

The essential language the dispute centers around is at the bottom of the October 25, 2016, and May 18, 2017, letters from the Isle of Man:

> I believe that this letter of request is now executed in full but if I can be of any further assistance to you in relation to this or any other matter please do not hesitate to contact me.

### C. *Pursley's Position.*

Pursley argues that the language in the letters is clear and conclusive of the Isle of Man's intent that it took final action on the requests. He highlights the different language used in the earlier letters on July 4, July 8, and September 27, 2016, which mentioned further requested evidence that would be forwarded if obtained. Pursley insists that these letters addressed both MLATs even though it only identifies the supplemental one because it gave evidence under both.

He also argues that the May 18, 2017, letter was the last formal transmission of evidence. Pursley finally says that the Isle of Man did give an "up or down" determination of each category, and the government's displeasure with what was or was not furnished does not matter.

Based on this, Pursley advocates for a suspension period of six months.

### D. *The Government's Position.*

The government asks to follow a more contextual view of the *Meador* standard. It argues that the October 25, 2016, and May 18, 2017, letters contained standardized, template language which is not indicative of a final disposition. The government also insists that the letters only addressed one

---

[7] *Id.*

category from the MLATs – not dispositive representations manifesting the intent to finalize each category. It argues that the letters could not apply to more than one category because why use the same "final" language yet furnish documents with both letters covering the same category – and the fact that the Isle of Man stated in an email the day before that the letter addresses one category but was still working on others. The government finally highlights emails exchanged with the Isle of Man between March 2017 until after the indictment about other work to be done to argue that the MLATs were not final.

Based on this, the government advocates for a suspension period of 945 days.

E. *Analysis.*

Initially, the government has conceded that the Isle of Man effectively merged the two MLATs, so references to one will be considered as both.

The court believes it best to start by addressing the *Meador* standard. While it claims to be aligned with the *Bischel* decision upon which it relies, inherent inconsistencies exist between them. These inconsistencies create a substantively more narrow standard in *Meador* – a conflict that has been recognized by this Circuit and others.[8] *Meador* essentially pings the analysis to the foreign government believing that it has given a complete response, while *Bischel* requires dispositions, up or down, of each item in the official request. Should this court then just be left to take the foreign government at its word saying it is complete or actually analyze what it has done – along with what it has said – to confirm that it has completed the request?

While not explicitly addressed in either case, the answer to that question is ultimately one of applying the foreign government's statements to the larger context they were made. This view aligns with the Circuit's mandate for this

---

[8] *United States v. Pursley*, 22 F.4th 586, 590-91 (5th Cir. 2022); *United States v. Torres*, 318 F.3d 1058, 1063 n.7 (11th Cir. 2003).

court: "whether, in context, that letter was an indication that the Isle of Man believed it had completed its engagement."[9]

Having reviewed the record, the court finds that the October 25, 2016, and May 18, 2017, letters were not final actions. While the letters may contain seemingly magic words of "I believe this letter of request is now executed in full," the vast array of the communications before, with, and after the letters suggest that the Isle of Man did not believe final action had occurred. Most strongly supporting this conclusion was the May 2017 email highlighting that the May letter would only address one category and the cache of other emails showing that the Isle of Man believed the MLATs were incomplete.

The court does not find that the law supports Pursley's apparent argument between formal and informal communications. When they conflict – as was evident here – one does not automatically trump the other. The United States is familiar with the bureaucratic puffery that is included in "official" correspondence. Looking beyond this language enlightens the fact that the Isle of Man did not believe assistance was complete.

Within this Circuit, *Meador* serves as the sole true comparator in judging what language is sufficient. In *Meador*, the language used by the German government was much more final – "the request has now been completely satisfied. I therefore consider my function to be concluded."[10] This language is distinguishable. The Isle of Man's insistence on continued assistance is vital. It leaves the impression that more work was to be done.

Beyond the semantics, holding that the language alone is sufficient as a final action would drastically impair this country's ability to prosecute crimes that occur in other countries yet have real and lasting impacts within its borders.

For these reasons, the statute of limitations was suspended for 945 days – from the first MLAT to indictment.

---

[9] *Pursley*, 22 F.4th at 591.

[10] *Meador*, 138 F.3d at 989.

3.   *Surviving Counts.*

Having determined the suspension period, the court must now find which counts in the indictment survive.

Based on the six-year statute of limitations and the 945 days suspension, the last overt or affirmative act for each count must have happened after February 18, 2010.

Pursly argues that the last, legally sufficient overt and affirmative acts were:

| | |
|---|---|
| Count 1 | October 11, 2011 – because acts of concealment do not extend the main objective of the conspiracy; |
| Count 2 | August 7, 2010 – because filing corporate tax returns and unilateral transfers are not affirmative acts to evade taxes; |
| Count 3 | October 12, 2011; and |
| Count 4 | October 11, 2011. |

The government alleges in the indictment that the last overt and affirmative acts were:

| | |
|---|---|
| Count 1 | September 15, 2013; |
| Count 2 | January 29, 2018; |
| Count 3 | December 12, 2012; and |
| Count 4 | October 11, 2011. |

Even if the court were to accept all of Pursley's dates for the sake of the argument, all counts would be timely and survive. The court, however, will address some of his "legal sufficiency" arguments to foreclose continued, later attacks.

Acts of concealment may be overt acts of a conspiracy when the criminal purpose of the conspiracy requires concealment to be successful.[11] This is true of tax evasion. Evasion inherently requires concealment – the tax evasion would not be successful unless one can conceal the money transfers avoiding tax scrutiny. This same reasoning applies equally to affirmative acts for tax evasion. Relying on general propositions from an non-analogous case is inadequate to argue otherwise.

Regardless of the dates used – while the court finds the government's to be correct – all four counts of the indictment will survive.

4. *Conclusion.*

The statute of limitations was suspended for 945 days, and all four counts of the indictment survive.

Signed on August 18, 2022, at Houston, Texas.

Lynn N. Hughes
United States District Judge

---

[11] *United States v. Mann*, 161 F.3d 840, 859 (5th Cir. 1998).